MICHAEL RUBIN (SBN 80618)
SCOTT A. KRONLAND (SBN 171693)
REBEKAH B. EVENSON (SBN 207825)
Altshuler, Berzon, Nussbaum, Rubin & Demain
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  (415) 421-7151
Facsimile:  (415) 362-8064

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE I; JANE DOE II; LAKSHMI and JARMANI PRATTIPATI as Parents and Successors in Interest of CHANTI JYOTSNA DEVI PRATTIPATI; JANE DOE III; JANE DOE IV; JANE DOE V; JANE DOE VI; JANE DOE VII; JANE DOE VIII; SREEKANTH KOLLIPARA; and All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>LAKIREDDY BALI REDDY, an individual; VIJAY KUMAR LAKIREDDY, an individual; PRASAD LAKIREDDY, an individual; JAYAPRAKASH REDDY LAKIREDDY, an individual; VENKATESWARA REDDY LAKIREDDY, an individual; and the businesses they controlled and/or operated, including PASAND MADRAS CUISINE, a California corporation; PASAND, INC., a California corporation; LAKIREDDY INVESTMENT CO., a California limited liability corporation; L.B. REDDY ESTATE CO., a California limited liability company; JAY CONSTRUCTION, a California sole proprietorship; ACTIVE TECH SOLUTIONS, a California corporation; VANI COMPUTER SOLUTIONS, a California limited liability corporation; and LAKIREDDY BALI REDDY d/b/a REDDY REALTY CO., a California sole proprietorship,<br><br>        Defendants.<br>_____ | No. C 02 05570 WHA<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES, RESTITUTION,  AND INJUNCTIVE RELIEF**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

II.     JURISDICTION AND INTRA-DISTRICT ASSIGNMENT . . . . . . . . . . . . . . . . . . . . . .   2

III.    PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

        A.      Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

        B.      Individual Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

        C.      Company Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

        D.      Additional Defendant Allegations . . . . . . . . . . . . . . . . . . . . . . . . . .   9

IV.     CLASS ACTION ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

V.      FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

        A.      Allegations as to Individual Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . .  14

                1.      Jane Doe I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14
                2.      Jane Doe II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16
                3.      Jane Doe III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18
                4.      Jane Doe IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
                5.      Jane Doe V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22
                6.      Jane Doe VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23
                7.      Jane Doe VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25
                8.      The Decedent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26
                9.      Sreekanth Kollipara . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27
                10.     Jane Doe VIII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

        B.      Allegations as to the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

        C.      Additional Allegations from Plea Agreements . . . . . . . . . . . . . . . . . . . .  31

VI.     CLAIMS FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

        Count I:        For Violations of RICO, 18 U.S.C. §1962(c) and (d) . . . . . . . . . . . . . . . . .  34

                a.      Lakireddy Bali Reddy . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35
                b.      Vijay Kumar Lakireddy . . . . . . . . . . . . . . . . . . . . . . . . . . .  35
                c.      Prasad Lakireddy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36
                d.      Jayaprakash Lakireddy . . . . . . . . . . . . . . . . . . . . . . . . . . .  36
                e.      Venkateswara Lakireddy . . . . . . . . . . . . . . . . . . . . . . . . . . .  37
                f.      Pasand Madras Cuisine . . . . . . . . . . . . . . . . . . . . . . . . . . .  38
                g.      Pasand, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39
                h.      Lakireddy Investment Co. . . . . . . . . . . . . . . . . . . . . . . . . . .  39
                i.      L.B. Reddy Estate Co. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40
                j.      Jay Construction Co. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40
                k.      Active Tech Solutions . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41
                l.      Vani Computer Solutions . . . . . . . . . . . . . . . . . . . . . . . . . .  42
                m.      Reddy Realty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  42

Count II:      For Violations of RICO, 18 U.S.C. §§1962(a) and (d) . . . . . . . . . . . . . . . . . 56

Count III:     For Violation of the Anti-Peonage Act (42 U.S.C. §1994) . . . . . . . . . . . . . 57

Count IV:      For Peonage, Involuntary Servitude, and Forced Labor Of Plaintiffs
               (United States Const. amend. XIII) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Count V:       For Violation Of The Law Of Nations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

        a.     Universal Declaration of Human Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . 61
        b.     International Covenant on Civil and Political Rights, . . . . . . . . . . . . . . . . . 61
        c.     International Labour Organization:  Convention Concerning Forced or
               Compulsory Labour . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61
        d.     International Covenant on Economic, Social and Cultural Rights . . . . . . . . 62
        e.     American Convention on Human Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . 62
        f.     Additional Protocol to the American Convention on Human Rights in the
               Area of Economic, Social and Cultural Rights . . . . . . . . . . . . . . . . . . . . . . 62
        g.     Declaration on the Elimination of Violence Against Women . . . . . . . . . . . 63
        h.     Declaration on the Human Rights of Individuals Who are Not Nationals
               of the Country in which They Live . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
        i.     International Labour Organization: Convention Concerning Minimum Age
               for Admission to Employment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64
        j.     Convention on the Rights of the Child . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

Count VI:      Violation of the Fair Labor Standards Act . . . . . . . . . . . . . . . . . . . . . . . . . . 66

Count VII:     Failure to Pay Minimum Wage and Overtime in Violation of
               California Labor Code and IWC Wage Orders . . . . . . . . . . . . . . . . . . . . 68

Count VIII:    Violation of California Labor Code §203 . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

Count IX:      Violation of California Labor Code §226 . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

Count X:       Violation of California Labor Code §970 . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

Count XI:      Violation of California Labor Code §§351, 353 . . . . . . . . . . . . . . . . . . . . . . 71

Count XII:     Civil Assault and Battery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

Count XIII:    Sexual Abuse of Minors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

Count XIV:     Sexual Battery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

Count XV:      False Imprisonment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

Count XVI:     Fraud and Deceit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

Count XVII:    Negligent Infliction of Emotional Distress . . . . . . . . . . . . . . . . . . . . . . . . . . 75

Count XVIII:   Intentional Infliction of Emotional Distress . . . . . . . . . . . . . . . . . . . . . . . . . 75

Count XIX:     Conversion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

Count XX:      Conversion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

Count XXI:     Conversion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

Count XXII:   Conversion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

Count XXIII:   Violation of California Education Code §48200 . . . . . . . . . . . . . . . . . . . . . . 78

Count XXIV:  Unjust Enrichment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

Count XXV:   Accounting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

Count XXVI:  Quantum Meruit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

Count XXVII: Unlawful Business Acts And Practices In Violation Of
                    California Business And Professions Code §17200 *et seq.* . . . . . . . . . . 80

Count XXVIII: Breach of Written Contract   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82

Count XXIX:  Breach of Oral Contracts   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83

Count XXX:   Breach of Covenant of Good Faith and Fair Dealing   . . . . . . . . . . . . . . . . . . . 84

Count XXXI:  Negligence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84

VII.   JURY TRIAL DEMAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84

VIII.   PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

Plaintiffs, on their own behalf and on behalf of all similarly-situated plaintiff class and subclass members as described herein, hereby allege as follows:

## I. *INTRODUCTION*

1.     This civil action arises from a criminal conspiracy to bring Indian nationals to the United States illegally for purposes of forced labor and sexual exploitation.  Defendant Lakireddy Bali Reddy ("Reddy") is at the center of this conspiracy, which involves his family members and an interconnected web of California businesses that defendants own and control.  By means of this criminal conspiracy, Reddy and his co-defendants were able to build a real estate and restaurant empire in the Bay Area estimated to be worth more than $70 million and to control of more than a third of the rental apartments in Berkeley, California.

2.     This case is brought on behalf of a class of Indian citizens, including dozens of victimized young women, whom Reddy and his co-conspirators unlawfully lured to the United States with false promises of golden employment opportunities, but who instead were met with the harsh reality of long working hours under arduous conditions, pay that was far below the minimum required by state and federal minimum wage and overtime laws, sexual abuse, physical beatings, and atrocious working conditions.  Defendants exploited plaintiffs' youth, their fear, their caste status, their poverty, their unfamiliarity with the American legal system, their inability to speak English, and their immigration status, for defendants' personal pleasure and for defendants' illicit profit.

3.     Plaintiffs bring this case under RICO, the Thirteenth Amendment, the Anti-Peonage Act, the Alien Tort Claims Act, the Fair Labor Standards Act, California's Unfair Business Practices Act, state common law, and other provisions of federal, state, and international law, on their own behalf and on behalf of a class of all persons whom defendants brought to this country from India and thereafter subjected to unlawful working conditions and other violations of American law, and a subclass consisting of all persons whom defendants assaulted and forced to labor against their will.  Plaintiffs bring their California Unfair Business Practices Act claims on their own behalf and on behalf of the California public.  Plaintiffs seek injunctive relief, restitution, and damages.

4.     Pursuant to an agreement of the parties, the statute of limitations on all claims of all plaintiffs and class members herein against all defendants was tolled effective October 18, 2000.  In

addition, all plaintiffs and class members' claims against defendants should be deemed equitably tolled because of, among other reasons, plaintiffs' and class members' foreign residence, lack of familiarity with the American legal system, lack of access to the American legal system, poverty, youth, fear, inability to speak or write English, and the state of dependency, servitude, peonage and oppression to which defendants subjected them.

## II.  *JURISDICTION AND INTRA-DISTRICT ASSIGNMENT*

5.      This action was originally filed in the Superior Court of California for the County of Alameda and was removed by defendants to federal court.

6.      This Court has subject matter jurisdiction because of the presence of federal claims and supplemental jurisdiction over the state-law claims.

7.       The proper intra-district assignment is to the San Francisco/Oakland division because much of the illegal activity alleged herein occurred in Berkeley, California.

## III.  *PARTIES*

**A.      Plaintiffs**

8.      Plaintiff Jane Doe I ("Doe I") is a citizen of India who was brought to the United States by defendants based upon false promises and misrepresentations and whose legal rights, civil rights, and human rights were violated by defendants in furtherance of their unlawful scheme and conspiracy alleged herein.  Plaintiff Jane Doe I brings this action on her own behalf, on behalf of the class, and on behalf of the general public of the State of California.  Plaintiff Jane Doe I requests leave of Court to proceed under a pseudonym to protect her privacy interests under the United States and California Constitutions and because she has a reasonable fear of retaliation by defendants and others acting under defendant' control if her true identity is made public.

9.      Plaintiff Jane Doe II ("Doe II") is a citizen of India who was brought to the United States by defendants based upon false promises and misrepresentations and whose legal rights, civil rights, and human rights were violated by defendants in furtherance of their unlawful scheme and conspiracy alleged herein.  Plaintiff Jane Doe II brings this action on her own behalf, on behalf of the class, and on behalf of the general public of the State of California.  Plaintiff Jane Doe II requests leave of Court to proceed under a pseudonym to protect her privacy interests under the United States and

California Constitutions and because she has a reasonable fear of retaliation by defendants and others acting under defendant' control if her true identity is made public.

10.     Plaintiff Jane Doe III ("Doe III") is a citizen of India who was brought to the United States by defendants based upon false promises and misrepresentations and whose legal rights, civil rights, and human rights were violated by defendants in furtherance of their unlawful scheme and conspiracy alleged herein.  Plaintiff Jane Doe III brings this action on her own behalf, on behalf of the class, and on behalf of the general public of the State of California.  Plaintiff Jane Doe III requests leave of Court to proceed under a pseudonym to protect her privacy interests under the United States and California Constitutions and because she has a reasonable fear of retaliation by defendants and others acting under defendant' control if her true identity is made public.

11.     Plaintiff Jane Doe IV ("Doe IV") is a citizen of India who was brought to the United States by defendants and whose legal rights, civil rights, and human rights were violated by defendants in furtherance of their unlawful scheme and conspiracy alleged herein.  Plaintiff Jane Doe IV brings this action on her own behalf, on behalf of the class, and on behalf of the general public of the State of California.  Plaintiff Jane Doe IV requests leave of Court to proceed under a pseudonym to protect her privacy interests under the United States and California Constitutions and because she has a reasonable fear of retaliation by defendants and others acting under defendant' control if her true identity is made public.

12.     Plaintiff Jane Doe V ("Doe V") is a citizen of India who was brought to the United States by defendants and whose legal rights, civil rights, and human rights were violated by defendants in furtherance of their unlawful scheme and conspiracy alleged herein.  Plaintiff Jane Doe V brings this action on her own behalf, on behalf of the class, and on behalf of the general public of the State of California.  Plaintiff Jane Doe V requests leave of Court to proceed under a pseudonym to protect her privacy interests under the United States and California Constitutions and because she has a reasonable fear of retaliation by defendants and others acting under defendant' control if her true identity is made public.

13.     Plaintiff Jane Doe VI ("Doe VI") is a citizen of India who was brought to the United States by defendants based upon false promises and misrepresentations and whose legal rights, civil

rights, and human rights were violated by defendants in furtherance of their unlawful scheme and conspiracy alleged herein. Plaintiff Jane Doe VI brings this action on her own behalf, on behalf of the class, and on behalf of the general public of the State of California. Plaintiff Jane Doe VI requests leave of Court to proceed under a pseudonym to protect her privacy interests under the United States and California Constitutions and because she has a reasonable fear of retaliation by defendants and others acting under defendant' control if her true identity is made public.

14.     Plaintiff Jane Doe VII ("Doe VII") is a citizen of India who was brought to the United States by defendants based upon their false promises and misrepresentations and whose legal rights, civil rights, and human rights were violated by defendants in furtherance of their unlawful scheme and conspiracy alleged herein. Plaintiff Doe VII brings this action on her own behalf, on behalf of the class, and on behalf of the general public of the State of California. Plaintiff Jane Doe VII requests leave of Court to proceed under a pseudonym to protect her privacy interests under the United States and California Constitutions and because she has a reasonable fear of retaliation by defendants and others acting under defendant' control if her true identity is made public.

15.     Plaintiffs Lakshmi and Jarmani Prattipati are the parents and successors-in-interest to Chanti Jyotsna Devi Prattipati ("the Decedent"), their minor child, who died on November 24, 1999 as a result of the actions and inactions of defendants. The Decedent was a minor and citizen of India who was brought to the United States by defendants based upon their false promises and misrepresentations and whose legal rights, civil rights, and human rights were violated by defendants in furtherance of their unlawful scheme and conspiracy alleged herein. Plaintiffs Lakshmi and Jarmani Prattipati bring survivorship claims on behalf of their deceased daughter.

16.     Plaintiff Sreekanth Kollipara ("Kollipara") is a citizen of India who was brought to the United States by defendants based upon their false promises and misrepresentations and whose legal rights, civil rights, and human rights were violated by defendants in furtherance of their unlawful scheme and conspiracy alleged herein. Plaintiff Kollipara brings this action on his own behalf, on behalf of the class, and on behalf of the general public of the State of California.

17.     Plaintiff Jane Doe VIII ("Doe VIII") is a citizen of India who was brought to the United States by defendants based upon their false promises and misrepresentations and whose legal rights, civil

rights, and human rights were violated by defendants in furtherance of their unlawful scheme and conspiracy alleged herein.  Plaintiff Doe VIII brings this action on her own behalf, on behalf of the class, and on behalf of the general public of the State of California.   Plaintiff Jane Doe VIII requests leave of Court to proceed under a pseudonym to protect her privacy interests under the United States and California Constitutions and because she has a reasonable fear of retaliation by defendants and others acting under defendant' control if her true identity is made public.

### B.    Individual Defendants

18.     Defendant Lakireddy Bali Reddy ("Reddy") is an American citizen originally from Andhra Pradesh, India, who has been a resident of California for approximately 40 years.  Among other interests and responsibilities with respect to defendant companies, defendant Reddy controls numerous business enterprises in Northern California, including defendants Lakireddy Investment Co., Jay Construction,  L.B. Reddy Estate Co., Vani Computer Solutions, Reddy Realty, Pasand Madras Cuisine¸ and Pasand, Inc..  Defendant Reddy is also a director of defendant Pasand, Inc., the manager of defendant Lakireddy Investment Co., and, for some of the relevant time period, the manager of L.B. Reddy Estate Co.  As set forth below, defendant Reddy engaged in conduct and conspired with the other defendants named herein and with police and government officials in Andhra Pradesh and elsewhere in India to deprive plaintiffs and other similarly-situated individuals of their legal, human, and civil rights in violation of state, federal and international law.

19.     Defendant Vijay Kumar Lakireddy ("Vijay Lakireddy") is a resident of California and is a son of defendant Reddy.  Among other interests and responsibilities with respect to defendant companies, Vijay Lakireddy served as the Chief Executive Officer of defendant Active Tech Solutions, which was purportedly a high tech computer company located in Berkeley, California.  On information and belief, defendant Vijay Lakireddy is also one of the owners of Pasand Madras Cuisine, Pasand, Inc., Lakireddy Investment Co.,and L.B. Reddy Estate Co., and exercises control over those businesses.  As set forth below, defendant Vijay Lakireddy engaged in conduct and conspired with the other defendants named herein and with police and government officials in Andhra Pradesh and elsewhere in India to deprive plaintiffs and other similarly-situated individuals of their legal, human, and civil rights in violation of state, federal and international law.

20.    Defendant Prasad Lakireddy ("Prasad Lakireddy") is a resident of California and is a son of defendant Reddy.  Among other interests and responsibilities with respect to defendant companies, Prasad Lakireddy at all times relevant hereto was a manager of defendant Pasand Madras Cuisine in Berkeley and, for some of the relevant time period, the manager of defendant L.B. Reddy Estate Co. On information and belief, defendant Prasad Lakireddy is also one of the owners of Pasand Madras Cuisine, Pasand, Inc., Lakireddy Investment Co., L.B. Reddy Estate Co., Jay Construction, and Vani Computer Solutions, and exercises control over those businesses.  As set forth below, defendant Prasad Lakireddy engaged in conduct and conspired with the other defendants named herein and with police and government officials in Andhra Pradesh and elsewhere in India to deprive plaintiffs and other similarly-situated individuals of their legal, human, and civil rights in violation of state, federal and international law.

21.    Defendant Jayaprakash Reddy Lakireddy ("Jayaprakash Lakireddy") is a brother of defendant Reddy.  Plaintiffs are informed and believe and on that basis allege that Jayaprakash Lakireddy is a resident of California.  Among other interests and responsibilities with respect to defendant companies, defendant Jayaprakash Lakireddy at all times relevant hereto was a manager of defendant Jay Construction.  On information and belief, defendant Jayaprakash Lakireddy is also an owner of Pasand Madras Cuisine, Pasand, Inc., L.B. Reddy Estate Co., Lakireddy Investment Co., and Jay Construction, and exercises control over those businesses.  As set forth below, defendant Jayaprakash Lakireddy engaged in conduct and conspired with the other defendants named herein and with police and government officials in Andhra Pradesh and elsewhere in India to deprive plaintiffs and other similarly-situated individuals of their legal, human, and civil rights in violation of state, federal and international law.

22.    Defendant Venkateswara Reddy Lakireddy ("Venkateswara Lakireddy") is a brother of defendant Reddy.  Plaintiffs are informed and believe and on that basis allege that Venkateswara Lakireddy is a resident of California.  Among other interests and responsibilities with respect to defendant companies, defendant Venkateswara Lakireddy at all times relevant hereto was a manager of defendant Pasand Madras Cuisine's restaurant in Berkeley, California and a director of defendant Pasand, Inc.  As set forth below, defendant Venkateswara Lakireddy engaged in conduct and conspired

with the other defendants named herein and with police and government officials in Andhra Pradesh and elsewhere in India to deprive plaintiffs and other similarly-situated individuals of their legal, human, and civil rights in violation of state, federal and international law.

**C.     Company Defendants**

23.     Defendant Pasand Madras Cuisine ("Pasand Madras Cuisine") is a partnership or a California corporation that operates Indian restaurants in Berkeley and Santa Clara, California, and that formerly operated an Indian restaurant in San Francisco, California and San Rafael, California. Defendant Pasand Madras Cuisine is and at all times relevant hereto was owned, operated, managed, and controlled by the individual defendant co-conspirators for the purpose of furthering their unlawful conspiracy.  By engaging in the unlawful and conspiratorial conduct alleged, defendant Pasand Madras Cuisine deprived plaintiffs and other similarly-situated individuals of their legal, human, and civil rights in violation of state, federal and international law.

24.     Defendant Pasand Incorporated ("Pasand, Inc.") is a California corporation with its principal place of business in Berkeley, California.  Defendant Pasand, Inc. is and at all times relevant hereto was owned, operated, managed, and controlled by the individual defendant co-conspirators for the purpose of furthering their unlawful conspiracy.  By engaging in the unlawful and conspiratorial conduct alleged, defendant Pasand, Inc. deprived plaintiffs and other similarly-situated individuals of their legal, human, and civil rights in violation of state, federal and international law.  Plaintiffs are informed and believe and on that basis allege that defendant Pasand, Inc.'s corporate status is suspended.

25.     Defendant Lakireddy Investment Company ("Lakireddy Investment Co.") is a California limited liability corporation or a partnership.  Defendant Lakireddy Investment Co. is and at all times relevant hereto was owned, operated, managed, and controlled by the individual defendant co-conspirators for the purpose of furthering their unlawful conspiracy.  By engaging in the unlawful and conspiratorial conduct alleged, defendant Lakireddy Investment Co. deprived plaintiffs and other similarly-situated individuals of their legal, human, and civil rights in violation of state, federal and international law.

26.     Defendant L.B. Reddy Estate Co. is a California limited liability company or a

partnership with its principal place of business located in Berkeley, California.  Defendant L.B. Reddy Estate Co. is and at all times relevant hereto was owned, operated, managed, and controlled by the individual defendant co-conspirators for the purpose of furthering their unlawful conspiracy.  By engaging in the unlawful and conspiratorial conduct alleged, defendant L.B. Reddy Estate Co. deprived plaintiffs and other similarly-situated individuals of their legal, human, and civil rights in violation of state, federal and international law.

27.     Defendant Jay Construction is a California sole proprietorship, owned by defendant Jayaprakash Lakireddy, or a partnership, with its principal place of business located in Oakland, California.  Defendant Jay Construction is and at all times relevant hereto was owned, operated, managed, and controlled by the individual defendant co-conspirators for the purpose of furthering their unlawful conspiracy.  By engaging in the unlawful and conspiratorial conduct alleged, defendant Jay Construction deprived plaintiffs and other similarly-situated individuals of their legal, human, and civil rights in violation of state, federal and international law.

28.     Defendant Active Tech Solutions is a California company that has its principal place of business in Berkeley, California.  Plaintiffs are informed and believe and on that basis allege that Active Tech Solutions is a corporation or an unincorporated business.  Defendant Active Tech Solutions is and at all times relevant hereto was owned, operated, managed, and controlled by the individual defendant co-conspirators for the purpose of furthering their unlawful conspiracy.  By engaging in the unlawful and conspiratorial conduct alleged, defendant Active Tech Solutions deprived plaintiffs and other similarly-situated individuals of their legal, human, and civil rights in violation of state, federal and international law.

29.     Defendant Vani Computer Solutions is a California limited liability company that has its principal place of business in Berkeley, California.  Defendant Vani Computer Solutions is and at all times relevant hereto was owned, operated, managed, and controlled by the individual defendant co-conspirators for the purpose of furthering their unlawful conspiracy.  By engaging in the unlawful and conspiratorial conduct alleged, defendant Vani Computer Solutions deprived plaintiffs and other similarly-situated individuals of their legal, human, and civil rights in violation of state, federal and international law.

30.     Plaintiffs are informed and believe and on that basis allege that defendant Lakireddy Bali Reddy d/b/a Reddy Realty Co. ("Reddy Realty") is a California sole proprietorship that has its principal place of business in Berkeley, California.  Defendant Reddy Realty is and at all times relevant hereto was owned, operated, managed, and controlled by the individual defendant co-conspirators for the purpose of furthering their unlawful conspiracy.  By engaging in the unlawful and conspiratorial conduct alleged, defendant Reddy Realty deprived plaintiffs and other similarly-situated individuals of their legal, human, and civil rights in violation of state, federal and international law.

D.     **Additional Defendant Allegations**

31.     At all times relevant hereto, defendants, and each of them, knowingly and willfully participated in a common scheme, plan, and conspiracy to violate the rights of plaintiffs and plaintiff class members, and each defendant is jointly and severally liable for all acts committed in furtherance of the common scheme, plan, and conspiracy alleged herein and for all damages, injuries, and other harms suffered by plaintiffs, plaintiff class members, plaintiff subclass members, or any of them, as a result of the acts or omissions alleged herein.

32.     At all times relevant hereto, by knowingly or recklessly participating in the acts, scheme, and conspiracy alleged herein and by permitting such acts, scheme and conspiracy to continue unremedied, all for their personal and corporate economic and other profit, each and every defendant was an agent and co-conspirator of each and every other defendant.  By engaging in the acts, omissions, scheme, and conspiracy alleged herein, each and every defendant was acting within the course and scope of this agency and conspiracy, and with the permission and consent of each of the remaining defendants.  To the extent that any acts, conduct or omissions alleged herein were perpetrated by one or more defendants by continuing to participate in this conspiracy, the remaining defendants approved or ratified said conduct or omissions by not disclosing the true facts as alleged herein.  As a result thereof for years, and continuing to date, defendants have engaged in a scheme, plan, and conspiracy to violate the law as detailed herein, to mislead and deceive federal and state agencies, and to mislead and deceive plaintiffs and plaintiff class and subclass members and the general public regarding the facts detailed herein, all for defendants' individual and mutual economic and personal benefit.

33.     At all times relevant hereto, due to defendants' control over all co-conspirators'

operations and their participation in the plan, scheme, and conspiracy alleged herein, including the

scheme to profit economically from each defendant's individual and collective efforts to exploit plaintiffs

and plaintiff class members, each defendant was the agent, joint venturer, aider and abettor and/or joint

conspirator of each other, worked in concert with their co-defendants and of the unnamed co-

conspirators described herein and acted within the course and scope of such agency, joint venture or

conspiracy.  At all times relevant hereto, each defendant conspired with its co-defendants by entering

into an agreement to commit and to keep secret the wrongful and tortious acts complained of herein

and, as a consequence thereof, each defendant participated in or committed a wrongful act in

furtherance of the conspiracy which resulted in economic injury to plaintiffs and members of the class as

defined below.  To the extent that the conduct alleged herein was perpetrated by certain defendants, co-

conspirators, agents, or joint venturers of the remaining defendants, defendants confirmed and ratified

the same by the above-described conduct.

34.     Whenever and wherever reference is made in this Complaint to any conduct by

defendants, such allegations and references shall be deemed to mean the conduct of one or more of the

defendants and/or persons under their control, and that each of the defendants is responsible for such

conduct because it was taken in furtherance of their common plan and scheme alleged herein.

35.     Whenever and wherever reference is made in this Complaint to individuals or groups

who are not named as defendants in this Complaint, but rather who are agents, joint venturers, or co-

conspirators of defendants, including but not limited to police and government officials in Andhra

Pradesh and elsewhere in India, such individuals or groups at all relevant times acted on behalf of the

defendants named in this Complaint within the scope of their agency, joint venture and/or conspiracy.

36.     Plaintiffs are informed and believe and on that basis allege that defendants authorized or

ratified all of the conduct committed by defendants' agents and co-conspirators that is alleged herein.

37.     Plaintiffs are informed and believe and on that basis allege that there exists and existed at

all times herein mentioned a unity of interest and ownership between and among the individual

defendants and the corporate defendants, such that a separateness between the individual defendants

and the corporate defendants has ceased to exist and such that the corporate defendants are the alter

egos of the individual defendants in that the individual defendants used the assets for their personal uses,

withdrew funds from the corporate defendants' bank accounts for their personal use, and maintained the corporate defendants as mere shells, instrumentalities, and conduits through which the individual defendants operated their conspiracy as alleged herein.  Adherence to the fiction of the separate existence of the corporate defendants as an entities distinct from the individual defendants would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

## IV.  *CLASS ACTION ALLEGATIONS*

38.  Plaintiffs bring this lawsuit as a class action for damages, injunctive, and declaratory relief on behalf of themselves and all other persons similarly situated.

39.  Plaintiffs bring this lawsuit on behalf of a class consisting of all Indian nationals who were recruited, solicited, or otherwise induced by defendants to emigrate to the United States and who were then employed by one or more of the defendants, with or without pay, in the United States.  In addition, plaintiffs Does I-VI bring this action on behalf of a subclass of all class members whom one or more of the individual defendants physically and/or sexually assaulted or threatened with such assault.

40.  Plaintiffs also bring this lawsuit as a collective action under the Fair Labor Standards Act on their own behalf and on behalf of all similarly-situated non-exempt class members to whom defendants failed to pay the minimum wage and/or overtime premiums required under federal law and who opt in to this action or who have opted in to this action by filing joining this Complaint or by filing a separate Consent to Sue pursuant to 28 U.S.C. §216(b).  Plaintiffs by this Complaint hereby consent to the filing of this action on their behalf and seek relief under the FLSA, 28 U.S.C. §216(b).  Plaintiffs will submit written FLSA consent forms on behalf of additional class members and FLSA claimants as this litigation progresses.

41.  The exact number of class members is not currently known, but plaintiffs are informed and believe and on that basis allege that the number of class members exceeds 200.  The class is so numerous that joinder of individual members is impracticable.  The exact number of subclass members is not currently known but, plaintiffs are informed and believe and on that basis allege that the number of subclass members exceeds 25.  The subclass is so numerous that joinder of individual members is impracticable.  Joinder is further rendered impracticable because the current residence of many class and subclass members is in India.

42.  Plaintiffs' injuries arise from a set of facts and circumstances common to that of the class members whom they seek to represent, and common questions of law and fact predominate among the named plaintiffs and class members.  These common questions of law and fact include, but are not limited to:

a.  Whether defendants recruited, solicited, or otherwise induced plaintiffs to emigrate to the United States using fraud, misrepresentations, or other improper inducements;

b.  Whether defendants knowingly violated United States immigration laws in  recruiting, soliciting, or otherwise inducing plaintiffs to emigrate to the United States;

c.  Whether defendants coerced plaintiffs into working or continuing to work under unlawful conditions through force, threats of force, or other improper means;

d.  Whether defendants sexually abused or otherwise physically abused plaintiff subclass members;

e.  Whether defendants' acts give rise to liability under the applicable provisions of the Anti-Peonage Act and other laws prohibiting peonage, indentured servitude, involuntary servitude, and the federal and state law common and statutory claims as detailed herein;

f.  Whether defendants paid plaintiffs and class members properly-calculated minimum wage and overtime premium payments as required by the FLSA and the California Labor Code;

g.  Whether defendants violated the legal, human, and/or civil rights of plaintiffs and plaintiff class members;

h.  Whether defendants permitted or suffered plaintiffs and plaintiff class members to perform work off the clock;

i.  Whether defendants engaged in a pattern or practice of keeping inaccurate time records of hours actually worked by plaintiffs and plaintiff class members;

j.  Whether defendants breached plaintiffs' and class members' employment contracts;

k.  Whether defendants breached the implied covenant of good faith and fair dealing by impairing or frustrating the right of plaintiffs to receive the benefits lawfully due to them under their employment contracts;

l.  Whether defendants acted wilfully in depriving plaintiffs and class members of their full

wages, including minimum wage and overtime premium payments;

m.  Whether defendants caused plaintiffs and plaintiff class members to suffer injury to their persons, business or property;

n.  Whether and to what extent each defendant is jointly and severally liable for the acts of each of the participants in the conspiracy which was undertaken in furtherance of the scheme detailed herein;

o.  Whether defendants' acts give rise to liability under the applicable provisions of RICO, the Law of Nations, customary international law, United States treaties, and the federal and state common law and statutory law claims as detailed herein; and

p.  Whether a unity of interest or ownership existed between the individual and the corporate defendants such that an individual separateness between the individual and corporate defendants ceased to exist.

43.  The claims of plaintiffs are typical of the claims of all other class members because each has been subjected to unlawful working and living conditions similar to those to which defendants subjected other class members, and each has suffered injury to her business or property as a consequence thereof. The claims of Does I-VI are also typical of the claims of all subclass members because each has been a victim of one or more defendants' physical and sexual assault and/or threats thereof similar to those to which defendants subjected other plaintiff subclass members.  Each plaintiff subclass member has suffered emotional and physical injury as well as injury to her business and property as a result of defendants' actions as alleged herein.

44.  Plaintiffs are able to, and will, fairly and adequately protect the interests of class members and possess no disabling conflicts of interest with any plaintiff class members or interests antagonistic to those of the absent plaintiff class members.  Does I-VI are able to, and will, fairly and adequately protect the interests of plaintiff subclass members and possess no disabling conflicts of interest with any plaintiff subclass members or interests antagonistic to those of the absent plaintiff subclass members. The attorneys for plaintiffs are experienced in class action litigation and will fairly and adequately represent the interests of plaintiffs, plaintiff class members, and plaintiff subclass members.

45.  This action is properly maintained as a class action because the prosecution of separate

actions by individual class members and/or individual subclass members would create a risk of inconsistent or varying adjudications with respect to individual class and subclass members which would establish incompatible standards of conduct for defendants, or adjudications which would as a practical matter be dispositive of the interests of the other class and subclass members or would substantially impair or impede the ability to protect their interests.

46.  This action is also properly maintained as a class action because defendants have acted and/or refused to act on grounds generally applicable to class members and subclass members, making final injunctive or corresponding declaratory relief appropriate as to the class and subclass as a whole.

47.  This action is also properly maintained as a class action because the above-referenced common questions of law and fact predominate over any issues affecting individual class and subclass members, and because such a method of proceeding is superior to any other available method for the group-wide resolution of this controversy, considering: (a) the interest of absent class and subclass members individually to control the prosecution of separate actions, in light of their precarious economic status in the United States and their practical inability to obtain relief in their homeland; (b) the lack of any substantial similar litigation already commenced by individual class members and subclass members; (c) the desirability of concentrating the litigation of these claims in a forum in which all defendants have substantial contacts; and (d) the lack of any substantial difficulties likely to be encountered in the management of this action on a group-wide basis.  The expense and burden of litigation makes it impractical for most members to seek individual redress for the wrongful conduct alleged.  The names and addresses of the class members are available from the defendants.

## V.  *FACTUAL ALLEGATIONS*

### A.  Allegations as to Individual Plaintiffs

#### 1. Jane Doe I

48.  Defendant Reddy induced plaintiff Jane Doe I to begin working for him at his home in India when Doe I was approximately 10 years old.  Defendant Reddy began requiring Doe I to have sexual relations with him shortly thereafter.

49. Defendant Reddy subsequently induced Doe I to emigrate to the United States by making false promises and misrepresentations to her, which she relied upon, including by telling Doe I in early

1999 that Reddy would enroll her in school if she came to the United States.   If fact, Reddy had no intention of enrolling Doe I in school and did not enroll Doe I in school.  Shortly before Doe I first came to the United States in or about April 1999, defendant Reddy, who was in the United States,  had a telephone conversation with Doe I, who was in India, about the arrangements for Doe I's travel to the United States, in furtherance of defendants' scheme to induce Doe I to come to the United States illegally.

50.  In knowing violation of United States immigration laws and with the knowledge and complicity of Indian government officials, defendants obtained a fraudulent passport and visa for Doe I and caused her to emigrate to the United States by force or fraud for their sexual pleasure and for the purpose of obtaining her labor under unlawful conditions for their personal and corporate profit. Defendants thereafter violated and continued to violate Doe I's legal, human, and civil rights, forced her to work under unlawful and substandard conditions, failed to pay her the minimum wages and overtime premiums required by law, threatened her, and physically abused and sexually assaulted her repeatedly.

51.  When plaintiff Doe I came to America she did not speak English and was unfamiliar with the American legal system.  She had no family or personal contacts in the United States, except for defendants and other individuals who were connected to or controlled by defendants.  Doe I was insecure, fearful, and completely dependent upon defendants for her livelihood, shelter, food, and employment.  Defendants made Doe I aware that they physically punished other class members who had attempted to leave defendants' employment, and they threatened Doe I with physical harm if she tried to leave defendants' employment or control.   Defendants also told Doe I that she was indebted to them because they paid for her travel to the United States and that Doe I was therefore required to work for defendants to pay off that debt.

52.  While in the United States, Doe I was required to perform work for defendants by cleaning tables at the Pasand Madras Cuisine restaurant in Berkeley, by performing painting and maintenance work on buildings in Berkeley that were owned by defendants, and by cleaning defendant Reddy's house, among other work.  Defendants willfully failed to pay  Doe I the legally required minimum wages and overtime premiums for such work.

53.  Defendants Reddy and Vijay Lakireddy required Doe I to engage in sexual relations against

her will by means of duress.  Defendants Reddy and Vijay Lakireddy required Doe I to engage in sexual relations when such defendants were adults and such defendants knew that Doe I was a minor.

54.  After United States law enforcement officials began to investigate defendants for possible criminal violations, defendants repeatedly instructed plaintiff Doe I to lie to such officials about, *inter alia,* her true identity, her immigration status, the circumstances of her emigration to the United States, and her working and living conditions in the United States.  Defendants threatened her that she would be jailed and/or would suffer other harm if she did not lie as she was told.  Defendants also threatened consequences to her family in India which plaintiff reasonably feared due to defendants' economic power and corrupt control over police and government officials in India.  Defendants corruptly threatened plaintiff and intimidated and used force against her in this manner for the unlawful and improper goal of obstructing or impeding the due administration of justice, delaying or preventing her and others' testimony in an official proceeding, and protecting themselves and their co-conspirators, and hiding their wrongdoing.

55.  Before Doe I came to the United States from India, defendant Reddy took items of jewelry and other personal property from Doe I.  Defendant Reddy has never returned these items to Doe I notwithstanding his promise to do so.

**2.  Jane Doe II**

56.  Defendant Reddy induced plaintiff Jane Doe II to begin working for him at his home in India when Doe II was under 14-years old.  Defendant Reddy began requiring Doe II to engage in sexual relations with him shortly thereafter.

57.  Defendant Reddy subsequently induced plaintiff Jane Doe II to emigrate to the United States by making false promises and misrepresentations to her and her parents, which Doe II relied upon.  For example, defendant Reddy's agent, Venkateswara Vemireddy, told Doe II and her parents in or about July 1999 that Doe II would receive $10 per hour for her work in the United States.  In fact, defendants had no intention of paying Doe II $10 per hour for her work in the United States and did not do so.

58.  In knowing violation of United States immigration laws and with the knowledge and complicity of Indian government officials, defendants obtained a fraudulent passport and visa for Doe II,

and caused her to emigrate to the United States by force or fraud for the purpose of obtaining her labor under unlawful conditions for their sexual pleasure and  personal and corporate profit.  Defendants thereafter violated and continued to violate Doe II's legal, human, and civil rights, forced her to work under unlawful and substandard conditions, failed to pay her the minimum wages and overtime premiums required by law, threatened her, and physically abused and sexually assaulted her repeatedly.

59.   When plaintiff Jane Doe II came to America, she was a minor, did not speak English and was unfamiliar with the American legal system.  She had no family or personal contacts in the United States, except for defendants and others who were connected to or controlled by defendants.  She was insecure, fearful, and completely dependent upon defendants for her livelihood, shelter, food, and employment.  Jane Doe II was aware that defendants physically punished other class members who had attempted to leave defendants' control and/or employment, and they threatened plaintiff Jane Doe II with physical harm if she tried to leave defendants' control and/or employment.  Defendants also led Doe II to believe that she was indebted to them because they paid for her travel to the United States and that Doe II was therefore required to work for defendants to pay off that debt.

60.   While in the United States, Doe II was required to perform work for defendants by working in the kitchen at the Pasand Madras Cuisine restaurant in Berkeley, and by performing painting and maintenance work on buildings owned by defendants in Berkeley, among other work.  Defendants willfully failed to pay  Doe II the legally required minimum wages and overtime premiums for such work.

61.   Defendants Reddy and Vijay Lakireddy required Doe II to engage in sexual relations against her will by means of duress.  Defendants Reddy and Vijay Lakireddy required Doe II to engage in sexual relations when such defendants were adults and such defendants knew Doe II was a minor.

62.   Defendant Reddy had custody of Doe II when she was a minor living in Berkeley, and defendant Reddy was required by California law to enroll Doe II in school.  Defendant Reddy knowingly chose not to enroll Doe II in school when she was in his custody so that Doe II would be available to perform work for defendants and so that defendants' unlawful scheme would not be discovered.

63.   After United States law enforcement officials began to investigate defendants for possible criminal violations, defendants repeatedly instructed plaintiff Doe II to lie to such officials about, *inter*

*alia,* her true identity, her immigration status, the circumstances of her emigration to the United States, and her working and living conditions in the United States.  Defendants threatened her that she would be jailed and/or would suffer other harm if she did not lie as she was told.  Defendants also threatened consequences to her family in India which plaintiff reasonably feared due to defendants' economic power and corrupt control over police and government officials in India.  Defendants corruptly threatened plaintiff and intimidated and used force against her in this manner for the unlawful and improper goal of obstructing or impeding the due administration of justice, delaying or preventing her and others' testimony in an official proceeding, and protecting themselves and their co-conspirators, and hiding their wrongdoing.  Defendants also took family photographs, jewelry, clothing, documents, and other personal property from Doe II's possession by means of force or fear and unlawfully and unjustifiably refused to return that property to her.

64.   On information and belief, in or about January 2000, defendants contacted the school that Jane Doe II had attended in Gannavaran, India and, with the cooperation of Indian officials, arranged to have official records falsified to state inaccurately the amount of time Doe II had attended school and to state inaccurately Doe II's date of birth.  These acts were taken with the specific intent to obstruct U.S. criminal investigations and prosecutions of defendants.

### 3. Jane Doe III

65.   Defendant Reddy induced plaintiff Jane Doe III to begin working for him at his home in India when she was approximately 8 or 9 years old.   Defendant Reddy began requiring Doe III to have sexual relations with him when Doe III was approximately 13 years old.

66.   Defendants subsequently induced plaintiff Jane Doe III to emigrate to Berkeley, California by making false promises and misrepresentations to her, which she relied upon.  For example, defendant Reddy told Doe III before she first came to the United States in or about October 1993 that Reddy would pay for her airfare.  In fact, defendant Reddy never intended to pay for Doe III's airfare, but rather to require Doe III to pay for her airfare by working without pay in the United States, which Reddy required her to do.

67.   In knowing violation of United States immigration laws and with the knowledge and complicity of Indian government officials, defendants obtained a fraudulent passport and visa for Doe

III, and caused her to emigrate to the United States by force or fraud when she was approximately 15-16 years old for their sexual pleasure and for the purpose of obtaining her labor under unlawful conditions for their personal and corporate profit.  Defendants thereafter violated and continued to violate Doe III's legal, human, and civil rights, forced her to work under unlawful and substandard conditions, failed to pay her the minimum wages and overtime premiums required by law, threatened her, physically abused and sexually assaulted her repeatedly, both in India and in the United States.

68.  When plaintiff Doe III came to America she was a minor, she did not speak English and was unfamiliar with the American legal system.  She had no family or personal contacts in the United States, except for defendants and other individuals who were connected to or controlled by defendants.  Doe III was insecure, fearful, and completely dependent upon defendants for her livelihood, shelter, food, and employment.  Defendants told Doe III that she was indebted to them because they paid for her travel to the United States and that Doe III was therefore required to work for defendants to pay off that debt.

69.  While in the United States, Doe III was required to perform work for defendants by working in the kitchen at the Pasand Madras Cuisine restaurants in Berkeley, Santa Clara and San Rafael, and by performing painting and maintenance work on buildings owned by defendants, among other work.  Defendants willfully failed to pay  Doe III the legally required minimum wages and overtime premiums for such work.

70.  Defendants Reddy, Vijay Lakireddy, Prasad Lakireddy, Jayaprakash Lakireddy, and Venkateswara Reddy Lakireddy, required Doe III to engage in sexual relations with them against her will by means of duress.  Defendants Reddy, Vijay Lakireddy, Prasad Lakireddy, Jayaprakash Lakireddy, and Venkateswara Reddy Lakireddy required Doe III to engage in sexual relations with them when such defendants were adults and such defendants knew Doe III was a minor.

71.  Defendant Reddy had custody of Doe III when she was a minor living in Berkeley, and defendant Reddy was required by California law to enroll Doe III in school.  Defendant Reddy knowingly chose not to enroll Doe II in school when she was in his custody so that Doe III would be available to perform work for defendants and so that defendants' unlawful scheme would not be discovered.

72.  After United States law enforcement officials began to investigate defendants for possible

criminal violations, defendants repeatedly instructed plaintiff Doe III to lie to such officials about, *inter alia,* her true identity, her immigration status, the circumstances of her emigration to the United States, and/or her working and living conditions in the United States.  Defendants threatened her that she would be jailed and/or would suffer other harm if she did not lie as she was told.  Defendants also threatened consequences to her family in India which plaintiff reasonably feared due to defendants' economic power and corrupt control over police and government officials in India.  Defendants confined Doe III against her will to prevent her from communicating and cooperating with United States government officials and investigators.  Defendants deprived Doe III of her personal property (including jewelry, furniture, household goods, and clothing) and important personal documents by force or fear to prevent her from communicating or cooperating with government officials and investigators, and defendants unjustifiably and unlawfully refused to return those items of personal property to Doe III's possession.  Defendants forced Doe III to change her residence repeatedly both within California, from California to other states, and finally from the United States to India, in an attempt to hide her from law enforcement officials.  Even while Doe III was in India, defendants and their co-conspirators attempted to prevent contact between Doe III and United States law enforcement officials.  Defendants corruptly threatened and transported plaintiff Doe III and intimidated and used force against her in this manner for the unlawful and improper goal of obstructing or impeding the due administration of justice, delaying or preventing her and others' testimony in an official proceeding, and protecting themselves and their co-conspirators, and hiding their wrongdoing.

### 4. Jane Doe IV

73.  In knowing violation of United States immigration laws and with the knowledge and complicity of Indian government officials, defendants obtained a fraudulent passport and visa for Doe IV and caused her to emigrate to the United States for their sexual pleasure and for the purpose of obtaining her labor under unlawful conditions for their personal and corporate profit.  Defendants thereafter violated and continued to violate Doe IV's legal, human, and civil rights, forced her to work under unlawful and substandard conditions, failed to pay her the minimum wages and overtime premiums required by law, threatened her, and physically abused and sexually assaulted her repeatedly.

74.  When plaintiff Doe IV came to America she did not speak English and was unfamiliar with

the American legal system.  She had no family or personal contacts in the United States, except for defendants and other individuals who were connected to or controlled by defendants.  Doe IV was insecure, fearful, and completely dependent upon defendants for her livelihood, shelter, food, and employment.  Defendants made Doe IV aware that they punished other class members who had attempted to leave defendants' employment, and they threatened Doe IV with economic harm if she tried to leave defendants' employment or control.

75.   While in the United States, Doe IV performed work for defendants by working in the kitchen and waiting tables at the Pasand Madras Cuisine restaurant in Berkeley, and by performing painting and maintenance work on buildings owned by defendants, among other work.  Defendants willfully failed to pay  Doe IV the legally required minimum wages and overtime premiums for such work.

76.   When Doe IV worked as a waitress at the Pasand Madras Cuisine restaurant in Berkeley, patrons left tips intended for Doe IV.   Defendants took that money and never gave any of it to Doe IV.  On information and belief, it was the regular business practice of defendants to keep for themselves tips left by patrons for waiters and waitresses at their restaurants.

77.   Defendants Reddy, Vijay Lakireddy, Prasad Lakireddy and Jayaprakash Reddy Lakireddy required Doe IV to engage in sexual relations with them against her will by means of duress.  Defendants Reddy, Vijay Lakireddy, and Jayaprakash Reddy required Doe IV to engage in sexual relations with them when such defendants were adults and such defendants knew that Doe IV was a minor.

78.   After United States law enforcement officials began to investigate defendants for possible criminal violations, defendants repeatedly instructed plaintiff Doe IV to lie about, *inter alia,* her true identity, her immigration status, the circumstances of her emigration to the United States, and her working and living conditions in the United States.  Defendants threatened her that she would be jailed and/or would suffer other harm if she did not lie as she was told.  Defendants also threatened consequences to her family in India which plaintiff reasonably feared due to defendants' economic power and corrupt control over police and government officials in India.  Defendants confined Doe IV to her residence against her will to prevent her from communicating or cooperating with government officials and investigators.  Defendants then forced Doe IV to return to India, in an attempt to hide her from law

enforcement officials.  Even while Doe IV was in India, defendants and their co-conspirators attempted to prevent contact between Doe IV and United States law enforcement officials.  When Doe IV was in India, defendants offered her money to depart the area so she would not be able to communicate or cooperate with United States government officials and investigators.  Defendants and their co-conspirators corruptly threatened and transported plaintiff Doe IV and intimidated and used force against her in this manner for the unlawful and improper goal of obstructing or impeding the due administration of justice, delaying or preventing her and others' testimony in an official proceeding, and protecting themselves and their co-conspirators, and hiding their wrongdoing.

**5.   Jane Doe V**

79.   In knowing violation of United States immigration laws and with the knowledge and complicity of Indian government officials, defendants obtained a fraudulent passport and visa for Doe V and caused her to emigrate to the United States for their sexual pleasure and for the purpose of obtaining her labor under unlawful conditions for their personal and corporate profit.   At the time, Doe V was a minor.  Defendants thereafter violated and continued to violate Doe V's legal, human, and civil rights, forced her to work under unlawful and substandard conditions, failed to pay her the minimum wages and overtime premiums required by law, threatened her, and physically abused and sexually assaulted her repeatedly.

80.   When plaintiff Doe V came to America she did not speak English and was unfamiliar with the American legal system.  She had no family or personal contacts in the United States, except for defendants and other individuals who were connected to or controlled by defendants.  Doe V was insecure, fearful, and completely dependent upon defendants for her livelihood, shelter, food, and employment.  Defendants made Doe V aware that they punished other class members who had attempted to leave defendants' employment, and they threatened Doe V with economic harm if she tried to leave defendants' employment or control.

81.   While in the United States, Doe V performed work for defendants by performing painting and maintenance work on buildings owned by defendants, among other work.  Defendants willfully failed to pay  Doe V the legally required minimum wages and overtime premiums for such work.

82.   Defendants Reddy and Vijay Lakireddy required Doe V to engage in sexual relations with

them against her will by means of duress.  Defendants Reddy and Vijay Lakireddy required Doe V to engage in sexual relations with them when such defendants were adults and such defendants knew that Doe V was a minor.

83.  Defendant Reddy had custody of Doe V when she was a minor living in Berkeley, and defendant Reddy was required by California law to enroll Doe V in school.  Defendant Reddy knowingly chose not to enroll Doe V in school when she was in his custody so that Doe V would be available to perform work for defendants and so that defendants' unlawful scheme would not be discovered.

84.  After law enforcement officials began to investigate defendants for possible criminal violations, defendants repeatedly instructed plaintiff Doe V to lie about, *inter alia,* her true identity, her immigration status, the circumstances of her emigration to the United States, and her working and living conditions in the United States.  Defendants threatened her that she would be jailed and/or would suffer other harm if she did not lie as she was told.  Defendants also threatened consequences to her family in India which plaintiff reasonably feared due to defendants' economic power and corrupt control over police and government officials in India.  Defendants forced Doe V to return to India, in an attempt to hide her from United States law enforcement officials.  Even while Doe V was in India, defendants and their co-conspirators attempted to prevent contact between Doe V and United States law enforcement officials.  When Doe V was in India, defendants offered her money to depart the area so she would not be able to communicate or cooperate with government officials and investigators.  Defendants and their co-conspirators deprived Doe V of important personal documents by force and threats of force to prevent her from communicating or cooperating with government officials and investigators.  Defendants corruptly threatened and transported plaintiff Doe V and intimidated and used force against her in this manner for the unlawful and improper goal of obstructing or impeding the due administration of justice, delaying or preventing her and others' testimony in an official proceeding, and protecting themselves and their co-conspirators, and hiding their wrongdoing.

**6.   Jane Doe VI**

85.  Defendants induced plaintiff Jane Doe VI to emigrate to Berkeley, California when she was a minor by making false promises and misrepresentations to her.  Defendant Reddy told Doe VI on or about June 1995 that he would pay her travel costs to the United States, but Reddy had no intention of

paying such costs, and in fact required Doe VI to work without pay for defendants in the United States to pay for such costs.  In knowing violation of United States immigration laws and with the knowledge and complicity of Indian government officials, defendants obtained a fraudulent passport and visa for Doe VI and caused her to emigrate to the United States for their sexual pleasure and for the purpose of obtaining her labor under unlawful conditions for their personal and corporate profit.  Defendants thereafter violated and continued to violate Doe VI's legal, human, and civil rights, forced her to work under unlawful and substandard conditions, failed to pay her the minimum wages and overtime premiums required by law, threatened her, and physically abused and sexually assaulted her repeatedly.

86.   When plaintiff Doe VI came to America she did not speak English and was unfamiliar with the American legal system.  She had no family or personal contacts in the United States, except for defendants and other individuals who were connected to or controlled by defendants.  Doe VI was insecure, fearful, and completely dependent upon defendants for her livelihood, shelter, food, and employment.  Defendants made Doe VI aware that they punished other class members who had attempted to leave defendants' employment, and they threatened Doe VI with economic harm if she tried to leave defendants' employment or control.

87.   While in the United States, Doe VI performed work for defendants by performing painting and maintenance work on buildings owned by defendants, and by performing kitchen work at the Pasand Madras Cuisine restaurant in Berkeley, among other work.  Defendants willfully failed to pay  Doe V the legally required minimum wages and overtime premiums for such work.

88.   Defendants Reddy, Vijay Lakireddy, and Jayaprakash Reddy Lakireddy required Doe VI to engage in sexual relations with them against her will by means of duress.  Defendants Reddy, Vijay Lakireddy, and Jayaprakash Reddy Lakireddy required Doe VI to engage in sexual relations with them when such defendants were adults and such defendants knew that Doe VI was a minor.

89.   Defendant Reddy had custody of Doe VI when she was a minor living in Berkeley, and defendant Reddy was required by California law to enroll Doe VI in school.  Defendant Reddy knowingly chose not to enroll Doe VI in school when she was in his custody so that Doe VI would be available to perform work for defendants and so that defendants' unlawful scheme would not be discovered.

90.   After United States law enforcement officials began to investigate defendants for possible criminal violations, defendants repeatedly instructed plaintiff Doe VI to lie about, *inter alia,* her true identity, her immigration status, the circumstances of her emigration to the United States, and her working and living conditions in the United States.   Defendants threatened Doe VI that she would be jailed and/or would suffer other harm if she did not lie as she was told.   Defendants also threatened consequences to her family in India which plaintiff reasonably feared due to defendants' economic power and corrupt control over police and government officials in India.   Defendants forced Doe VI to return to India, in an attempt to hide her from law enforcement officials.   Even while Doe VI was in India, defendants and their co-conspirators attempted to prevent contact between Doe VI and United States law enforcement officials.   When Doe VI was in India, defendants offered her money to depart the area so she would not be able to communicate or cooperate with government officials and investigators. Defendants and their co-conspirators deprived Doe VI of important personal documents by force and threats of force to prevent her from communicating or cooperating with government officials and investigators.   Defendants corruptly threatened and transported plaintiff Doe VI and intimidated and used force against her and hid her in this manner for the unlawful and improper goal of obstructing or impeding the due administration of justice, delaying or preventing her and others' testimony in an official proceeding, and protecting themselves and their co-conspirators, and hiding their wrongdoing.

### 7.   Jane Doe VII

91.   Defendants induced plaintiff Doe VII to emigrate to the United States by making false promises, and misrepresentations to her.   Defendant Vijay Lakireddy and his agent, Mr. Murthi, told Doe VII in or about March or April 1999 that, among other things, defendants would obtain a legal H-1 visa for her and employ her in a technology-related job if she came to the United States and that defendants would pay her a salary of $1,000 per month in United States.   Each of these representations was knowingly untrue, false and misleading.

92.   Defendants forced Doe VII, after her arrival in America, to work 10-14 hours each day, seven days each week as a nanny for defendant Vijay Lakireddy's children and as a house cleaner, launderer, gardener, and cook for defendant Vijay Lakireddy and his family.   Defendants also forced

plaintiff Doe VII to work in their other businesses, yet in none of her employment for defendants or any of them did defendants pay plaintiff Doe VII the minimum wage and overtime premiums required under federal and state law.

**8.    The Decedent.**

93.   Defendant Reddy induced the Decedent to begin working for him at his home in India when the Decedent was under 14-years old.  Defendant Reddy began requiring the Decedent to engage in sexual relations with him shortly thereafter.

94.   Defendant Reddy subsequently induced the Decedent to emigrate to the United States by making false promises and misrepresentations to her and her parents, which the Decedent relied upon. For example, defendant Reddy's agent, Venkateswara Vemireddy, told the Decedent and her parents in or about July 1999 that the Decedent would receive $10 per hour for her work in the United States.  In fact, defendants had no intention of paying the Decedent $10 per hour for her work in the United States and did not do so.

95.   In knowing violation of United States immigration laws and with the knowledge and complicity of Indian government officials, defendants obtained a fraudulent passport and visa for the Decedent, and caused her to emigrate to the United States by force or fraud for the purpose of obtaining her labor under unlawful conditions for their sexual pleasure and  personal and corporate profit. Defendants thereafter violated and continued to violate the Decedent's legal, human, and civil rights, forced her to work under unlawful and substandard conditions, failed to pay her the minimum wages and overtime premiums required by law, threatened her, and physically abused and sexually assaulted her repeatedly.

96.   When the Decedent came to America, she was a minor, did not speak English and was unfamiliar with the American legal system.  She had no family or personal contacts in the United States, except for defendants and others who were connected to or controlled by defendants.  She was insecure, fearful, and completely dependent upon defendants for her livelihood, shelter, food, and employment. The Decedent was aware that defendants physically punished other class members who had attempted to leave defendants' control and/or employment, and they threatened the Decedent with physical harm if she tried to leave defendants' control and/or employment.  Defendants also led the Decedent to believe

that she was indebted to them because they paid for her travel to the United States and that the Decedent was therefore required to work for defendants to pay off that debt.

97.   While in the United States, the Decedent was required to perform work for defendants by working in the kitchen at the Pasand Madras Cuisine restaurant in Berkeley, and by performing painting and maintenance work on buildings owned by defendants in Berkeley, among other work.  Defendants willfully failed to pay the Decedent the legally required minimum wages and overtime premiums for such work.

98.   Defendants Reddy, Prasad Lakireddy, Jayaprakash Lakireddy and Vijay Lakireddy required the Decedent to engage in sexual relations against her will by means of duress.  Defendants Reddy, Prasad Lakireddy, Jayaprakash Lakireddy and Vijay Lakireddy  and Vijay Lakireddy required the Decedent to engage in sexual relations when such defendants were adults and such defendants knew the Decedent was a minor.

99.   Defendant Reddy had custody of the Decedent when she was a minor living in Berkeley, and defendant Reddy was required by California law to enroll the Decedent in school.  Defendant Reddy knowingly chose not to enroll the Decedent in school when she was in his custody so that the Decedent would be available to perform work for defendants and so that defendants' unlawful scheme would not be discovered.

100.   On information and belief, in or about January 2000, defendants contacted the school that the Decedent had attended in Gannavaran, India and, with the cooperation of Indian officials, arranged to have official records falsified to state inaccurately the amount of time the Decedent had attended school and to state inaccurately the Decedent's date of birth.  These acts were taken with the specific intent to obstruct U.S. criminal investigations and prosecutions of defendants.

101.   Prior to her death, the Decedent had claims against the defendants common to those of the class and subclass, and her parents Lakshmi and Jarmani Prattipati bring those claims on her behalf pursuant to California Code of Civil Procedure §377.30.  Whenever reference is made in this complaint to claims by the class or subclass, those same claims are asserted on behalf of the Decedent.

**9.   Sreekanth Kollipara**

102.   Defendants induced plaintiff Kollipara to emigrate to the United States by making  false

promises and misrepresentations to him.  Defendants Vijay Lakireddy and Active Tech Solutions misrepresented to plaintiff Kollipara in or about October 1999, among other things, that he was being hired to work for a technology company owned by defendants named Active Tech Solutions, and that he would be paid an annual salary of $42,972.00, plus paid holidays and vacation, and health insurance. Defendants entered into a written contract with plaintiff Kollipara setting forth these and other terms of employment.  Active Tech Solutions later sent him visa information.  Defendants' representations to plaintiff Kollipara were knowingly untrue, false and misleading.   In knowing violation of United States immigration laws and with the knowledge and complicity of Indian government officials, defendants subsequently obtained a fraudulent visa for him and caused him to emigrate to the United States for the purpose of obtaining his labor under unlawful conditions for their personal and corporate profit.

103.     Defendants forced plaintiff Kollipara, after his arrival in America, to work approximately 12 hours a day, seven days a week performing computer work at the offices of Active Tech Solutions in Berkeley without being paid the minimum wage and overtime premiums required by federal and state law.

**10.  Jane Doe VIII**

104.     Defendants induced plaintiff Jane Doe VIII to emigrate to the United States by making false promises and misrepresentations to her.  On or about June or July 1999, Defendant Reddy told Doe VIII, via Doe VIII's brother, that Doe VIII would be paid $1,000 per month to work for defendants in the United States.  Defendant Reddy's misrepresentation was knowingly untrue, false and misleading.  In knowing violation of United States immigration laws and with the knowledge and complicity of Indian government officials, defendants subsequently obtained a fraudulent passport and visa for Doe VIII and caused her to emigrate to the United States for the purpose of obtaining her labor under unlawful conditions for their personal and corporate profit.

105.     In the United States, defendants required plaintiff Doe VIII to work approximately 10 hours each day, six days each week for defendant Pasand Madras Cuisine.  Defendants willfully failed to pay the Decedent the legally required minimum wages and overtime premiums for such work. Defendants told Doe VIII that she was indebted to them because they paid for her travel to the United States and that Doe VIII was therefore required to work for defendants to pay off that debt.

106.    After law enforcement officials began to investigate defendants for possible criminal violations, defendants repeatedly instructed plaintiff Doe VIII to lie to such officials about, *inter alia,* her true identity, her immigration status, the circumstances of her emigration to the United States, and her working and living conditions in the United States.  Defendants threatened her with deportation and/or other harm if she did not lie as she was told.  Defendants also threatened consequences to her family in India which plaintiff reasonably feared due to defendants' economic power and corrupt control over police and government officials in India.  Defendants threatened plaintiff in this manner for the unlawful and improper goal of obstructing justice,  protecting themselves and their co-conspirators, and hiding their wrongdoing.

**B.   Allegations as to the Class**

107.    The individual defendants herein own, control, and operate numerous businesses in India and the United States, including but not limited to the business entity defendants identified herein, and the individual defendants, and each of them, have accumulated considerable wealth and power at plaintiffs' expense as a result of their unlawful acts and conspiracies as alleged in this Complaint.

108.    Defendants have engaged in a continuing and longstanding conspiracy to violate state, federal, and international law by inducing Indian residents, including plaintiffs and plaintiff class members, through fraud, misrepresentations, and other improper means, including knowingly using fake passports, visa fraud, and sham marriages, to emigrate to the United States to perform menial work under unlawful conditions for defendants and other businesses that defendants own, control, and operate.  Defendants then forced plaintiffs and plaintiff class members, upon their arrival in the United States and thereafter, to live and work under unlawful and substandard conditions, in order to increase defendants' income and profits.

109.    The individual defendants repeatedly physically and sexually assaulted plaintiffs Does I-VI, the Decedent, and plaintiff subclass members, after they arrived in the United States.  The individual defendants also threatened those plaintiffs, the Decedent, and plaintiff subclass members, with physical harm if they tried to leave defendants' control, and made them aware that similarly-situated individuals who tried to leave defendants' employment had been beaten or otherwise harmed, both in the United States and in India where local police and government officials act as defendants' agents and co-

conspirators to perpetuate and further defendants' unlawful scheme as alleged herein.  Defendants specifically targeted young Indian females who were poor, of low caste status, unable to speak English, unfamiliar with the American legal system, and fearful of defendants and their wealth and power, in order to subjugate those individuals by taking advantage of their special vulnerabilities.  Defendants deliberately removed plaintiffs from their families and communities and thrust them in an unfamiliar environment, where they were unable to communicate with outsiders and where the only people they were able to meet were defendants and persons connected to and controlled by defendants.

110.    In 1998, defendant Vijay Lakireddy set up a business, defendant Active Tech Solutions, which purported to operate as a high-tech company but in truth did little or no technology work for clients.  Defendant Active Tech Solutions essentially served as a conduit through which the remaining defendants increased the supply of exploitable labor that would be available to defendants in order to further their conspiratorial goals.  Defendant Active Tech Solutions had a policy and practice of unlawfully applying for visas for a number of class members, claiming that they had computer experience and would be employed by Active Tech Solutions.  When persons recruited by defendants arrived in the United States, purportedly to work for defendant Active Tech Solutions, they were instead forced by defendants to labor for long hours and little compensation under unlawful conditions, often in other defendant businesses.

111.    Defendants created, continued, and perpetuated a system under which plaintiffs Does I-VI, the Decedent, and plaintiff subclass members, expected to suffer deportation, prison and/or physical injury if they revealed the truth concerning their working and living conditions to state or federal legal authorities or to the courts.  Because of defendants' threats and coercion, because of plaintiffs' and plaintiff class members' fear of retaliation by defendants and their co-conspirators, because of defendants withholding of plaintiffs' wages and theft of plaintiffs' personal property, and because of the tenuous nature of plaintiffs' right to remain in the United States, plaintiffs and plaintiff class members were especially vulnerable to exploitation and abuse and were forced by defendants to live in a permanent state of peonage and indentured and involuntary servitude.   Plaintiffs and plaintiff class members were led to believe that they were indebted to defendants because of expenses that defendants incurred to bring them to the United States and therefore were required to work for defendants in the United States.

112.    As alleged herein, at the time defendants committed their unlawful acts, plaintiffs and plaintiff class members were under defendants' control and were therefore prevented from commencing the present action, thereby tolling the applicable limitations periods for filing suit.  In addition, the wage and hour violations are tolled because defendants did not give proper notice to plaintiffs and plaintiff class members of their rights under the wage and hour laws as required by the applicable state and federal laws.

### C.   Additional Allegations from Plea Agreements

113.    Between January 1986 and January 2000, defendant Reddy agreed with defendant Vijay Lakireddy, defendant Prasad Lakireddy, defendant Jayaprakash Lakireddy, Annapurna Lakireddy, and others to bring plaintiffs and other Indian nationals into the United States on the basis of fraudulent visas.  As part of this conspiracy, Reddy arranged and directed others to make arrangements to encourage aliens to sign and submit false visa petitions, to obtain fraudulent Indian passports, and to enter the United States under false identities.  Reddy transported, harbored, and employed and directed others to transport, harbor, and employ the aliens who came into the United States on the basis of fraudulent visas.

114.    Prior to August 19, 1999, defendant Reddy made arrangements to have Venkateswara Vemireddy enter the United States on a fraudulent visa, to bring Lakshmi Galireddy into the United States falsely posing as Venkateswara Vemireddy's wife, and to bring two minor girls (Jane Doe II and the Decedent) into the United States as their daughters.  When Reddy arranged for Jane Doe II and the Decedent to be brought from India to the United States, he intended to engage in sexual intercourse with Jane Doe II and the Decedent, both of whom were minors when they were transported into the United States at his direction.  Reddy knew at the time that in California, an adult who has sexual intercourse with a minor can be charged with a criminal offense.

115.    During calendar year 1998 and on May 14, 1999, defendant Reddy knew that he had one or more bank accounts in India.  When Reddy signed his 1998 United States Individual Income Tax Return on May 14, 1999, he stated under penalty of perjury that he did not have an interest in or signature or other authority over any bank accounts in a foreign country at any time during 1998.  Reddy knew that this statement was false and material to a matter within the jurisdiction of the Internal

Revenue Service.  On information and belief, Reddy's purpose in intentionally submitting perjured documents to the United States was to cover up the criminal conspiracy that gives rise to this civil suit.

116.    As part of the conspiracy to commit immigration fraud that gives rise to this civil case, defendant Reddy, defendant Vijay Lakireddy, defendant Prasad Lakireddy, defendant Jayaprakash Lakireddy, Annapurna Lakireddy, and others arranged for entry into the United States of between 25 and 99 Indian nationals on the basis of fraudulent visas.  Many of these aliens were vulnerable victims because they were young women and girls who came from extremely poor families of a low caste in India, were desperate to come to the United States, and were dependent upon defendants for employment, housing, maintenance, and income both in India and in the United States.  These vulnerable victims included Jane Doe I, Jane Doe II, Jane Doe III and the Decedent.  On August 19, 1999, defendants caused Jane Doe II and the Decedent, who were then under the age of 16 years, to enter the United States in furtherance of this conspiracy.

117.    Defendant Reddy played a leadership role in the conspiracy that gives rise to this civil case because he was the primary organizer, leader, and decision-maker in the conspiracy to bring these aliens into the United States illegally; he directed others who assisted him in carrying out this conspiracy; and he determined where the aliens would work when they arrived in the United States, where they would  live, and how much money, if any, they would be paid for their work.  Defendants' immigration fraud conspiracy involved more than five participants and was otherwise extensive.

118.    As part of the immigration fraud conspiracy, Defendant Reddy on October 24, 1991 prepared a Petition for Alien Relative seeking permission to bring Jane Doe III, whose reported age was 11 years old, into the United States under a fraudulent identity.  On October 28, 1993, Jane Doe III, whose reported age was then 13 years old, entered the United States on this fraudulent visa.  When Reddy arranged to bring Jane Doe III into the United States, he intended to engage in sexual intercourse with her, knowing that she was a minor.

119.    Between 1986 and January 2000, defendant Jayaprakash Lakireddy agreed with defendant Reddy, defendant Vijay Lakireddy, defendant Prasad Lakireddy, Annapurna Lakireddy, and others to bring Indian nationals into the United States on the basis of fraudulent visas and to employ them in defendants' family businesses, which included defendants Pasand Madras Cuisine, Pasand, Inc.,

Lakireddy Investment Co., L.B. Reddy Estate Co., Jay Construction, Active Tech Solutions, Vani Computer Solutions, and Reddy Realty Co..  Defendant Jayaprakash Lakireddy employed more than six Indian nationals who entered the United States on the basis of fraudulent visas, and from on or about July 1, 1996 through December 31, 1999, he employed an individual named Koteswara Gurrala at Jay Construction in Berkeley, California.

120.    Between October 1997 and December 1999, defendant Vijay Lakireddy agreed with members of his family, including defendant Reddy and others, to bring Indian nationals into the United States on the basis of fraudulent visas.   Defendant Vijay Lakireddy arranged and directed others to make arrangements to encourage aliens to sign and submit false visa petitions for the purpose of entering the United States under false pretenses.  Prior to August 19, 1999, defendant Vijay Lakireddy made arrangements to have Venkateswara Vemireddy enter the United States on a fraudulent visa, and Vemireddy's entry into the United States facilitated the bringing of two minor girls, Jane Doe II and the Decedent, into the United States posing as Vemireddy's daughters.

121.    Defendant Vijay Lakireddy knew that his arrangements to have Venkateswara Vemireddy fraudulently obtain and use a visa was for the purpose of bringing Jane Doe II and the Decedent into the United States to facilitate the commission of felony offense and to place such plaintiffs under the control of defendant Reddy.  Defendant Vijay Lakireddy knew that such plaintiffs' labor and services in his families' restaurants, apartment complexes, and elsewhere were obtained or maintained through coercion, and it was reasonably foreseeable, and he did have reason to believe, that those plaintiffs' services would be maintained through coercion.  Defendant Vijay Lakireddy further knew that Jane Doe II and the Decedent were brought into the United States to serve defendants Reddy and other family members, and that those plaintiffs were particularly susceptible to the practices that they were thereafter exposed to by virtue of their youth, their status as low caste girls from the Indian Village of Velvadam, their inability to speak English, and their resulting dependancy on defendant Reddy for housing and sustenance, both in India and in the United States.

# VI.  *CLAIMS FOR RELIEF*

**Count I**

**For Violations of RICO, 18 U.S.C. §1962(c) and (d)**

**(By All Plaintiffs and All Class Members Against All Defendants)**

122.   Plaintiffs reallege and incorporate herein by reference ¶¶1-121 of this Complaint.

123.   This claim arises under §1964(c) of RICO and seeks to recover actual and treble damages based upon defendants' violations of 18 U.S.C. §1962(c)-(d), as described more fully below.

124.   At all times relevant hereto, each of the plaintiffs and plaintiff class and subclass members and each of the defendants constituted a "person" within the meaning of 18 U.S.C. §1961(3).

125.   Plaintiffs are informed and believe and on that basis allege that defendants and each of them are and have at all relevant times been engaged in interstate and foreign commerce.

**The RICO Enterprise(s)**

126.   Section 1961(4) of RICO defines the term "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4).

127.   At all times relevant hereto, pursuant to written and oral agreements between and among defendants as well as through their course of conduct, defendants have formed a series of association-in-fact enterprises within the meaning of 18 U.S.C. §1961(4) for the purpose of committing numerous acts of racketeering activity, including passport and visa fraud, mail and wire fraud, and violations of California criminal statutes.  On information and belief, these enterprises essentially form a series of closely-related,  family-owned conglomerates of businesses managed and controlled by the individual defendants, who are close relatives and who act interchangeably as managers of the various components of the family business, with defendant Reddy serving as patriarch of the family and the ultimate decision maker with regard to the operations of the family businesses and with the other individual defendants reporting to Reddy and managing components of the businesses.  On information and belief, the family conglomerate includes Pasand Madras Cuisine, Pasand, Inc., Lakireddy Investment Co.,  L.B. Reddy Estate Co.,  Jay Construction,  Active Tech Solutions, Vani Computer Solutions, and Reddy Realty Co., which are run as part of a single conglomerate without regard to any formalities of ownership.  The

family conglomerate owns and operates Indian restaurants in Berkeley and Santa Clara and formerly owned and operated an Indian restaurant in Santa Rosa. The family conglomerate also owns, manages and maintains a large quantity of residential and commercial real estate, mainly in Berkeley. The family conglomerate also performs some computer work, although the computer business is mainly a front for visa fraud.

128. On information and belief, the largest of the enterprises formed by defendants consists of an association-in-fact between all the defendants. Defendants' RICO enterprises also include the following separate enterprises, each of which defendants manage, operate, and control for both legitimate and illegitimate purposes.

a. **Lakireddy Bali Reddy**: Defendant Reddy is, and at all relevant times has been, a member of the following association-in-fact enterprises:

1) An association-in-fact between Reddy and Vijay Lakireddy;

2) An association-in-fact between Reddy and Prasad Lakireddy;

3) An association-in-fact between Reddy and Jayaprakash Lakireddy;

4) An association-in-fact between Reddy and Venkateswara Lakireddy;

5) An association-in-fact between Reddy and Pasand Madras Cuisine;

6) An association-in-fact between Reddy and Pasand Inc.;

7) An association-in-fact between Reddy and Lakireddy Investment Co.;

8) An association-in-fact between Reddy and L.B. Reddy Estate Co.;

9) An association-in-fact between Reddy and Jay Construction;

10) An association-in-fact between Reddy and Active Tech Solutions;

11) An association-in-fact between Reddy and Vani Computer Solutions; and

12) An association-in-fact between Reddy and Reddy Realty.

b. **Vijay Kumar Lakireddy**: Vijay Lakireddy is, and at all relevant times has been, a member of the following association-in-fact enterprises:

1) An association-in-fact between Vijay Lakireddy and Reddy;

2) An association-in-fact between Vijay Lakireddy and Prasad Lakireddy;

3) An association-in-fact between Vijay Lakireddy and Jayaprakash Lakireddy;

4) An association-in-fact between Vijay Lakireddy and Venkateswara Lakireddy;

5) An association-in-fact between Vijay Lakireddy and Pasand Madras Cuisine;

6) An association-in-fact between Vijay Lakireddy and Pasand Inc.;

7) An association-in-fact between Vijay Lakireddy and Lakireddy Investment Co.;

8) An association-in-fact between Vijay Lakireddy and L.B. Reddy Estate Co.;

9) An association-in-fact between Vijay Lakireddy and Jay Construction;

10) An association-in-fact between Vijay Lakireddy and Active Tech Solutions;

11) An association-in-fact between Vijay Lakireddy and Vani Computer Solutions; and

12) An association-in-fact between Vijay Lakireddy and Reddy Realty.

c. **Prasad Lakireddy**:  Defendant Prasad Lakireddy is, and at all relevant times has been, a member of the following association-in-fact enterprises:

1) An association-in-fact between Prasad Lakireddy and Reddy;

2) An association-in-fact between Prasad Lakireddy and Vijay Lakireddy;

3) An association-in-fact between Prasad Lakireddy and Jayaprakash Lakireddy;

4) An association-in-fact between Prasad Lakireddy and Venkateswara Lakireddy;

5) An association-in-fact between Prasad Lakireddy and Pasand Madras Cuisine;

6) An association-in-fact between Prasad Lakireddy and Pasand Inc.;

7) An association-in-fact between Prasad Lakireddy and Lakireddy Investment Co.;

8) An association-in-fact between Prasad Lakireddy and L.B. Reddy Estate Co.;

9) An association-in-fact between Prasad Lakireddy and Jay Construction;

10) An association-in-fact between Prasad Lakireddy and Active Tech Solutions;

11) An association-in-fact between Prasad Lakireddy and Vani Computer Solutions; and

12) An association-in-fact between Prasad Lakireddy and Reddy Realty.

d. **Jayaprakash Lakireddy**:  Jayaprakash Lakireddy is, and at all relevant times has been, a member of the following association-in-fact enterprises:

1) An association-in-fact between Jayaprakash Lakireddy and Reddy;

2) An association-in-fact between Jayaprakash Lakireddy and Vijay Lakireddy;

3) An association-in-fact between Jayaprakash Lakireddy and Prasad Lakireddy;

4) An association-in-fact between Jayaprakash Lakireddy and Venkateswara Lakireddy;

5) An association-in-fact between Jayaprakash Lakireddy and Pasand Madras Cuisine;

6) An association-in-fact between Jayaprakash Lakireddy and Pasand Inc.;

7) An association-in-fact between Jayaprakash Lakireddy and Lakireddy Investment Co.;

8) An association-in-fact between Jayaprakash Lakireddy and L.B. Reddy Estate Co.;

9) An association-in-fact between Jayaprakash Lakireddy and Jay Construction;

10) An association-in-fact between Jayaprakash Lakireddy and Active Tech Solutions;

11) An association-in-fact between Jayaprakash Lakireddy and Vani Computer Solutions; and

12) An association-in-fact between Jayaprakash Lakireddy and Reddy Realty.

e. **Venkateswara Lakireddy**:  Venkateswara Lakireddy is, and at all relevant times has been, a member of the following association-in-fact enterprises:

1) An association-in-fact between Venkateswara Lakireddy and Reddy;

2) An association-in-fact between Venkateswara Lakireddy and Vijay Lakireddy;

3) An association-in-fact between Venkateswara Lakireddy and Prasad Lakireddy;

4) An association-in-fact between Venkateswara Lakireddy and Jayaprakash Lakireddy;

5) An association-in-fact between Venkateswara Lakireddy and Pasand Madras Cuisine;

6) An association-in-fact between Venkateswara Lakireddy and Pasand Inc.;

7) An association-in-fact between Venkateswara Lakireddy and Lakireddy

Investment Co.;

8)   An association-in-fact between Venkateswara Lakireddy and L.B. Reddy Estate Co.;

9)   An association-in-fact between Venkateswara Lakireddy and Jay Construction;

10)  An association-in-fact between Venkateswara Lakireddy and Active Tech Solutions;

11)  An association-in-fact between Venkateswara Lakireddy and Vani Computer Solutions; and

12)  An association-in-fact between Venkateswara Lakireddy and Reddy Realty.

f.   **Pasand Madras Cuisine**:  Defendant Pasand Madras Cuisine is, and at all relevant times has been, a member of the following association-in-fact enterprises:

1)   An association-in-fact between Pasand Madras Cuisine and Reddy;

2)   An association-in-fact between Pasand Madras Cuisine and Vijay Lakireddy;

3)   An association-in-fact between Pasand Madras Cuisine and Prasad Lakireddy;

4)   An association-in-fact between Pasand Madras Cuisine and Jayaprakash Lakireddy;

5)   An association-in-fact between Pasand Madras Cuisine and Venkateswara Lakireddy;

6)   An association-in-fact between Pasand Madras Cuisine and Pasand Inc.;

7)   An association-in-fact between Pasand Madras Cuisine and Lakireddy Investment Co.;

8)   An association-in-fact between Pasand Madras Cuisine and L.B. Reddy Estate Co.;

9)   An association-in-fact between Pasand Madras Cuisine and Jay Construction;

10)  An association-in-fact between Pasand Madras Cuisine and Active Tech Solutions;

11)  An association-in-fact between Pasand Madras Cuisine and Vani Computer Solutions; and

12) An association-in-fact between Pasand Madras Cuisine and Reddy Realty.

g. **Pasand, Inc.**:  Defendant Pasand, Inc. is, and at all relevant times has been, a member of the following association-in-fact enterprises:

1)   An association-in-fact between Pasand Inc. and Reddy;

2)   An association-in-fact between Pasand Inc. and Vijay Lakireddy;

3)   An association-in-fact between Pasand Inc. and Prasad Lakireddy;

4)   An association-in-fact between Pasand Inc. and Jayaprakash Lakireddy;

5)   An association-in-fact between Pasand Inc. and Venkateswara Lakireddy;

6)   An association-in-fact between Pasand Inc. and Pasand Madras Cuisine;

7)   An association-in-fact between Pasand Inc. and Lakireddy Investment Co.;

8)   An association-in-fact between Pasand Inc. and L.B. Reddy Estate Co.;

9)   An association-in-fact between Pasand Inc. and Jay Construction;

10) An association-in-fact between Pasand Inc. and Active Tech Solutions;

11) An association-in-fact between Pasand Inc. and Vani Computer Solutions; and

12) An association-in-fact between Pasand Inc. and Reddy Realty.

h. **Lakireddy Investment Co.**:  Defendant Lakireddy Investment Co. is, and at all relevant times has been, a member of the following association-in-fact enterprises:

1)   An association-in-fact between Lakireddy Investment Co. and Reddy;

2)   An association-in-fact between Lakireddy Investment Co. and Vijay Lakireddy;

3)   An association-in-fact between Lakireddy Investment Co. and Prasad Lakireddy;

4)   An association-in-fact between Lakireddy Investment Co. and Jayaprakash Lakireddy;

5)   An association-in-fact between Lakireddy Investment Co. and Venkateswara Lakireddy;

6)   An association-in-fact between Lakireddy Investment Co. and Pasand Madras Cuisine;

7)   An association-in-fact between Lakireddy Investment Co. and Pasand Inc.;

8)   An association-in-fact between Lakireddy Investment Co. and L.B. Reddy Estate

Co.;

9) An association-in-fact between Lakireddy Investment Co. and Jay Construction;

10) An association-in-fact between Lakireddy Investment Co. and Active Tech Solutions;

11) An association-in-fact between Lakireddy Investment Co. and Vani Computer Solutions; and

12) An association-in-fact between Lakireddy Investment Co. and Reddy Realty.

i.   **L.B. Reddy Estate Co.**:  Defendant L.B. Reddy Estate Co. is, and at all relevant times has been, a member of the following association-in-fact enterprises:

1) An association-in-fact between L.B. Reddy Estate Co. and Reddy;

2) An association-in-fact between L.B. Reddy Estate Co. and Vijay Lakireddy;

3) An association-in-fact between L.B. Reddy Estate Co. and Prasad Lakireddy;

4) An association-in-fact between L.B. Reddy Estate Co. and Jayaprakash Lakireddy;

5) An association-in-fact between L.B. Reddy Estate Co. and Venkateswara Lakireddy;

6) An association-in-fact between L.B. Reddy Estate Co. and Pasand Madras Cuisine;

7) An association-in-fact between L.B. Reddy Estate Co. and Pasand Inc.;

8) An association-in-fact between L.B. Reddy Estate Co. and Lakireddy Investment Co.;

9) An association-in-fact between L.B. Reddy Estate Co. and Jay Construction;

10) An association-in-fact between L.B. Reddy Estate Co. and Active Tech Solutions;

11) An association-in-fact between L.B. Reddy Estate Co. and Vani Computer Solutions; and

12) An association-in-fact between L.B. Reddy Estate Co. and Reddy Realty.

j.   **Jay Construction Co.**:  Defendant Jay Construction is, and at all relevant times has been, a member of the following association-in-fact enterprises:

1) An association-in-fact between Jay Construction and Reddy;

2) An association-in-fact between Jay Construction and Vijay Lakireddy;

3) An association-in-fact between Jay Construction and Prasad Lakireddy;

4) An association-in-fact between Jay Construction and Jayaprakash Lakireddy;

5) An association-in-fact between Jay Construction and Venkateswara Lakireddy;

6) An association-in-fact between Jay Construction and Pasand Madras Cuisine;

7) An association-in-fact between Jay Construction and Pasand Inc.;

8) An association-in-fact between Jay Construction and Lakireddy Investment Co.;

9) An association-in-fact between Jay Construction and L.B. Reddy Estate Co.;

10) An association-in-fact between Jay Construction and Active Tech Solutions;

11) An association-in-fact between Jay Construction and Vani Computer Solutions; and

12) An association-in-fact between Jay Construction and Reddy Realty.

k.  **Active Tech Solutions**:  Defendant Active Tech Solutions is, and at all relevant times has been, a member of the following association-in-fact enterprises:

1) An association-in-fact between Active Tech Solutions and Reddy;

2) An association-in-fact between Active Tech Solutions and Vijay Lakireddy;

3) An association-in-fact between Active Tech Solutions and Prasad Lakireddy;

4) An association-in-fact between Active Tech Solutions and Jayaprakash Lakireddy;

5) An association-in-fact between Active Tech Solutions and Venkateswara Lakireddy;

6) An association-in-fact between Active Tech Solutions and Pasand Madras Cuisine;

7) An association-in-fact between Active Tech Solutions and Pasand Inc.;

8) An association-in-fact between Active Tech Solutions and Lakireddy Investment Co.;

9) An association-in-fact between Active Tech Solutions and L.B. Reddy Estate Co.;

10) An association-in-fact between Active Tech Solutions and Jay Construction;

11) An association-in-fact between Active Tech Solutions and Vani Computer Solutions; and

12) An association-in-fact between Active Tech Solutions and Reddy Realty.

l. **Vani Computer Solutions**:  Defendant Vani Computer Solutions is, and at all relevant times has been, a member of the following association-in-fact enterprises:

1) An association-in-fact between Vani Computer Solutions and Reddy;

2) An association-in-fact between Vani Computer Solutions and Vijay Lakireddy;

3) An association-in-fact between Vani Computer Solutions and Prasad Lakireddy;

4) An association-in-fact between Vani Computer Solutions and Jayaprakash Lakireddy;

5) An association-in-fact between Vani Computer Solutions and Venkateswara Lakireddy;

6) An association-in-fact between Vani Computer Solutions and Pasand Madras Cuisine;

7) An association-in-fact between Vani Computer Solutions and Pasand Inc.;

8) An association-in-fact between Vani Computer Solutions and Lakireddy Investment Co.;

9) An association-in-fact between Vani Computer Solutions and L.B. Reddy Estate Co.;

10) An association-in-fact between Vani Computer Solutions and Jay Construction;

11) An association-in-fact between Vani Computer Solutions and Active Tech Solutions; and

12) An association-in-fact between Vani Computer Solutions and Reddy Realty.

m. **Reddy Realty**:  Defendant Reddy Realty is, and at all relevant times has been, a member of the following association-in-fact enterprises:

1) An association-in-fact between Reddy Realty and Reddy;

2) An association-in-fact between Reddy Realty and Vijay Lakireddy;

3)  An association-in-fact between Reddy Realty and Prasad Lakireddy;

4)  An association-in-fact between Reddy Realty and Jayaprakash Lakireddy;

5)  An association-in-fact between Reddy Realty and Venkateswara Lakireddy;

6)  An association-in-fact between Reddy Realty and Pasand Madras Cuisine;

7)  An association-in-fact between Reddy Realty and Pasand Inc.;

8)  An association-in-fact between Reddy Realty and Lakireddy Investment Co.;

9)  An association-in-fact between Reddy Realty and L.B. Reddy Estate Co.;

10) An association-in-fact between Reddy Realty and Jay Construction;

11) An association-in-fact between Reddy Realty and Active Tech Solutions; and

12) An association-in-fact between Reddy Realty and Vani Computer Solutions.

### The Pattern of Racketeering Activity

129.   Defendants conducted and participated in the conduct of each of these enterprise(s)' affairs through a pattern of racketeering activity, as defined in 18 U.S.C. §1961(5) of RICO, that consisted of at least two acts of racketeering activity within a 10-year period.  Each act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including plaintiffs and the members of the plaintiff class.

130.   The general pattern of racketeering activity was as follows:  Defendants arranged to bring Indian nationals to the United States, on the basis of fraudulent visa petitions and other fraudulent immigration documents, as spouses, dependents and relatives of United States citizens or as skilled workers and their dependents.   Defendants employed these Indian nationals and transferred their employment among defendants' apartment buildings, office buildings, restaurants and other businesses, including Jay Construction, Reddy Realty, Pasand Madras Cuisine, Pasand, Inc., Vani Computer Solutions and Active Tech Solutions.  Defendants harbored the Indian nationals in buildings owned by defendants, including by defendants Reddy, L.B. Reddy Estate Co. and Lakireddy Investment Co. Defendants lured most of these Indian nationals to the United States on the basis of knowingly false misrepresentations about what their life, status and obligations would be in the United States, told them that they were indebted to defendants for the costs of arranging their emigration to the United States,

and placed them in positions of complete dependence upon defendants because of their lack of money, education, English-language skills, and their unlawful status in the United States, among other reasons. Defendants reinforced plaintiffs' and class members' sense of dependency by requiring some of the Indian nationals, including minor girls, to have sexual relations with defendants against their will. Defendants then took advantage of the Indian national's dependency and fear by employing those Indian nationals for long hours, often seven days a week, without paying them the minimum wage or overtime premiums as required by state and federal law. Defendants also converted personal property of several of the Indian nationals.

131. Section 1961(1) of RICO provides that a "person" commits an act of "racketeering activity" by engaging in (a) "any act or threat involving . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year" (18 U.S.C. §1961(1)(A)), and/or (b) "any act which is indictable under" any of a number of provisions of federal law (18 U.S.C. §1961(1)(B)-(E)).

132. Defendants engaged in numerous predicate acts of racketeering activity in violation of state and federal law. Defendants' activities, as detailed in this Complaint, constitute, *inter alia*: violations of the Immigration and Nationality Act pursuant to 8 U.S.C. §1324 that were performed for purposes of financial gain; acts of passport and visa fraud that are prohibited by 18 U.S.C. §§1542 and 1546; acts of identification document fraud that are prohibited by 18 U.S.C. §1028; acts of mail and wire fraud that are prohibited under 18 U.S.C. §§1341 and 1343, acts of witness tampering and retaliation against a witness that are prohibited under 18 U.S.C. §§1503, 1510, 1512, and 1513; acts of coercion and transportation for immoral purposes in violation of 18 U.S.C. §§2421-24; acts of peonage and involuntary servitude that are prohibited under 18 U.S.C. §1581 and §1584; and acts of extortion which are prohibited under California Penal Code §518, which California Penal Code violations are punishable by imprisonment for more than one year.

133. The specific predicate acts of racketeering activity engaged in by defendants included, but were not limited to, the following:

1) On or about April 1999, defendant Reddy did knowingly and intentionally induce plaintiff Jane Doe I to come to, enter, and reside in the United States, knowing that such coming in to,

entry, and residence was and would be in violation of the law, thereby violating 8 U.S.C.

§1324(a)(1)(D). These acts were performed for the purpose of obtaining financial gain for defendants

and harming Doe I by requiring Doe I to work for defendants' family businesses without paying Doe I

the minimum wage and overtime premiums as required by law.

2) On or about July 1999, defendant Reddy did knowingly and intentionally induce

plaintiff Doe II to come to, enter, and reside in the United States, knowing that such coming in to, entry,

and residence was and would be in violation of the law, thereby violating 8 U.S.C. §1324(a)(1)(D).

These acts were performed for the purpose of obtaining financial gain for defendants and harming Doe II

by requiring Doe II to work for defendants' family businesses without paying Doe II the minimum wage

and overtime premiums as required by law.

3) On or about October 1993, defendant Reddy did knowingly and intentionally

induce plaintiff Doe III to come to, enter, and reside in the United States, knowing that such coming in

to, entry, and residence was and would be in violation of the law, thereby violating 8 U.S.C.

§1324(a)(1)(D). These acts were performed for the purpose of obtaining financial gain for defendants

and harming Doe III by requiring Doe III to work for defendants' family businesses without paying Doe

III the minimum wage and overtime premiums as required by law.

4) On or about October 1992, defendant Reddy did knowingly and intentionally

induce plaintiff Doe IV to come to, enter, and reside in the United States, knowing that such coming in

to, entry, and residence was and would be in violation of the law, thereby violating 8 U.S.C.

§1324(a)(1)(D). These acts were performed for the purpose of obtaining financial gain for defendants

and harming Doe IV by requiring Doe IV to work for defendants' family businesses without paying Doe

IV the minimum wage and overtime premiums as required by law.

5) On or about July 1995, defendant Reddy did knowingly and intentionally induce

plaintiff Doe V to come to, enter, and reside in the United States, knowing that such coming in to, entry,

and residence was and would be in violation of the law, thereby violating 8 U.S.C. §1324(a)(1)(D).

These acts were performed for the purpose of obtaining financial gain for defendants and harming Doe V

by requiring Doe V to work for defendants' family businesses without paying Doe V the minimum wage

and overtime premiums as required by law.

6)  On or about July 1995, defendant Reddy did knowingly and intentionally induce plaintiff Doe VI to come to, enter, and reside in the United States, knowing that such coming in to, entry, and residence was and would be in violation of the law, thereby violating 8 U.S.C. §1324(a)(1)(D).  These acts were performed for the purpose of obtaining financial gain for defendants and harming Doe VI by requiring Doe VI to work for defendants' family businesses without paying Doe VI the minimum wage and overtime premiums as required by law.

7)  On or about March or April 1999, defendant Vijay Lakireddy did knowingly and intentionally induce plaintiff Doe VII to come to, enter, and reside in the United States, knowing that such coming in to, entry, and residence was and would be in violation of the law, thereby violating 8 U.S.C. §1324(a)(1)(D).   These acts were performed for the purpose of obtaining financial gain for defendants and harming Doe VII by requiring Doe VII to work for defendants without paying Doe VII the minimum wage and overtime premiums as required by law.

8)  On or about July 1999, defendant Reddy did knowingly and intentionally induce the Decedent to come to, enter, and reside in the United States, knowing that such coming in to, entry, and residence was and would be in violation of the law, thereby violating 8 U.S.C. §1324(a)(1)(D). These acts were performed for the purpose of obtaining financial gain for defendants and harming the Decedent by requiring the Decedent to work for defendants' family businesses without paying the Decedent the minimum wage and overtime premiums as required by law.

9)  On or about October 1999, defendants Vijay Lakireddy and Active Tech Solutions did knowingly and intentionally induce plaintiff Kollipara to come to, enter, and reside in the United States, knowing that such coming in to, entry, and residence was and would be in violation of the law, thereby violating 8 U.S.C. §1324(a)(1)(D).   These acts were performed for the purpose of obtaining financial gain for defendants and harming Kollipara by requiring Kollipara to work for defendants' family businesses without paying  Kollipara the minimum wage and overtime premiums as required by law.

10)  On or about June and July 1999, defendant Reddy did knowingly and intentionally induce plaintiff Jane Doe VIII to come to, enter, and reside in the United States, knowing that such coming in to, entry, and residence was and would be in violation of the law, thereby violating 8 U.S.C.

§1324(a)(1)(D).   These acts were performed for the purpose of obtaining financial gain for defendants and harming Doe VIII by requiring Doe VIII to work for defendants' family businesses without paying Doe VIII the minimum wage and overtime premiums as required by law.

11)  From on or about April 1999 to on or about November 1999, defendants, knowing that an alien, *i.e.* Jane Doe I, had come to, entered, and remained in the United States in violation of law, did knowingly harbor Doe I in apartments owned by defendants in Berkeley, California, including Apartments 114 and 228 at 2020 Bancroft Way and Apartment 4 at 2621 Bancroft Way, in violation of 8 U.S.C. 1324(a)(1)(A)(iii).   These acts were performed for the purpose of obtaining financial gain for defendants and harming Doe I by requiring Doe I to work for defendants' family businesses without paying Doe I the minimum wage and overtime premiums as required by law.

12)  From on or about August 1999 to on or about November 1999, defendants, knowing that an alien, *i.e.* Jane Doe II, had come to, entered, and remained in the United States in violation of law, did knowingly harbor Doe II in apartments owned by defendants in Berkeley, California, including Apartment 228 at 2020 Bancroft Way in Berkeley, California, in violation of 8 U.S.C. 1324(a)(1)(A)(iii).   These acts were performed for the purpose of obtaining financial gain for defendants and harming Doe II by requiring Doe II to work for defendants' family businesses without paying Doe II the minimum wage and overtime premiums as required by law.

13)  From on or about October 1993 to on or about January 2000 (except for two months in 1995 and two months in 1999), defendants, knowing that an alien, *i.e.* Jane Doe III, had come to, entered, and remained in the United States in violation of law, did knowingly harbor Doe III in houses and apartments owned by defendants in Berkeley, San Rafael, and Santa Clara, California,  in violation of 8 U.S.C. 1324(a)(1)(A)(iii).   These acts were performed for the purpose of obtaining financial gain for defendants and harming Doe III by requiring Doe III to work for defendants' family businesses without paying Doe III the minimum wage and overtime premiums as required by law.

14)  From on or about October 1992 to on or about January 2000 (except for three months in 1995 and two months in 1997), defendants, knowing that an alien, *i.e.* Jane Doe IV, had come to, entered, and remained in the United States in violation of law, did knowingly harbor Doe IV in apartments owned by defendants in Berkeley, California, including apartments on Bancroft Street,

Bancroft Way, Spruce Street, and Durant Avenue, in violation of 8 U.S.C. 1324(a)(1)(A)(iii).   These acts were performed for the purpose of obtaining financial gain for defendants and harming Doe IV by requiring Doe IV to work for defendants' family businesses without paying Doe IV  the minimum wage and overtime premiums as required by law.

15)  From on or about July 1995 to on or about January 2000 (except for six weeks in 1996), defendants, knowing that an alien, *i.e.* Jane Doe V, had come to, entered, and remained in the United States in violation of law, did knowingly harbor Doe V in apartments owned by defendants in Berkeley, California, including apartments on Spruce Street and Bancroft Way, in violation of 8 U.S.C. 1324(a)(1)(A)(iii).   These acts were performed for the purpose of obtaining financial gain for defendants and harming Doe V by requiring Doe V to work for defendants' family businesses without paying Doe V the minimum wage and overtime premiums as required by law.

16)  From on or about July 1995 to on or about January 2000 (except for six weeks in 1996), defendants, knowing that an alien, *i.e.* Jane Doe VI, had come to, entered, and remained in the United States in violation of law, did knowingly harbor Doe VI in apartments owned by defendants in Berkeley, California, including apartments on Spruce Street, Bancroft Way, and Channing Street, in violation of 8 U.S.C. 1324(a)(1)(A)(iii).   These acts were performed for the purpose of obtaining financial gain for defendants and harming Doe VI by requiring Doe VI to work for defendants' family businesses without paying Doe VI the minimum wage and overtime premiums as required by law.

17)  From on or about August 1999 to on or about November 1999, defendants, knowing that an alien, *i.e.* the Decedent, had come to, entered, and remained in the United States in violation of law, did knowingly harbor the Decedent in apartments owned by defendants in Berkeley, California, including Apartment 228 at 2020 Bancroft Way in Berkeley, California, in violation of 8 U.S.C. 1324(a)(1)(A)(iii).   These acts were performed for the purpose of obtaining financial gain for defendants and harming the Decedent by requiring the Decedent to work for defendants' family businesses without paying the Decedent the minimum wage and overtime premiums as required by law.

18)  From on or about March 1999 to on or about November 1999, defendants, knowing that an alien, *i.e.* Kollipara, had come to, entered, and remained in the United States in violation of law, did knowingly harbor Kollipara in apartments owned by defendants in Berkeley,

California, in violation of 8 U.S.C. 1324(a)(1)(A)(iii).   These acts were performed for the purpose of obtaining financial gain for defendants and harming Kollipara by requiring Kollipara to work for defendants' family businesses without paying Kollipara the minimum wage and overtime premiums as required by law.

19)  From on or about August 1999 to on or about January 2000, defendants, knowing that an alien, *i.e.* Jane Doe VIII, had come to, entered, and remained in the United States in violation of law, did knowingly harbor Doe VIII in apartments owned by defendants in Berkeley, California, including Apartment 2 at 1915 Haste Street, in violation of 8 U.S.C. 1324(a)(1)(A)(iii). These acts were performed for the purpose of obtaining financial gain for defendants and harming Doe VIII by requiring Doe VII to work for defendants' family businesses without paying Doe VIII the minimum wage and overtime premiums as required by law.

20)  On or about November 25, 1999, in the Northern District of California, defendant Prasad Lakireddy did knowingly and intentionally transport and move Jane Doe I, an alien, within the United States by means of transportation and otherwise, knowing and in reckless disregard of the fact that Doe I had come to, entered, and remained in the United States in violation of law and in furtherance of such violation of law, all in violation 8 U.S.C. §1324(a)(i)(A)(ii).  These acts were performed for the purpose of obtaining financial gain for defendants and harming Doe I by requiring Doe I to work for defendants' family businesses without paying Doe I the minimum wage and overtime premiums as required by law.

21)     On or about November 25, 1999, in the Northern District of California, defendant Prasad Lakireddy did knowingly and intentionally transport and move Jane Doe VIII, an alien, within the United States by means of transportation and otherwise, knowing and in reckless disregard of the fact that Doe VIII had come to, entered, and remained in the United States in violation of law and in furtherance of such violation of law, all in violation 8 U.S.C. §1324(a)(i)(A)(ii).  These acts were performed for the purpose of obtaining financial gain for defendants and harming Doe VIII by requiring Doe VIII to work for defendants' family businesses without paying Doe VIII the minimum wage and overtime premiums as required by law.

22)     On or about August 19, 1999, in the Northern District of California, defendant

Reddy did knowingly and intentionally transport and move Jane Doe II, an alien, within the United States by means of transportation and otherwise, knowing and in reckless disregard of the fact that Doe II had come to, entered, and remained in the United States in violation of law and in furtherance of such violation of law, all in violation 8 U.S.C. §1324(a)(i)(A)(ii).  These acts were performed for the purpose of obtaining financial gain for defendants and harming Doe II by requiring Doe II to work for defendants' family businesses without paying Doe II the minimum wage and overtime premiums as required by law.

23)     On or about August 19, 1999, in the Northern District of California, defendant Reddy did knowingly and intentionally transport and move the Decedent, an alien, within the United States by means of transportation and otherwise, knowing and in reckless disregard of the fact that the Decedent had come to, entered, and remained in the United States in violation of law and in furtherance of such violation of law, all in violation 8 U.S.C. §1324(a)(i)(A)(ii).  These acts were performed for the purpose of obtaining financial gain for defendants and harming the Decedent by requiring the Decedent to work for defendants' family businesses without paying the Decedent the minimum wage and overtime premiums as required by law.

24)     Between January 1991 and December 2000, defendants willfully and knowingly furnished to Does I-VI, Doe VIII,  and to the Decedent passports that defendants had obtained by reason of false statements in violation of 18 U.S.C. §1542.

25)     Between on or about November 3, 1998 and March 24, 1999, in the Northern District of California, defendant Vijay Lakireddy did under penalty of perjury knowingly subscribe as true false statements as to material facts in a Petition for Non-Immigrant Worker required by the immigration laws and the regulations prescribed thereunder, and did knowingly present to the Immigration and Naturalization Service this Petition for Non-Immigrant Worker containing these false statements and failing to contain any reasonable basis in law and in fact for these statements, to wit: (1) that Active Tech Solutions would employ plaintiff Sreekanth Kollipara full-time at Active Tech Solutions, 2342 Shattuck Ave., Ste. 403, Berkeley, California, as a Programmer/Analyst; and (2) that Active Tech Solutions would pay Sreekanth Kollipara $42,972 per year for the period of November 15, 1998, through November 15, 2001; when in truth and in fact, as the defendant well knew, Active Tech

Solutions had no intention to employ Sreekanth Kollipara full-time at Active Tech Solutions, 2342 Shattuck Ave., Ste. 403, Berkeley, California, as a Programmer/Analyst; and (2) that Active Tech Solutions would not pay Sreekanth, Kollipara $42,972 per year for the period of November 15, 1998 through November 15, 2001; all in violation of 18 U.S.C. §1546.  These acts were performed for the purpose of obtaining financial gain for defendants and harming Sreekanth Kollipara by requiring Sreekanth Kollipara to work for defendants' family businesses without paying Sreekanth Kollipara the minimum wage and overtime premiums as required by law.

26)     On or about March 25, 1998, in the Northern District of California, defendant Vijay Lakireddy did under penalty of perjury knowingly subscribe as true false statements as to material facts in a Petition for Non-Immigrant Worker required by the immigration laws and the regulations prescribed thereunder, and did knowingly present to the Immigration and Naturalization Service this Petition for Non-Immigrant Worker containing these false statements and failing to contain any reasonable basis in law and in fact for these statements, to wit: (1) that Active Tech Solutions would employ Reddy, Vemi Reddy V., also known as Venkateswara Reddy Vemireddy, full-time at Active Tech Solutions, 2342 Shattuck Ave., Ste. 403, Berkeley, California, as a Programmer/Analyst; and (2) that Active Tech Solutions would pay Venkateswara Reddy Vemireddy $42,972 per year for the period of April 1, 1998 through April 1, 2001  when in truth and in fact, as the defendant well knew, (1) that Active Tech Solutions had no intention to employ Venkateswara Reddy Vemireddy full-time at Active Tech Solutions, 2342 Shattuck Ave., Ste. 403, Berkeley, California, as a Programmer/Analyst; (2) that Active Tech Solutions would not pay Venkateswara Reddy Vemireddy $42,972 per year for the period of April 1, 1998 through April 1, 2001; all in violation of 18 U.S.C. §1546.  These acts were committed for the specific purpose of obtaining financial gain for defendants by subsequently using Venkateswara Reddy Vemireddy as part of defendants' plan to transport Doe II, the Decedent, and Doe VIII to the United States under false pretenses, as the wife and children of Venkateswara Reddy Vemireddy, so that Doe II, the Decedent, and Doe VIII could be required to work in defendants' family businesses without paying minimum wage or overtime premiums as required by law.

27)     Between January 1991 and December 2000, defendants knowingly made under oath, or subscribed as true under penalty of perjury, false statements with respect to material facts in

applications required by the immigration laws and regulations prescribed there under, and knowingly presented such applications, affidavits, or other documents containing such false statements fraudulently to apply for, obtain, and receive, United States visas, including but not limited to H-1 visas, for plaintiffs Does I-VII, Doe VIII and the Decedent, in violation of 18 U.S.C. §1546.

28)     On or about January 11, 2000, in the Northern District of California and elsewhere, defendant Prasad Lakireddy did knowingly use intimidation, threaten, and corruptly persuade and did attempt to use intimidation, threaten, and corruptly persuade another person, that is, Jane Doe I, with intent to hinder, delay, and prevent the communication to a law enforcement officer of the United States of information relating to the commission and possible commission of a Federal offense in violation of 18 U.S.C. §1512(b)(3).  These acts were committed to prevent disclosure of defendants' unlawful scheme.

29)     On or about November 25, 1999, in the Northern District of California and elsewhere, defendant Prasad Lakireddy did knowingly use intimidation, threaten, and corruptly persuade and did attempt to use intimidation, threaten, and corruptly persuade another person, that is, Jane Doe I, with intent to hinder, delay, and prevent the communication to a law enforcement officer of the United States of information relating to the commission and possible commission of a Federal offense in violation of 18 U.S.C. §1512(b)(3).  These acts were committed to prevent disclosure of defendants' unlawful scheme.

30)     After United State law enforcement officials began investigating defendants' unlawful scheme in January 2000, the individual defendants knowingly and willfully required and arranged for Does III-VI and other subclass members to return to India for the specific purpose of preventing them from cooperating with or being contacted by United States law enforcement officials. Defendants and their co-conspirators repeatedly instructed Does III-VI, while in India, to remain hidden from United States law enforcement officials, including by not staying in their home village of Velvadam and not returning to the United States.  After Doe V returned to the United States, defendants and their co-conspirators attempted to bribe Doe III, Doe IV, and Doe VI, and other subclass members for their passports.  When that effort did not succeed, defendants forcibly seized Doe III's, Doe V's, Doe VI's, and other subclass members' passports.  Defendants and their co-conspirators accomplished these ends

though the use of intimidation, threats, and/or corrupt persuasion and did so for the improper goal of obstructing justice, protecting themselves and their co-conspirators, and hiding their wrongdoing, in violation of 18 U.S.C. §§1510, 1512, 1513.

31)     On information and belief, on or about October 1999, in the Northern District of California, defendants Vijay Lakireddy and Active Tech Solutions, having devised a scheme to defraud plaintiff Kollipara by inducing him to emigrate to the United States on the basis of intentional misrepresentations as to his pay and working conditions and on the basis of false and fraudulent information submitted by defendants to the United States Immigration and Naturalization Service, did for the purpose of executing such scheme intentionally cause an offer letter and visa-related information to be deposited with the United States Postal Service for delivery by mail to Kollipara in India, in violation of 18 U.S.C. §1341, which criminalizes mail fraud.

32)     On information and belief, on or about October 12, 1999, in the Northern District of California, defendants Vijay Lakireddy and Active Tech Solutions, having devised a scheme to defraud plaintiff Kollipara by inducing him to emigrate to the United States on the basis of intentional misrepresentations as to his pay and working conditions and on the basis of false and fraudulent information submitted by defendants to the United States Immigration and Naturalization Service, did for the purpose of executing such scheme intentionally cause an electronic mail message to be transmitted by wire from defendants in the United States to plaintiff Kollipara in India, in violation of 18 U.S.C. §1343, which criminalizes wire fraud.

33)     On information and belief, on or about October 19, 1999, in the Northern District of California, defendants Vijay Lakireddy and Active Tech Solutions, having devised a scheme to defraud plaintiff Kollipara by inducing him to emigrate to the United States on the basis of intentional misrepresentations as to his pay and working conditions and on the basis of false and fraudulent information submitted by defendants to the United States Immigration and Naturalization Service, did for the purpose of executing such scheme intentionally cause an electronic mail message to be transmitted by wire from defendants in the United States to plaintiff Kollipara in India, in violation of 18 U.S.C. §1343, which criminalizes wire fraud.

34)     On information and belief, on or about April 1999, in the Northern District of

California, defendant Reddy, having devised a scheme to defraud plaintiff Doe I by inducing her to emigrate to the United States on the basis of intentional misrepresentations and on the basis of false and fraudulent information submitted by defendants to the United States Immigration and Naturalization Service, did for the purpose of executing such scheme place a telephone call from defendant in the United States to plaintiff Doe I in India to discuss travel arrangements, in violation of 18 U.S.C. §1343, which criminalizes wire fraud.

35)     Between January 1991 and December 2000, defendants knowingly and willfully induced plaintiffs Does I-VI , the Decedent, and plaintiff subclass members to emigrate to the United States and then caused plaintiffs once in the United States reasonably to believe that they could not leave defendants' employment and/or control, based on such individuals' supposed debt to defendants for paying to bring the plaintiffs to the United States, and further based on defendants' physical and/or sexual assaults, threats of deportation, and/or physical violence, all of which threats and assaults preyed on plaintiffs' special vulnerabilities and their financial, physical and psychological conditions as alleged herein.  By engaging in such conduct, defendants subjected plaintiffs to unlawful peonage as proscribed by 18 U.S.C. §1581.

36)     Between January 1991 and December 2000, defendants knowingly and willfully induced plaintiffs Does I-VI , the Decedent, and plaintiff subclass members to emigrate to the United States and then caused plaintiffs once in the United States reasonably to believe that they could not leave defendants' employment and/or control, based on such individuals' supposed debt to defendants for paying to bring the plaintiffs to the United States, and further based on defendants' physical and/or sexual assaults, threats of deportation, and/or physical violence, all of which threats and assaults preyed on plaintiffs' special vulnerabilities and their financial, physical and psychological conditions as alleged herein.  By engaging in such conduct, defendants subjected plaintiffs to unlawful involuntary servitude as proscribed by 18 U.S.C. §1584.

37)     Between January 1991 and December 2000, defendants knowingly and willfully used force and threats of force to coerce plaintiffs Does I-VI , the Decedent, and plaintiff subclass members to provide labor without pay for defendants and to obtain jewelry, documents, photographs, and other valuable personal property from such plaintiffs, thereby committing extortion in violation of

the Hobbs Act, 18 U.S.C. §1951.

38)    Plaintiffs are informed and believe and on that basis allege that between January 1991 and December 2000, each of the individual defendants traveled between California and India with the intent to distribute the proceeds of their unlawful conspiracy or to otherwise promote, manage, establish, and carry on the unlawful acts alleged herein, and thereafter performed or attempted to perform such acts, in violation of 18 U.S.C. §1952.

39)    Between January 1991 and December 2000, the individual defendants knowingly persuaded, induced, enticed and coerced Doe I-VI, the Decedent, and other subclass members to travel in foreign commerce to enable defendants sexually to exploit such plaintiffs, in violation of 18 U.S.C. §2422.

40)    Between January 1991 and December 2000, the individual defendants knowingly aided and abetted the transportation in foreign commerce of Does I-VI, the Decedent, and subclass members,  most of whom were minors, with the intent that Reddy and others sexually exploit Does I-VI, the Decedent, and subclass members when they arrived in the United States, in violation of 18 U.S.C. §§2421 and 2423.

41)    Between January 1991 and December 2000, defendants knowingly and willfully used force and threats of force to coerce plaintiffs Does I-VI , the Decedent, and plaintiff subclass members to provide labor without pay for defendants and to obtain jewelry, documents, photographs, and other valuable personal property from such plaintiffs, thereby committing extortion in violation of California Penal Code §518.

134.   Defendants' multiple acts of racketeering activity committed as described above, were related to each other and amounted to or posed a threat of continued racketeering activity, and, therefore, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. §1961(5).  In violation of 18 U.S.C. §1962(c), each of the defendants conducted or participated in the conduct of each of the above-referenced enterprises' affairs through a pattern of racketeering activity, as described above.

**The Conspiracy**

135.   On information and belief, each of the defendants agreed to join, and did join, the racketeering conspiracy alleged above.  On information and belief, each of the defendants agreed to

commit, and did commit, at least two predicate acts that were part of the pattern of racketeering activity, knowing that those predicate acts were part of a pattern of racketeering activity.  By participating in this racketeering conspiracy, each of the defendants violated 18 U.S.C. §1962(d).

**Injury to Business or Property**

136.   As a direct and proximate result of defendants' violations of 18 U.S.C. §§1962(c) and (d) as alleged herein, plaintiffs and class members have been deprived of personal property, deprived of wages and other income for services actually performed, and otherwise injured in their business or property.  Pursuant to §1964(c) of RICO, plaintiffs are entitled to bring this action on their own behalf and on behalf of the plaintiff class members to recover herein actual and treble damages, the costs of bringing this suit and attorneys' fees.

**Count II**

**For Violations of RICO, 18 U.S.C. §§1962(a) and (d)**

**(By All Plaintiffs and All Class Members Against All Defendants)**

137.   Plaintiffs reallege and incorporate herein by reference ¶¶1-136 of this Complaint.

138.   This claim for relief arises under RICO, 18 U.S.C. §1964(c), and alleges a right to recover actual and treble damages based on defendants' violations of 18 U.S.C. §§1962(a) and (d), as set forth herein.

139.   Defendants derived, and conspired to derive, substantial economic proceeds and profits from the pattern of racketeering activity alleged herein.

140.   Defendants used and invested, and conspired to use and invest, the proceeds and profits obtained from their pattern of racketeering activity alleged herein to expand the scope, profitability, and influence of their association-in-fact enterprises as alleged in ¶128, to perpetuate their control over plaintiffs and class members and to prevent plaintiffs and class members from disclosing defendants' wrongful activity to government authorities or attempting to escape from defendants' control, to ensure the continued secretiveness and effectiveness of the unlawful activity conducted by such enterprises, and to cover up and induce others to help cover up defendants' unlawful activity, all to plaintiffs' and class members' economic detriment.  Among other conduct, defendants used and conspired to use such proceeds: to influence police and other government officials in India and to obtain such officials'

cooperation in helping to further and to cover up defendants' unlawful schemes; to induce defendants' employees, associates, and other co-conspirators and confederates not to criticize, complain about, or interfere with defendants' pattern of racketeering activity; to pay attorneys and others to participate in and help to accomplish defendants' immigration fraud schemes; to increase the economic and other control, power, and influence that defendants wielded over plaintiffs and plaintiffs' family members, thereby making it more difficult for plaintiffs to seek outside assistance from government officials or others; and to induce defendants' confederates and agents to engage in acts of retaliation or threats of retaliation against plaintiffs' and class members' and the families of plaintiffs and class members for the purpose of coercing plaintiffs and class members not to escape or complain; all with the intent and effect of increasing defendants' control over plaintiffs and perpetuating defendants' unlawful conspiracy and scheme as alleged herein.

141.   Defendants also used and invested, and conspired to use and invest, the proceeds and profits obtained from their pattern of racketeering activity alleged herein to enhance their ability unlawfully to bring new plaintiffs and class members into the United States for improper and unlawful purposes and to maintain and to continue to maintain plaintiffs and class members in a vulnerable state that enabled defendants to continue to violate plaintiffs' and class members' rights.

142.   As a direct and proximate result of defendants' violations of 18 U.S.C. §§1962(a) and (d) as alleged herein, plaintiffs and class members have been deprived of personal property, deprived of wages and other income for services actually performed, and otherwise injured in their business or property.  Pursuant to §1964(c) of RICO, plaintiffs are entitled to bring this action on behalf of the plaintiff class members to recover herein actual and treble damages, the costs of bringing this suit and attorneys' fees.

**Count III**

**For Violation of the Anti-Peonage Act (42 U.S.C. §1994)**

**(By Plaintiffs Jane Does I-VI, The Decedent, and All Subclass Members Against All Defendants)**

143.   Plaintiffs reallege and incorporate herein by reference ¶¶1-142 of this Complaint.

144.   The Federal Anti-Peonage Act, 42 U.S.C. §1994, prohibits the "holding of any person to

service or labor under the system known as peonage."

145.   As alleged herein, defendants subjected plaintiffs Doe I-VI, the Decedent, and plaintiff subclass members to a state of peonage by forcing them to incur debt and inducing them to work for defendants in order to pay off that debt, under the unlawful conditions alleged herein, and perpetuated that unlawful state of peonage by threats of deportation and/or jail, physical beatings, psychological intimidation, and/or other threats.  Given plaintiffs' special vulnerabilities – including but not limited to their young age, their sex, their lack of education, their inability to speak or write English; their caste status; their sense of dislocation and isolation and unfamiliarity with the United States (which is thousands of miles from their homes), their unfamiliarity with the United States laws and the United States legal system, and because of the acute economic pressures and oppressive working and living conditions defendants forced them to endure, plaintiffs were subjected to a state of peonage and indentured and involuntary servitude by defendants.

146.   As an actual and proximate cause of defendants' conduct, plaintiffs Does I-VI, the Decedent, and the members of the plaintiff subclass have suffered damage in an amount according to proof at time of trial.

147.   Defendants committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of injuring plaintiffs Doe I and Doe II, the Decedent, and the members of the plaintiff subclass in an improper motive amounting to malice, in conscious disregard of plaintiffs' rights. Plaintiffs Doe I-VI, the Decedent, and plaintiff subclass members are thus also entitled to recover exemplary damages from defendants in an amount to be established at trial.

**Count IV**

**For Peonage, Involuntary Servitude, and Forced Labor Of Plaintiffs**

**(United States Const. amend. XIII)**

**(By Plaintiffs Does I-VI and All Subclass Members Against All Defendants)**

148.   Plaintiffs reallege and incorporate herein by reference ¶1-147 of this Complaint.

149.   Plaintiffs Does I-VI, the Decedent, and the plaintiff subclass members bring this claim for relief under the private cause of action implied under the Thirteenth Amendment to the United States Constitution.

150.   As alleged herein, defendants used force, threats and intimidation to hold plaintiffs Does I-VI, the Decedent, and plaintiff subclass members in captivity, forcing them to work for defendants without receiving full or adequate compensation as required by law.   Defendants indentured plaintiffs to extract their labor under the menace and threat of penalties of actual and threatened physical, sexual, economic, legal, and psychological harm to plaintiffs.

151.   Defendants indentured and caused to be indentured plaintiffs Does I-VI, the Decedent, and plaintiff subclass members to extract their labor under the menace and threat of penalties of actual and threatened physical, economic, legal, and psychological harm.

152.   Defendants' compelled use of, and their benefit from, plaintiffs Does I-VI's, the Decedent's, and plaintiff subclass members' forced and indentured servitude constitutes a violation of the constitutional and statutory prohibition against slavery and slave-like practices and the prohibitions against peonage and forced and indentured servitude, and the prohibition against trafficking for immoral or unlawful purposes.

153.   Through the conduct of defendants alleged herein, acting individually and in concert, defendants created and enforced a system of forced labor, peonage, and involuntary servitude prohibited by the Thirteenth Amendment to the United States Constitution.

154.   As a direct and proximate result of the conduct alleged herein, defendants caused plaintiffs Does I-VI, the Decedent, and plaintiff subclass members to suffer damages in an amount according to proof at time of trial.

155.   Defendants committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of injuring plaintiffs Does I-VI, the Decedent, and plaintiff subclass members, in an improper motive amounting to malice, and in conscious disregard of plaintiffs Does I-VI's, the Decedent's and plaintiff subclass members' rights.  Plaintiffs Does I-VI, the Decedent, and plaintiff subclass members are therefore entitled to recover exemplary damages from defendants in an amount to be established at trial.

**Count V**

**For Violation Of The Law Of Nations**

**(By All Plaintiffs and All Class Members Against All Defendants)**

156.   Plaintiffs reallege and incorporate herein by reference ¶¶1-155 of this Complaint.

157.   The Alien Tort Claims Act, 28 U.S.C. §1350  ("ATCA") states: "The district courts shall have original jurisdiction of any civil actions by an alien for a tort only, committed in violation of the Law of Nations . . . ."

158.   Each plaintiff and class member identified herein is an "alien" within the meaning of the ATCA.

159.   The Law of Nations has been incorporated as part of California common law and United States federal common law, and encompasses all norms recognized by the international community that are specific, universal, and obligatory, whether or not they constitute *jus cogens* norms, including but not limited to the norms set forth below in ¶¶162-63.

160.   By engaging in the conduct alleged herein in ¶¶1-155, defendants have violated the laws of Nations and customary international law by, *inter alia*, requiring plaintiffs and class members to engage in forced labor, involuntary servitude, peonage, and other contemporary manifestations of slavery, including false imprisonment, and by engaging in an unlawful scheme to obtain plaintiffs' forced labor. Such violations of the Law of Nations are actionable under ACTA without regard to the presence of "state action."

161.   On information and belief, defendants engaged in the conduct alleged herein in ¶¶1-155 in concert, combination, and conspiracy and as joint venturers with Indian police and government officials in Andhra Pradesh and elsewhere in India, such that the conduct constitutes "state action."  By engaging in such conduct, defendants violated the Law of Nations by, *inter alia*, forcing plaintiffs and class members to relinquish universally-recognized and protected rights to be free from cruel, inhuman, and degrading treatment or punishment; to free choice of employment and to just terms and conditions of work, including reasonable compensation and working hours; and to privacy, personal liberty and security.

162.   As a result of the conduct described herein in ¶¶1-155, defendants acting in concert,

combination, and in conspiracy and as joint venturers with police and government officials in Andhra

Pradesh and elsewhere in India, and under color of law, have committed torts in violation of the Laws of

Nations, which are recognized both as separate claims under universally-accepted principles of

international law and under the following universally-recognized international documents.

a. **Universal Declaration of Human Rights**, U.S., Dec. 10, 1948, U.N. General

Assembly, G.A. Res. 217A, U.N. GAOR, 3rd Sess., Pt. I, Resolutions, at 71, U.N. Doc. A/810 (1948).

Article 4 of this document states:

> No one shall be held in slavery of servitude; slavery and the slave trade shall be prohibited in all their forms.

Article 5 of this document states:

> No one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment.

Article 23 of this document states:

> (1) Everyone has the right to work, to free choice of employment, to just and favourable conditions of work and to protection against unemployment.

> [...]

> (3) Everyone who works has the right to just and favourable remuneration ensuring for himself and his family an existence worthy of human dignity, and supplemented, if necessary, by other means of social protection.

Article 24 of this document states:

> Everyone has the right to rest and leisure, including reasonable limitation of working hours and periodic holidays with pay.

b. **International Covenant on Civil and Political Rights**, U. S., June 8, 1992, 993

U.N.T.S. 171.  Article 8 of this document states:

> (1) No one shall be held in slavery; slavery and the slave-trade in all their forms shall be prohibited.

> (2) No one shall be held in servitude.

> (3) (a)  No one shall be required to perform forced or compulsory labour . . . .

c. **International Labour Organization:  Convention Concerning Forced or**

**Compulsory Labour**, adopted by the General Conference of the International Labour Organization,

June 28, 1930 as modified by the Final Articles Revision Convention, 1946.  Article 2(1) of this

document states:

For the purposes of this Convention the term "forced or compulsory labour" shall mean all work or service which is exacted from any persons under the menace of any penalty and for which the said person has not offered himself voluntarily.

Article 4 of this document states:

The competent authority shall not impose or permit the imposition of forced or compulsory labour for the benefit of private individuals, companies or associations.

d. **International Covenant on Economic, Social and Cultural Rights**, U.S., Oct. 5, 1977, 993 U.N.T.S. 3, 1966.  Article 7 of this document states:

The States Parties to the present Covenant recognize the right of everyone to the enjoyment of just and favourable conditions of work which ensure, in particular:

1) Remuneration which provides all workers, as a minimum, with:

a).  Fair wages and equal remuneration for work of equal value without distinction of any kind, in particular women being guaranteed conditions of work not inferior to those enjoyed by men, with equal pay for equal work;

b).  A decent living for themselves and their families in accordance with the provisions of the present Covenant;

2) Safe and healthy working conditions . . .

3) Rest, leisure and reasonable limitation of working hours and periodic holidays with pay, as well as remuneration for public holidays.

Article 10 of this document states:

Special measures of protection and assistance should be taken on behalf of all children and young persons without any discrimination for reasons of parentage or other conditions.  Children and young persons should be protected from economic and social exploitation.  Their employment in work harmful to their morals or health or dangerous to life or likely to hamper their normal development should be prohibited and punishable by law.

e. **American Convention on Human Rights**, U.S., June 1, 1977, 1114 U.N.T.S. 123.

Article 6 of this document states:

1) No one shall be subject to slavery or to involuntary servitude, which are prohibited in all their forms, as are the slave trade and traffic in women.

2) No one shall be required to perform forced or compulsory labor . . . .

f. **Additional Protocol to the American Convention on Human Rights in the Area of Economic, Social and Cultural Rights**, concluded at San Salvador, Nov. 17, 1988, O.A.S.T.S. No. 69; Article 7 of the above document states:

The States Parties to this Protocol recognize that the right to work to

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF, No. C-02-5570 WHA        62

which the foregoing article refers presupposes that everyone shall enjoy that right under just, equitable and satisfactory conditions, which the States Parties undertake to guarantee in their internal legislation, particularly with respect to:

(a)   Remuneration which guarantees, as a minimum, to all workers dignified and decent living conditions for them and their families and fair and equal wages for equal work, without distinction;

[. . .]

(e)   Safety and hygiene at work;

[. . .]

(g)   A reasonable limitation of work hours, both daily and weekly.  The days shall be shorter in the case of dangerous or unhealthy work or of night work;

(h)   Rest, leisure and paid vacations as well as remuneration for national holidays.

g.   **Declaration on the Elimination of Violence Against Women**, U.N., Dec. 20, 1993, G.A. Res. 48/104, U.N. GAOR, 48th Sess., Supp. No. 49, at 217, U.N. Doc. A/Res/48/104 (1994).

Article 3 of this document states:

Women are entitled to the equal enjoyment and protection of all human rights and fundamental freedoms in the political, economic, social, cultural, civil or any other field. These rights include, *inter alia*:

(c)   The right to liberty and security of person;
[. . .]

(e)   The right to be free from all forms of discrimination;
[. . .]

(g)   The right to just and favourable conditions of work;

(h)   The right not to be subjected to torture, or other cruel, inhuman or degrading treatment or punishment.

Article 2 of this document states:

Violence against women shall be understood to encompass . . .

(b) Physical, sexual and psychological violence occurring within the general community, including rape, sexual abuse, sexual harassment and intimidation at work, in educational institutions and elsewhere, trafficking in women and forced prostitution.

h.   **Declaration on the Human Rights of Individuals Who are Not Nationals of the Country in which They Live**, G.A. res. 40/144, annex. 40 U.N. GAOR Supp. (No. 53) at 252, U.N.

Doc. A/40/53 (1985).

Article 5 of this document states:

> Aliens shall enjoy, in accordance with domestic law and subject to the relevant international obligation of the State in which they are present, in particular the following rights:
>
> > (a) The right to life and security of person;
> > [. . .]
>
> > (b) The right to protection against arbitrary or unlawful interference with  privacy, family, home or correspondence;
> > [. . . .]

Article 6 of this document states:

> No alien shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment.

Article 8 of this document states:

> Aliens lawfully residing in the territory of a State shall also enjoy:
>
> (a) The right to safe and healthy working conditions, to fair wages
> [. . .]

i.   **International Labour Organization: Convention Concerning Minimum Age for Admission to Employment**, adopted by the General Conference of the International Labour Organization, June 26, 1973.  Article 1 of this document states:

> Each member . . . undertakes to pursue a national policy designed to ensure the effective abolition of child labour and to raise progressively the minimum age for admission to employment or work to a level consistent with the fullest physical and mental development of young persons.

Article 2 of this document states:

> 3.    The minimum age . . .shall not be less than the age of completion of compulsory schooling and, in any case, shall not be less than 15 years.

j.   **Convention on the Rights of the Child**, U.N.,  G.A. Res. 44/25, *open for signature* Nov. 20, 1989.  Article 32 of this document states

> 1.    States Parties recognize the right of the child to be protected from economic exploitation and from performing any work that is likely  . . . to interfere with the child's education, or to be harmful to the child's health or physical, mental, spiritual, moral or social development.

> 2.    . . . States Parties shall in particular:

> (a) Provide for a minimum age of minimum ages for admission to

employment;

    (b)  Provide for appropriate regulation of the hours and conditions of employment

Article 34 of this document states:

States Parties undertake to protect the child from all forms of sexual exploitation and sexual abuse.  For these purposes, States Parties shall in particular take all appropriate national, bilateral, and multilateral measures to prevent:

    (a)    The inducement or coercion of a child to engage in any unlawful sexual activity.

163.   The United States Department of State has concluded, based upon a comprehensive survey of international treaties, laws, and conventions, that "[a]n international consensus exists, based on several key International Labor Organization (ILO) Conventions, that certain worker rights constitute core labor standards.  These include freedom of association ... freedom from gender and other discrimination in employment; and freedom from forced and child labor."  Bureau of Democracy, Human Rights, and Labor, U.S. Department of State, *Overview to Country Reports on Human Rights Practices for 1997* (Jan. 30, 1998) at §VI Worker Rights, *available in* 1997 *Human Rights Report: Overview*, http://www.state.gov/www/ global/human_rights/ 1997_hrp_report/ overview.html.

164.   Defendants engaged in unlawful trafficking, forced and compulsory labor, and involuntary servitude because they obtained plaintiffs' labor or services "by threats of serious harm to, or physical restraint against, that person or another person; by means of any scheme plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or by means of the abuse or threatened abuse of law or the legal process." 18 U.S.C. §1589;  22 U.S.C. §7102(2), (5).

165.   As a direct and proximate result of the violations of both the Law of Nations and customary international law as alleged herein, plaintiffs, the Decedent, and plaintiff class members have suffered damage in an amount according to proof at time of trial.  Defendants committed the acts alleged herein negligently and in violation of their duty of care owed to plaintiffs.  Defendants committed the acts alleged herein recklessly and/or intentionally.

166.   Defendants committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of injuring plaintiffs, the Decedent, and plaintiff class members, in an

improper motive amounting to malice, in conscious disregard of plaintiffs', the Decedent's, and plaintiff class members' rights. Plaintiffs and the Decedent and plaintiff class members are thus also entitled to recover exemplary damages from defendants in an amount to be established at trial.

**Count VI**

**Violation of the Fair Labor Standards Act**

**(By All Plaintiffs and Others Who File FLSA Consents To Sue Against All Defendants)**

167. Plaintiffs reallege and incorporate herein by reference ¶¶1-166 of this Complaint.

168. Plaintiffs are informed and believe and on that basis allege that all defendants operate a common business enterprise, without regard to any formal distinctions of ownership or control of the various parts of this business enterprise, so that at all relevant times all defendants are or were a single employer or joint employers of all the plaintiffs within the meaning of the FLSA, 29 U.S.C. §203(d). This common business enterprise includes, but is not limited to, the operation of Indian restaurants in Berkeley, California and Santa Clara, California, the operation of a now-defunct Indian restaurant in Santa Rosa, California, the management, maintenance and repair of numerous residential and commercial properties located in Berkeley, California, and the operation of Active Tech Solutions in Berkeley, California. Plaintiffs were placed into and moved among different jobs within this common business enterprise at the discretion of defendants. For many pay periods, defendants did not pay plaintiffs at all for such work. When defendants did pay plaintiffs for such work, payment was made in cash and plaintiffs were not provided paystubs or other documentation to show that a plaintiff was employed by a specific employer.

169. At all relevant times, employees of defendants' business enterprise, and employees of each individual component of this business enterprise, have regularly handled, sold, or otherwise worked on goods and materials that were moved in or produced for commerce within the meaning of the FLSA; and at all relevant times defendants' business enterprise, and each individual component of this business enterprise, has had gross annual revenues and gross annual sales that exceed $500,000.

170. Plaintiffs and other similarly-situated employees performed work for the individual defendants and the separate business entity defendants by performing janitorial and kitchen work in the

defendants' restaurants, by performing maintenance, painting, gardening, janitorial and repair work on residential and commercial properties owned by defendants, and by performing computer work in the offices of Active Tech Solutions.

171.   Plaintiffs and other similarly-situated employees employed by defendants are or were all non-exempt employees as defined by the FLSA, 29 U.S.C. §203(e).

172.   Defendants knowingly and willfully required, suffered or permitted plaintiffs and other similarly-situated employees to work overtime, including in some instances over 12 hours a day and/or seven days a week, and knowingly and wilfully failed and refused to pay plaintiffs the overtime premiums required under federal law.

173.   Defendants knowingly and willfully failed and refused to pay plaintiffs and other similarly-situated employees the minimum wage required under federal law for hours worked for defendants by plaintiffs and similarly-situated employees.

174.   Defendants have maintained a pattern, practice or policy of routinely paying plaintiffs less than the minimum wage in violation of 29 U.S.C. §206(a)(1).

175.   Defendants have maintained a pattern, practice or policy of routinely requiring plaintiffs to work off the clock without pay in violation of the FLSA, including requiring, suffering or permitting plaintiffs to work in excess of 40 hours per week without overtime premiums.

176.   Defendants did not pay plaintiffs overtime premiums for all overtime hours worked, in violation of 29 U.S.C. §207, which establishes plaintiffs' right to be paid one and one-half times the regular rate of pay for all hours worked in excess of 40 hours per week.

177.   Defendants have specific employment record-keeping obligations under the FLSA, 29 U.S.C. §211(c).  Chief among these is the obligation to record accurately and document the actual number of hours that each employee works.  Plaintiffs are informed and believe and on that basis allege that defendants have engaged in a common pattern and practice of failing to keep adequate employment records and have not properly or adequately recorded their employees'– including plaintiffs' and other similarly-situated employees' – overtime and off-the-clock hours.  Plaintiffs are informed and believe and on that basis allege that defendants also did not list every deduction on plaintiffs' pay receipts or keep records of such deductions made from plaintiffs' wages.

178.   Defendants violated the FLSA's record-keeping provisions by failing to keep adequate employment records and by not properly or adequately recording their employees' overtime and off the clock hours, in violation of 29 U.S.C. §211(c).

179.   Defendants knew, should have known, or showed reckless disregard for the FLSA's provisions applicable to plaintiffs and other similarly-situated employees, and willfully, intentionally and without good faith violated and continue to violate these laws.  As a result of defendants' willful violations, plaintiffs are entitled to receive liquidated damages in an additional amount above the wages already due them.

180.   Under the FLSA, 29 U.S.C. §216(b), plaintiffs are entitled to recover all unpaid wages and overtime compensation, an additional equal amount as liquidated damages, and reasonable attorneys' fees and costs in amounts to be proven at trial.

**Count VII**

**Failure to Pay Minimum Wage and Overtime in Violation of**

**California Labor Code and IWC Wage Orders**

**(By All Plaintiffs and All Class Members Against All Defendants)**

181.   Plaintiffs incorporate by reference ¶¶1-180 of this Complaint.

182.   Defendants willfully failed to pay plaintiffs and plaintiff class members the minimum wage and overtime premiums required by California law.  Defendants' failure to pay such wages and premiums was not in good faith, and defendants had no reasonable ground for believing that their failure to pay such wages and premiums was not a violation of California law.

183.   Plaintiffs and plaintiff class members are not exempt from the requirements of the California Labor Code that they be paid minimum wage and/or overtime as alleged herein.

184.   Defendants' failure to pay plaintiffs and plaintiff class members the minimum wage violates California Labor Code §1194 and §1197, which require defendants to pay plaintiffs and other plaintiff class members at the minimum wage rate prescribed by California law of $5.75 per hour for time after March 1, 1998, $5.15 per hour for time between September 1, 1997 and March 1, 1998, $5.00 per hour for time between March 1, 1997 and September 1, 1997, $4.75 per hour for time between October 1, 1996 and March 1, 1997, and $4.25 per hour prior to October 1, 1996.

185.   Defendants' failure to pay plaintiffs and plaintiff class members the overtime premiums required by law violates the overtime provisions of California Labor Code §1194 and §1197, as well as 8 C.C.R. §§11040, 11050, and 11150, which require overtime payment at the rate of 1-1/2 times the employee's regular hourly rate of pay for hours over 40 hours per week and over 8 hours per day, and doubletime after 12 hours per day.

186.   As a direct and proximate result of defendants' conduct as alleged above, plaintiffs and plaintiff class members have suffered damages because they have not received wages and overtime premiums to which they are entitled under the California Labor Code and applicable Industrial Welfare Commission Orders.

187.   Pursuant to California Labor Code §1194, plaintiffs and plaintiff class members are entitled to recover all unpaid minimum and/or overtime wages to which they are entitled, plus interest thereon and attorneys' fees and costs incurred in prosecuting this action.  Plaintiffs and plaintiff class members are also entitled, pursuant to California Labor Code §1194.2, to liquidated damages in an amount equal to the minimum wages unlawfully not paid to them by defendants and interest thereon.

**Count VIII**

**Violation of California Labor Code §203**

**(By All Plaintiffs and All Class Members Against All Defendants)**

188.   Plaintiffs reallege and incorporate herein by reference ¶¶1-187 of this Complaint.

189.   At the time they ended their employment with defendants, plaintiffs and all class members no longer employed by defendants were owed wages, including overtime premiums, as alleged herein.

190.   Defendants have failed to make such payments of wages and are, therefore, liable for penalty wages pursuant to California Labor Code §203.

**Count IX**

**Violation of California Labor Code §226**

**(By All Plaintiffs and All Class Members Against All Defendants)**

191.   Plaintiffs reallege and incorporate herein by reference ¶¶1-190 of this Complaint.

192.   During their employment by defendants, defendants never furnished to plaintiffs and class members the itemized statements of wages, hours and other information required by Labor Code §226.

193.   Defendants' failure to furnish these itemized statements was knowing and intentional and caused injury to plaintiffs and class members by, among other things, preventing plaintiffs and class members from learning they were not being paid as required by law and by complicating plaintiffs' and class members' efforts to prove the hours they worked for defendants and the illegal deductions that defendants took from their wages.

194.   Plaintiffs and class members are therefore entitled to recover damages, penalties, costs and attorneys' fees pursuant to Labor Code §226(b).

**Count X**

**Violation of California Labor Code §970**

**(By Plaintiffs Does I-III, VI-VIII,  the Decedent, Kollipara, and All Class Members Against All Defendants)**

195.   Plaintiffs reallege and incorporate herein by reference ¶¶1-194 of this Complaint.

196.   Defendants knowingly made material misrepresentations to plaintiffs Does I-III, VI-VIII, the Decedent, Kollipara, and plaintiff class members about the circumstances and lawfulness of their emigration to the United States and about the living and working conditions that they would be subjected to in the United States, as set out in ¶¶1-4, 8-121, 130-133.

197.   Defendants had knowledge of the falsity of those representations at the time those misrepresentations were made.  Defendants intended those misrepresentations to induce plaintiffs Does I-III, VI-VIII, the Decedent, Kollipara, and plaintiff class members to travel to California.

198.   Defendants intended plaintiffs Does I-III, VI-VIII, the Decedent, Kollipara, and plaintiff class members to rely on defendants' false statements and misrepresentations and those plaintiffs and plaintiff class members justifiably did so rely in deciding whether to emigrate to the United States.

199.   Plaintiff Does I-III, VI-VIII, the decedent, Kollipara, and plaintiff class members were injured by defendants' misrepresentations and are entitled to double damages resulting from such misrepresentations, pursuant to Labor Code §972.

**Count XI**

**Violation of California Labor Code §§351, 353**

**(By Plaintiff Doe IV Against All Defendants)**

200.   Plaintiffs reallege and incorporate herein by reference ¶¶1-199 of this Complaint.

201.   When Jane Doe IV was employed as a waiter at Pasand Madras Cuisine in Berkeley, California, patrons left tips for Doe IV, and such tips were taken by defendants and never paid to Doe IV.  On information and belief, this was the regular business practice of defendants in dealing with tips left by patrons at the restaurant.  On information and belief, defendants also failed to keep accurate records of all gratuities left by patrons at the restaurant and received by them.

202.    By taking for themselves tips left by patrons for Doe IV, defendants violated California Labor Code §§351 and 353, entitling Doe IV to damages, an injunction, attorney's fees and other appropriate relief.

**Count XII**

**Civil Assault and Battery**

**(By Plaintiffs Does I-VI, the Decedent, and All Subclass Members against All Defendants)**

203.   Plaintiffs reallege and incorporate herein by reference ¶¶1-202 of this Complaint.

204.   The individual defendants knowingly, willfully, and deliberately sexually abused and exploited Does I-VI, the Decedent, and plaintiff subclass members.  Each and every defendant aided and abetted such conduct.

205.   As a direct and proximate result of such conduct and the injuries caused thereby, Does I-VI, the Decedent, and plaintiff subclass members were hurt and injured in their health, and sustained serious and severe injuries to their persons, all of which injuries have caused them great physical mental and nervous pain and suffering and mental anguish.  Plaintiffs Doe I-VI, the Decedent, and plaintiff subclass members are thus entitled to recover damages from defendants in an amount to be established at trial.

206.   Defendants committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of injuring Doe I-VI, the Decedent, and plaintiff subclass members in an

improper motive amounting to malice, in conscious disregard of their rights.  Plaintiffs Doe I-VI, the

Decedent, and plaintiff subclass members are thus also entitled to recover exemplary damages from

defendants in an amount to be established at trial.

**Count XIII**

**Sexual Abuse of Minors**

**(By Plaintiffs Does I-VI, the Decedent, and All Subclass Members against All**

**Defendants)**

207.   Plaintiffs reallege and incorporate herein by reference ¶¶1-206 of this Complaint.

208.   The individual defendants knowingly, willfully, and deliberately required plaintiffs Does I-

VI, the Decedent, and plaintiff subclass members, to engage in sexual acts with them, as set out above,

when such defendants were adults and such defendants knew plaintiffs were minors who were under the

legal age to consent to such acts.  Each and every defendant aided and abetted such conduct.

209.   As a direct and proximate result of such conduct and the injuries caused thereby, Does I-

VI, the Decedent, and plaintiff subclass members were hurt and injured in their health, and sustained

serious and severe injuries to their persons, all of which injuries have caused them great physical mental

and nervous pain and suffering and mental anguish.   Plaintiffs Does I-VI, the Decedent, and plaintiff

subclass members are thus entitled to recover damages from defendants in an amount to be established at

trial.

210.   Defendants committed the acts alleged herein maliciously, fraudulently and oppressively

with the wrongful intention of injuring Does I-VI, the Decedent, and plaintiff subclass members in an

improper motive amounting to malice, in conscious disregard of their rights.  Plaintiffs Does I-VI, the

Decedent, and plaintiff subclass members are thus also entitled to recover exemplary damages from

defendants in an amount to be established at trial.

**Count XIV**

**Sexual Battery**

**(By Plaintiffs Does I-VI, the Decedent, and All Subclass Members against All**

**Defendants)**

211.   Plaintiffs reallege and incorporate herein by reference ¶¶1-210 of this Complaint.

212.   The individual defendants knowingly, willfully, and deliberately required plaintiffs Does I-VI, the Decedent, and plaintiff subclass members, to engage in sexual acts with them against the plaintiffs' wills by means of duress, as set out above, in violation of California Penal Code §261(a)(2) and §288a.   Each and every defendant aided and abetted this conduct.

213.   As a direct and proximate result of such conduct and the injuries caused thereby, Does I-VI, the Decedent, and plaintiff subclass members were hurt and injured in their health, and sustained serious and severe injuries to their persons, all of which injuries have caused them great physical mental and nervous pain and suffering and mental anguish.   Plaintiffs Does I-VI, the Decedent, and plaintiff subclass members are thus entitled to recover damages from defendants in an amount to be established at trial.

214.   Defendants committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of injuring Does I-VI, the Decedent, and plaintiff subclass members in an improper motive amounting to malice, in conscious disregard of their rights.   Plaintiffs Does I-VI, the Decedent, and plaintiff subclass members are thus also entitled to recover exemplary damages from defendants in an amount to be established at trial.

**Count XV**

**False Imprisonment**

**(By Plaintiffs Jane Does I-VI, the Decedent, and All Subclass Members Against All Defendants)**

215.   Plaintiffs reallege and incorporate herein by reference ¶¶1-214 of this Complaint.

216.   Defendants violated plaintiffs Does I-VI's, the Decedent's, and plaintiff subclass members' rights and personal liberties by acting in a manner that had the purpose and effect of confining such plaintiffs against their will.   Defendants accomplished this restraint through the use of physical, psychological and economic force, express and implied threats of physical, psychological and economic force against Does I-VI, the Decedent, and plaintiff subclass members.

217.   As a proximate result of said conduct, plaintiffs Does I-VI, the Decedent, and plaintiff subclass members have suffered damage in an amount according to proof at time of trial.

218.   Defendants committed the acts alleged herein maliciously, fraudulently and oppressively,

with the wrongful intention of injuring Doe I-VI, the Decedent, and plaintiff subclass members, using an improper motive amounting to malice, in conscious disregard of those plaintiffs' rights.  Plaintiffs Doe I-VI, the Decedent, and plaintiff subclass members are thus also entitled to recover exemplary damages from the defendants in an amount to be established at trial.

**Count XVI**

**Fraud and Deceit**

**(By Plaintiffs Does I-III & VI-VIII, the Decedent, Kollipara, and All Class Members Against All Defendants)**

219.   Plaintiffs reallege and incorporate herein by reference ¶¶1-218 of this Complaint.

220.   Defendants made material misrepresentations to plaintiffs and plaintiff class members about the circumstances and lawfulness of their emigration to the United States and about the living and working conditions that they would be subjected to in the United States, as set out in ¶¶1-4, 8-121, 130-133 above.

221.   Defendants had knowledge of the falsity of the misrepresentations they made to plaintiffs and plaintiff class members at the time they were made.

222.   Defendants intended plaintiffs Doe I-III and VI-VIII, the Decedent, Kollipara, and plaintiff class members to rely on defendants' misrepresentations and those plaintiffs and plaintiff class members justifiably did so rely in deciding whether to emigrate to the United States and whether to work for defendants.

223.   Plaintiffs and plaintiff class members were injured as a result of their reliance on defendants' false statements and misrepresentations, which caused them to leave their home country, subjected them to exploitation of their labor and/or sexual exploitation by defendants, and caused them to suffer physical and/or emotional damages.  Plaintiffs are entitled to compensatory and punitive damages in amount to be proven at trial.

**Count XVII**

**Negligent Infliction of Emotional Distress**

**(By All Plaintiffs (except Decedent) and All Class Members Against All Defendants)**

224.   Plaintiffs reallege and incorporate herein by reference ¶¶1-223.

225.   By defendants' status as plaintiffs' employers and/or guardians and/or persons acting *in loco parentis*, by virtue of defendants' role in bringing plaintiffs from India to the United States unlawfully and with knowledge of plaintiffs' vulnerability and dependence upon defendants as alleged herein, and by virtue of defendants holding themselves out to the general public as being plaintiffs family members, care givers, and protectors, defendants and each of them owed plaintiffs and class members and each of them a duty of care and a fiduciary duty to act in plaintiffs' and class members' best interests.

226.   Defendants and each of them negligently committed the acts alleged in this Complaint against plaintiffs and plaintiff class members and thereby caused plaintiffs and plaintiff class members to suffer fear, depression, humiliation, mental anguish, and severe physical and emotional distress, directly and proximately causing damage to such plaintiffs.

227.   By the actions alleged herein, defendants negligently breached their duties of care to plaintiffs and class members directly and proximately causing harm and damages to plaintiffs and class members.

**Count XVIII**

**Intentional Infliction of Emotional Distress**

**(By All Plaintiffs and All Class Members Against All Defendants)**

228.    Plaintiffs reallege and incorporate herein by reference ¶¶1-227 of this Complaint.

229.   The individual defendants outrageously, knowingly, deliberately, and intentionally committed the acts alleged in this Complaint against plaintiffs and plaintiff class members, and intended to, and did, thereby cause plaintiffs and plaintiff class members to suffer fear, depression, humiliation, mental anguish, and severe physical and emotional distress, directly and proximately causing damage to such plaintiffs.

230.   Defendants committed the acts alleged herein maliciously, fraudulently and oppressively

with the wrongful intention of injuring plaintiffs and plaintiff class members in an improper motive

amounting to malice, in conscious disregard of such plaintiffs' rights.  Plaintiffs and plaintiff class

members are thus also entitled to recover exemplary damages from defendants in an amount to be

established at trial.  Lakshmi and Jarmani Prattipati bring this claim on behalf of  Decedent solely to

recover exemplary damages.

**Count XIX**

**Conversion**

**(By Doe I Against All Defendants)**

231.    Plaintiffs reallege and incorporate herein by reference ¶¶1-230 of this Complaint.

232.   Plaintiff Doe I owned and possessed jewelry and other personal property that defendants

took from Doe I and have knowingly and wrongfully refused to return to her.

233.    As a result of defendants' aforesaid wrongful acts and omissions, plaintiff Doe I has been

injured and damaged and demands restitution and damages, in an amount to be determined at trial.

234.    Defendants committed the acts alleged herein maliciously, fraudulently and oppressively

with the wrongful intention of injuring plaintiff Doe I in an improper motive amounting to malice, in

conscious disregard of plaintiff's rights.  Plaintiff Doe I is thus also entitled to recover exemplary

damages from defendants in an amount to be established at trial.

**Count XX**

**Conversion**

**(By Doe II, Lakshmi and Jarmani Prattipati Against All Defendants)**

235.    Plaintiffs reallege and incorporate herein by reference ¶¶1-234 of this Complaint

236.    Plaintiffs Doe II and the Decedent owned and possessed photographs, videotapes,

documents, jewelry, clothing, and other valuable personal goods that defendants took from plaintiff Doe

II without her consent.

237.    Plaintiffs Doe II and Lakshmi and Jarmani Prattipati made repeated oral and written

demands upon defendants for the return of such property, which defendants wrongfully took from her

and converted to their own unlawful use.

238.    Defendants knowingly refused and continue to knowingly refuse to return plaintiff Doe

II's and Lakshmi and Jarmani Prattipati's property, which remains in defendants' possession.

239.   As a result of defendants' aforesaid wrongful acts and omissions, plaintiffs Doe II and Lakshmi and Jarmani Prattipati have been injured and damaged and demand restitution and damages, in an amount to be determined at trial.

240.   Defendants committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of injuring plaintiffs Doe II and Lakshmi and Jarmani Prattipati in an improper motive amounting to malice, in conscious disregard of plaintiffs' rights.  Plaintiffs Doe II and Lakshmi and Jarmani Prattipati are is thus also entitled to recover exemplary damages from defendants in an amount to be established at trial.

**Count XXI**

**Conversion**

**(By Doe III Against All Defendants)**

241.    Plaintiffs reallege and incorporate herein by reference ¶¶1-240 of this Complaint

242.   Plaintiff Doe III owned and possessed jewelry, furniture, clothing, and other valuable personal goods that defendants took from Doe III without her consent.

243.   Plaintiff Doe III made repeated oral and written demands upon defendants for the return of such property, including providing defendants an itemized list of the unlawfully and unjustifiably converted property that defendants wrongfully took from her and converted to their own unlawful use.

244.   Defendants knowingly refused and continue to knowingly refuse to return plaintiff Doe III's property, which remains in defendants' possession.

245.   As a result of defendants' aforesaid wrongful acts and omissions, plaintiff Doe III has been injured and damaged and demands restitution and damages, in an amount to be determined at trial.

246.   Defendants committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of injuring plaintiff Doe III in an improper motive amounting to malice, in conscious disregard of plaintiff's rights.  Plaintiff Doe III is thus also entitled to recover exemplary damages from defendants in an amount to be established at trial.

**Count XXII**

**Conversion**

**(By Does IV-VI Against All Defendants)**

247.    Plaintiffs reallege and incorporate herein by reference ¶¶1-246 of this Complaint. Plaintiff Does IV-VI owned and possessed personal property, including furniture, clothing, and electrical appliances, that defendants took from them and have knowingly and wrongfully refused to return.

248.   As a result of defendants' aforesaid wrongful acts and omissions, plaintiff Does IV-VI have been injured and damaged and demand restitution and damages, in an amount to be determined at trial.

249.   Defendants committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of injuring plaintiff Does IV-VI in an improper motive amounting to malice, in conscious disregard of plaintiffs' rights.  Plaintiff Does IV-VI are thus also entitled to recover exemplary damages from defendants in an amount to be established at trial.

**Count XXIII**

**Violation of California Education Code §48200**

**(By Plaintiffs Does II, III, V, VI, and Decedent Against All Defendants)**

250.   Plaintiffs reallege and incorporate herein by reference ¶¶1-249 of this Complaint.

251.   Defendant Reddy was a *de facto* legal guardian of plaintiffs Does II, III, V, VI and Decedent when plaintiffs and Decedent were minors living in California.  Defendant Reddy was required by California Education Code §48200 to enroll plaintiffs and Decedent in school so they could obtain an education.   Defendant Reddy was aware of this requirement.

252.   Defendant Reddy knowingly and willfully failed to enroll plaintiffs and Decedent in school and instead prevented them from attending school in order to require them to perform labor for defendants and in order to prevent discovery of defendants' unlawful activities alleged herein by U.S. law enforcement authorities.  Each and every defendant aided and abetted such conduct**.**

253.   As a result of defendants' aforesaid wrongful acts and omissions, plaintiffs and Decedent have suffered injury and are entitled to recover damages in an amount to be determined at trial.

254.   Defendants committed the acts alleged herein maliciously, fraudulently and oppressively

with the wrongful intention of injuring plaintiffs and Decedent and with an improper motive amounting to malice, in conscious disregard of plaintiffs' and Decedents' rights.  Plaintiffs and Decedent are thus also entitled to recover exemplary damages from defendants in an amount to be established at trial.

**Count XXIV**

**Unjust Enrichment**

**(By All Plaintiffs and All Class Members Against All Defendants)**

255.   Plaintiffs reallege and incorporate herein by reference ¶¶1-254 of this Complaint.

256.   Defendants have profited from the labor of plaintiffs and plaintiff class members.

257.   Defendants have failed to account for and/or pay to plaintiffs and plaintiff class members the value of their labor and profits derived therefrom.

258.   As a result of defendants' wrongful acts and omissions as described above, defendants have been unjustly enriched, to the detriment of plaintiffs and plaintiff class members.

259.   Plaintiffs and plaintiff class members therefore demand restitution and judgment against defendants, and each of them, in an amount to be determined at trial, together with interest, exemplary or punitive damages, attorneys' fees, and the costs of this action.

**Count XXV**

**Accounting**

**(By All Plaintiffs and All Class Members Against All Defendants)**

260.   Plaintiffs reallege and incorporate herein by reference ¶¶1-259 of this Complaint.

261.   Defendants have never accounted for or paid the value of plaintiffs' and plaintiff class members' labor, or the profits which defendants have derived from that labor.

262.   As a result of the value of their labor having been taken from them without just compensation by defendants, plaintiffs and plaintiff class members have been unable to use or invest those assets.

263.   As a result of defendants' aforesaid wrongful acts and omissions, plaintiffs and plaintiff class members have been injured and damaged and demand the equitable remedies of accounting, constructive trust, restitution and disgorgement from defendants jointly, severally and/or in the alternative, in an amount to be determined at trial, together with attorneys' fees and the costs of this

action.

### Count XXVI

### Quantum Meruit

### (By All Plaintiffs and All Class Members Against All Defendants)

264.   Plaintiffs reallege and incorporate herein by reference ¶¶1-263 of this Complaint.

265.   Plaintiffs and plaintiff class members performed all the above-mentioned labor for defendants.  Defendants have not tendered payment to plaintiffs and plaintiff class members, and plaintiffs and plaintiff class members has not been compensated for the reasonable value of the services they rendered on behalf of defendants.

266.   Plaintiffs and plaintiff class members therefore demand compensatory damages from defendants in an amount to be determined at trial, together with interest, attorneys' fees and the costs of this action.

### Count XXVII

### Unlawful Business Acts And Practices In Violation Of California Business And Professions Code §17200 *et seq.*

### (By All Plaintiffs Against All Defendants)

267.   Plaintiffs reallege and incorporate herein by reference ¶¶1-266 of this Complaint.

268.   California Business and Professions Code §17200 *et seq.* provides that unfair competition shall mean and include any "unlawful . . . business act or practice."

269.   Defendants either deliberately, recklessly or unreasonably have developed, encouraged and profited from the operation of businesses that encourage and rely upon the systematic underpayment of workers, child labor, forced labor, false imprisonment, and indentured servitude in violation of international law and federal and state labor laws.

270.   Defendants failed to pay their workers the minimum wage or overtime premiums due as required by federal law, in violation of 29 U.S.C. §215(b), and as required by state law, in violation of Cal. Labor Code §§1194, 1197 and the wage orders of the California Industrial Welfare Commission. Defendants also failed to maintain records of hours worked, wages paid, and deductions, as required by state and federal law.

271.   Defendants employed "oppressive child labor" as defined by 29 U.S.C. §203 in violation of 29 U.S.C. §212(c).  Defendants also employed minors under 16 years of age in violation of Cal. Labor Code §1290.  Defendants employed minors for more than eight hours in a day and 48 hours in a week and thereby violated Cal. Labor Code §1394(a) which limits the number of hours such a minor may work.  Defendants violated California Education Code §48000, which requires that minors must be enrolled in school, and instead required these minors to perform work for defendants during school hours.

272.   Defendants violated Cal. Labor Code §203 which requires that workers be paid all wages due promptly upon the end of the employment relationship.  Defendants violated Cal. Labor Code §226, which requires that workers be provided with itemized statements showing hours worked, wages paid, and deductions.  Defendants violated Cal. Labor Code §§351 and 353, which require that tips left by restaurant patrons be treated as the sole property of the waiter and that the employer must keep records of all tips collected by the employer.  Defendants violated Cal. Labor Code §970, which prohibits employers from making misrepresentations to prospective employees for the purpose of causing them to travel to California.

273.   Defendants violated the Social Security Act and federal and state unemployment and disability insurance laws by not reporting the wages paid to employees to the appropriate governmental agencies and paying required taxes on such wages.

274.   Defendants have aided and abetted the violation of anti-peonage and indentured servitude laws and numerous aspects of international law by maintaining a scheme of forced labor and child labor in violation of the Thirteenth Amendment to the U.S. Constitution, the Anti-Peonage Act, 42 U.S.C. §1994, the Trafficking Victims Protection Act, 22 U.S.C. §7101 *et seq.*, Article 1, §6 of the California Constitution, Cal. Penal Code §181, and the treaties and covenants identified in ¶162 above.  Defendants violated plaintiffs' rights under the Law of Nations and the ATCA, as alleged in ¶¶156-66, and state and federal common law.

275.   Defendants' conduct as alleged herein constitutes negligence *per se* under California law insofar as it violates statutory prohibitions against such conduct.

276.   Defendants engaged in the above-described conduct for their own economic self-interest

and as a result thereof have increased their sales and profits and have otherwise benefitted economically from such conduct.

277.   Because of their increased profit margins resulting from their violations of law as alleged herein, defendants' conduct placed them at a competitive advantage *vis-à-vis* their law-abiding competitors, thereby enabling defendants to increase their profits at the expense of their law-abiding competitors.  Defendants have thereby been unjustly enriched and have achieved an unfair competitive advantage over their legitimately operating business competitors.

278.   Pursuant to California Business and Professions Code §17203, injunctive relief is necessary to prevent defendants from engaging in the unlawful business acts and practices as alleged herein.  The above-described acts and practices will cause great and irreparable harm to the general public unless defendants are restrained from committing further unlawful business acts or practices.  Plaintiffs and the general public have no other adequate remedy at law.

279.   California Business and Professions Code §17203 also provides, and plaintiffs request, that the Court can restore to the persons injured by defendants' unfair and/or unlawful business practices any money or property acquired by such defendants by means of any unlawful, fraudulent or unfair business act or practice, in an amount according to proof at time of trial.

280.   As a result of defendants' unlawful business acts or practices, defendants have profited from the unlawful working conditions they imposed upon plaintiffs and plaintiff class members.  Defendants profited from their treatment of plaintiffs and plaintiff class members, which treatment defendants either knew, recklessly disregarded, or reasonably should have known, violated state, federal and international law.  Plaintiffs seek restitution and all other appropriate relief authorized by California Business and Professions Code §17203, in an amount according to proof at time of trial.

### Count XXVIII

### Breach of Written Contract

### (By Plaintiff Kollipara Against All Defendants)

281.   Plaintiffs reallege and incorporate herein by reference ¶¶1-280 of this Complaint.

282.   In  1998, defendant Active Tech Solutions offered plaintiff Kollipara employment as an software engineer at an annual salary of $42,972.00 plus vacation and medical benefits.  Defendant Vijay

Lakireddy signed the offer of employment, purportedly on behalf of defendant Active Tech Solutions' CEO, which offer plaintiff Kollipara accepted.  Kollipara was not paid the promised salary nor given the promised job opportunity.  Defendant Active Tech Solutions and Vijay Lakireddy and all other defendants acting in concert with them thus breached their contract with Kollipara.

283.   Kollipara therefore demands compensatory damages from defendants in an amount to be determined at trial, together with interest, attorneys' fees and the costs of this action.

### Count XXIX

### Breach of Oral Contracts

### (By All Plaintiffs and All Class Members Against All Defendants)

284.   Plaintiffs reallege and incorporate herein by reference ¶¶1-283 of this Complaint.

285.   Defendants had an implied agreement with plaintiffs and plaintiff class members that these plaintiffs would be fairly compensated for the services they performed for defendants in the United States.  Defendants had an agreement with plaintiff Doe II and the Decedent that Doe II and the Decedent would be paid $10 per hour for their work in the United States.  Defendants had an agreement with Doe III that defendants would pay for her airfare to the United States.  Defendants had an agreement with Doe VI that defendants would pay her travel costs to the United States.  Defendants had an agreement with Doe VII that defendants would pay her $1,000 per month for her work in the United States.  Defendants had an agreement with Doe VIII that defendants would pay her $1,000 per month for her work in the United States.

286.   Plaintiffs performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of these contracts.

287.   Defendants breached their contracts with the plaintiffs and plaintiff class members by not making the payments required by these contracts.

288.   As a result of defendants breaches of contract, plaintiffs have suffered damages in an amount to be determined at trial.

**Count XXX**

**Breach of Covenant of Good Faith and Fair Dealing**

**(By All Plaintiffs and All Class Members Against All Defendants)**

289.   Plaintiffs reallege and incorporate herein by reference ¶¶1-288 of this Complaint.

290.   Implicit in the contracts between plaintiffs and defendants was a duty of good faith and fair dealing owed to plaintiffs.  Defendants thereby covenanted that they would not do anything in the performance or enforcement of plaintiffs' contracts to impair or frustrate the right of plaintiffs to receive the benefits they had been promised.

291.   By willfully failing to perform under said contracts and by intimidating plaintiffs from asserting their employment rights, defendants breached the implied covenant of good faith and fair dealing.

292.   As a result of the defendants' breach of the implied covenant of good faith and fair dealing, plaintiffs have been wrongfully denied the benefits of their contracts and have sustained damages in an amount to be determined at trial.

**Count XXXI**

**Negligence**

**(By All Plaintiffs and All Class Members Against All Defendants)**

293.   Plaintiffs reallege and incorporate herein by reference ¶¶1-292 of this Complaint.

294.   Defendants owed to plaintiffs a duty of reasonable care in light of defendants' relationship to plaintiffs, which included employing plaintiffs, keeping plaintiffs in their custody, and cutting plaintiffs off from other sources of aid and support.

295.   By engaging in the acts alleged in this Complaint, defendants failed to exercise reasonable care to protect plaintiffs from harm, and thereby breached their duty of care to plaintiffs.

296.   As a proximate result of defendants' negligence, plaintiffs have suffered damages in an amount to be proven at trial.

VII.  ***JURY TRIAL DEMAND***

297.   Plaintiffs hereby demand a jury trial on all issues so triable.

## VIII.  ***PRAYER FOR RELIEF***

WHEREFORE, plaintiffs respectfully pray that this Court enter judgment or issue an order against defendants, and each of them, as follows:

1.  An order certifying this litigation to proceed as a class action on behalf of the plaintiff class and plaintiff subclass members;

2.  A permanent injunction enjoining defendants, their agents, employees, assigns, and all persons acting in concert or participation with them from engaging in the unlawful, fraudulent or unfair business acts and practices described herein, and/or imposing an asset freeze or constructive trust over all ill-gotten monies or profits traceable to defendants;

3.  Payment of full restitution as may be ordered by the Court;

4.  Disgorgement of all ill-gotten monies and profits obtained by defendants due to the conduct described herein, attributable to the monies defendants saved by not paying minimum wage and full overtime premiums to the their workers or other wages or payments legally and/or contractually due, and by not paying for the repair of non-compliant and oppressive working conditions, and the monies saved by otherwise failing to act in accordance with the laws as detailed above;

5.  A declaration of the rights and liabilities of the parties;

6.  Compensatory and special damages in an amount according to proof at time of trial;

7.  Unpaid wages, including minimum wages and overtime premiums, according to proof at time of trial;

8.  Return of personal property to Does I-VI and Lakshmi and Jarmani Prattipati.

9.  Statutory penalties and liquidated damages according to proof at time of trial;

10.  Treble damages sustained by plaintiffs for defendants' violations of RICO;

11.  Punitive and exemplary damages in an amount according to proof at the time of trial;

12.  An accounting;

13.  Pre- and post- judgment interest;

14.  Reasonable attorneys' fees and costs; and

15.    Such other and further relief as the Court deems just and proper.

Dated: March 31, 2003

                              MICHAEL RUBIN
                              SCOTT A. KRONLAND
                              REBEKAH B. EVENSON
                              Altshuler, Berzon, Nussbaum, Rubin & Demain


                              By:    /s/ Michael Rubin
                                     Michael Rubin
                                     Attorney for Plaintiffs