1  ALTSHULER, BERZON, NUSSBAUM
    RUBIN & DEMAIN
2    Michael Rubin (Bar No. 80618)
     Scott A. Kronland (Bar No. 171693)
3    Rebekah B. Evenson (Bar No. 207825)
   177 Post Street, Suite 300
4  San Francisco, CA  94108
   Telephone:  (415) 421-7151
5  Facsimile:  (415) 362-8064

6  LATHAM & WATKINS LLP
     Peter A. Wald (Bar No. 085705)
7    John P. Flynn (Bar No. 141094)
     Randall T. Kim (Bar No. 196244)
8    Shannon M. Eagan (Bar No 212830).
   505 Montgomery Street, Suite 1900
9  San Francisco, California
   Telephone: (415) 391-0600
10 Facsimile: (415) 395-8095

11 Attorneys for Plaintiffs

12                  IN THE UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14

15 | JANE DOE I, *et al.*, | ) | No. C-02-5570 WHA (MEJ) |
   |  | ) |  |
16 | Plaintiffs, | ) | **PLAINTIFFS' MEMORANDUM OF** |
   |  | ) | **LAW RE: DISPUTED JURY** |
   | v. | ) | **INSTRUCTIONS** |
17 |  | ) |  |
   | LAKIREDDY BALI REDDY, *et al.*, | ) |  |
18 |  | ) | Date:   March 22, 2004 |
   | Defendants. | ) | Time:   2:00 p.m. |
19 |  | ) | Place:  Courtroom 9, 19th Floor |
   |  |  | Judge: Hon. William H. Alsup |

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page No.

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

 A. Disputed Instruction No 1.2: Introduction to Claims and Defenses . . . . . . . . . . 1

 B. Disputed Instruction No 6.0: Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

 C. Disputed Instructions No 7.1 and 7.2: Effect of Guilty
  Plea/Criminal Conviction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

 D. Disputed Instructions No. 7.4 and 8.8:  5th Amendment Assertion . . . . . . . . . 3

 E. Disputed Instructions No. 8.1 Through 8.7: Vicarious Liability . . . . . . . . . . . 4

 F. Disputed Instruction No. 9.1a:  Battery – Consent . . . . . . . . . . . . . . . . . . . . . . 5

 G. Disputed Instruction No. 9.4:  Sexual Abuse of a Minor . . . . . . . . . . . . . . . . . . 5

 H. Disputed Instruction No. 9.7:  False Imprisonment –
  Explanation of Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

 I. Disputed Instruction No. 9.11: Intentional Infliction of
  Emotional Distress – "Severe Emotional Distress" Defined . . . . . . . . . . . . . . . 6

 J. Disputed Instruction No.11.1:  Wage and Hour Claims –
  Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

 K. Disputed Instruction No. 11.2:  Wage and Hour Claims –
  Joint Employers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

 L. Disputed Instruction No. 11.3a: Failure to Provide Wage and
  Hour Records – 226(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

 M. Disputed Instruction No. 11.5:  Wage and Hour Claims –
  Proof of Wages Due . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

 N. Disputed Instruction No. 11.6a: Wage and Hour Claims –
  Overtime Compensation – Live-in Workers . . . . . . . . . . . . . . . . . . . . . . . . . 7

 O. Disputed Instruction No. 11.7: Wage and Hour Claims –
  Regular Rate of Pay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

 P. Disputed Instruction No. 11.8:  Wage and Hour Claims – Waiting Time Penalty
  for Nonpayment of Wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

 Q. Disputed Instruction No. 11.9: Fair Labor Standards Act . . . . . . . . . . . . . . . . 8

   1. Offset for Meals or Lodging . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   2. Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

 R. Disputed Instruction No. 12.8: Breach of the Covenant of Good Faith and Fair
  Dealing:  Good Faith Mistaken Belief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

S.  Disputed Instruction No. 14:  RICO ................................. 10

     1. Introduction ........................................... 11
     2. Elements .............................................. 11
     3. RICO Enterprise and Pattern of Racketeering Activity .......... 12
     4. RICO §1962(a) ......................................... 12
     5. RICO §1962(d) ......................................... 13
     6. Damages .............................................. 13
     7. Mitigation ............................................. 14
     8. In Pari Delicto ......................................... 14

T.  Disputed Instruction No. 15.3:  Negligence – Heightened
    Duty of Care ..................................................... 15

U.  Disputed Instruction No. 15.4-15.5:  Negligence – Plaintiff's
    Contributory Negligence/ Apportionment of Responsibility ............... 15

V.  Disputed Instruction No. 15.7:  Negligence – Causation –
    Third Party Conduct as Superseding Cause ........................... 16

W.  Disputed Instruction No. 16.0 and 16.3 –
    Intentional/Unintentional Tort Damages  ........................... 16

X.  Disputed Instruction No. 17.0: Fraud Damages ......................... 17

Y.  Disputed Instruction No. 18.0:  Wage and Hour Damages ............... 17

Z.  Disputed Instruction No. 19.1:  Contract Damages ...................... 18

AA.  Disputed Instruction No. 20.0: Conversion Damages .................... 18

BB.  Disputed Instruction No. 21.0:  Punitive Damages ..................... 18

CC.  Disputed Instruction No. 22:  Statute of Limitations  ................... 19

DD.  Disputed Instruction No. 23.0:  Equitable Tolling ...................... 20

EE.  Disputed Instruction No. 23.1:  Equitable Tolling –
    Unclean Hands ................................................. 20

Conclusion ............................................................... 22

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Allwaste, Inc. v. Hecht*,
  65 F.3d 1523 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 18, 19

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Baxter v. Palmigiano*,
  425 U.S. 322 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Brink's, Inc. v. City of New York*,
  717 F.2d 700 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Brooklyn Savings Bank v. O'Neill*,
  324 U.S. 697 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cerro v. Gordo Charity*,
  819 F.2d 1471 (8th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*FDIC v. Fidelity & Deposit Co. of Maryland*,
  45 F.3d 969 (5th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Fireman's Fund Insurance Co. v. Stites*,
  258 F.3d 1016 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*John S. Clark Co. v. Fagert & Frieden, P.C.*,
  65 F.3d 26 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Johnson v. Yellow Cab Transit Co.*,
  321 U.S. 383 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Keating v. Office of Thrift Supervision*,
  45 F.3d 322 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*LiButti v. United States*,
  107 F.3d 110 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Local 246 Utility Workers Union of America v. Southern California Edison Co.*,
  83 F.3d 292 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lowery v. Stovall*,
  92 F.3d 219 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*In re National Mortg. Equity Corp. Mortg. Pool Certificates Sec.Litigation*,
  636 F. Supp. 1138 (C.D. Cal. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Rad Services, Inc. v. Aetna Casualty and Surety Co.*,
  808 F.2d 271 (3d. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. $31,697.59 Cash*,
665 F.2d 903 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**STATE CASES**

*Allen v. Sundean*,
137 Cal.App.3d 216 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Angie M. v. Superior Court*,
37 Cal.App.4th 1217 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bartholomew v. Heyman Properties*,
132 Cal.App.2d Supp. 889 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Drust v. Drust*,
113 Cal.App.3d 1 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Heiner v. Kmart Corp.*,
84 Cal.App.4th 335 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hernandez v. Mendoza*,
199 Cal.App.3d 721 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Salahutdin v. Valley of California, Inc.*,
24 Cal.App.4th 555 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Weidenfeller v. Star & Garter*,
1 Cal.App.4th 1 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**FEDERAL STATUTES AND REGULATIONS**

18 U.S.C. §§ 1962 (a), 1962(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

18 U.S.C. §3664(l) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

29 C.F.R. §516.27(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

29 C.F.R. §531.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

29 U.S.C. §206(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

29 U.S.C. §216(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

**STATE STATUTES**

Cal. Code. Civ. Proc. 352(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Cal. Code. Civ. Proc.§377.34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Cal. Code. Civ. Proc.§875(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cal. Labor Code §1194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

**INTRODUCTION**

Plaintiffs submit the following arguments in support of plaintiffs' disputed jury instructions and in opposition to defendants' disputed instructions. This submission is made with the understanding that plaintiffs will have an opportunity at the charging conference to suggest modifications, additions or subtractions to the instructions based upon the proof at trial.

Some of the disputes between the parties are minor. Although plaintiffs provided defendants with a full set of our jury instructions six days before the filing date, defendants refused to meet and confer about many of the instructions, and submitted their "responsive" instructions just hours before they were due, giving plaintiffs little or no time to respond. We address the disputed issues below, while noting that only a few are substantive in nature.

**ARGUMENT**

**A.      Disputed Instruction No 1.2: Introduction to Claims and Defenses**

Plaintiffs drafted the "claims" portion of the "introduction to claims and defenses," and asked defendants to draft their "defenses" portion pursuant to 9th Circuit Model Instruction 1.2. Defendants, however, refused to provide their half of the instruction. Instead, they drafted *their own* version of plaintiffs' claims. Plaintiffs disagree with defendants' characterization of plaintiffs' claims. Just as plaintiffs do not purport to characterize defendants' defenses, nor should defendants be allowed to give their own skewed perspective on plaintiffs' claims. Plaintiffs' proposed instruction accurately states the facts and claims that plaintiffs intend to prove at trial. The Court should instruct the jury with the plaintiffs' claims as set forth by plaintiffs and defendants' defenses as set forth by defendants.

**B.      Disputed Instruction No 6.0: Parties**

Because there are four plaintiffs and 13 defendants in this action, plaintiffs proposed an instruction to identify the various parties and their familial relationships. Defendants would have us simply name the parties without providing any context. Plaintiffs believe it is important to give the jury more than simply the name of a defendant – by, for example, listing the owners of the various businesses (as admitted in discovery) and the basic family relationships – because otherwise the long list of similar-sounding names will confuse the jury.

**C.    Disputed Instructions No 7.1 and 7.2: <u>Effect of Guilty Plea/Criminal Conviction</u>**

Defendants propose to instruct the jury that "Evidence that a witness has been convicted of a crime may be considered *only* as it may affect the believability of that witness and for *no other purpose*." (Emphasis added).  That form instruction applies where the crime is *unrelated* to the civil case.  Here, defendants' crimes are related to the civil claims, and defendants' guilty pleas and felony convictions are substantive proof that they committed those felonies and that they admit the underlying elements of the felonies.  The Court should instruct the jury that the facts defendants admitted in their plea agreements must be taken as true and need not be separately proven by plaintiffs.

As explained in Plaintiffs' Motion in Limine No. 6, a criminal conviction has collateral estoppel effect in a subsequent civil proceeding.  *Fireman's Fund Ins. Co. v. Stites*, 258 F.3d 1016, 1020-22 (9th Cir. 2001) (conviction after trial has collateral estoppel effect in subsequent civil case); *United States v. $31,697.59 Cash*, 665 F.2d 903, 906 (9th Cir. 1982) (conviction after guilty plea has collateral estoppel effect in subsequent civil case).  Here, defendants L.B. Reddy, Vijay Lakireddy and Jayaprakash Lakireddy pled guilty to immigration fraud.  Each defendant (and their agent Venkateswara Vemireddy) also admitted in his plea agreement that he was part of criminal conspiracy involving his co-defendants.  These are RICO predicate acts, and are relevant to plaintiffs' fraud and tort claims.  Those defendants cannot now deny that they committed the offenses admitted in their plea agreements, nor can they contest the accuracy of the statements that they agreed were true in their plea agreements as support for their entry of guilty pleas.

Mutuality of the parties is not required for a criminal plea agreement to have collateral estoppel effect barring a defendant from relitigating in a civil case the issues that he agreed were true in his plea agreement.  *Fireman's Fund*, 258 F.3d at 1020 (defendant estopped from relitigating underlying criminal conviction in case brought by private parties).  Nor is it relevant whether the underlying criminal offense has the identical substantive elements as the civil offense.  *Lowery v. Stovall*, 92 F.3d 219, 223-25 (4th Cir. 1996) (defendant precluded from

contesting statement he had made in criminal plea agreement regarding attacking an officer in subsequent civil action against the officer for excessive force).

Defendants obtained significant sentencing benefits by admitting certain facts in their guilty pleas in exchange for the Government dropping other serious criminal charges against them.  The doctrine of judicial estoppel precludes a defendant from obtaining the benefits of a plea agreement from one court (such as reduced sentence and dropped charges) and then repudiating the facts he previously represented to the court were correct.  *Lowery,* 92 F.3d at 223-25 (refusing to allow litigant to dispute, in a subsequent civil case, the facts he told the trial judge were correct when he entered a guilty plea). "The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." *Id.* at 223 (quoting *John S. Clark Co. v. Fagert & Frieden, P.C.,* 65 F.3d 26, 28-29 (4th Cir. 1995)).

Finally, there is a specific statutory provision applicable to criminal convictions accompanied by a restitution order:

> A conviction of a defendant for an offense involving the act giving rise to an order of restitution shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding . . . brought by the victim.

18 U.S.C. §3664(l).

### D.    Disputed Instructions No. 7.4 and 8.8:  <u>5th Amendment Assertion</u>

Plaintiffs' requested instructions are accurate statements of the law, and this Court has already held that just such an instruction is proper.  When defendants first began asserting the Fifth Amendment in order to avoid responding to discovery, this Court ruled that defendants' "[a]ssertions of the Fifth Amendment privilege in response to discovery may be read to the jury, and the jury shall be instructed that an adverse inference may be draw from defendants' invocations of the privilege."  Order Granting Plaintiffs' Motion to Compel (July 16, 2003) at 2.

Innumerable Supreme Court and Court of Appeal cases hold that a jury in a civil case may draw an adverse inference from a party's invocation of the Fifth Amendment refusal to testify. *See, e.g., Baxter v. Palmigiano*, 425 U.S. 322, 318-319 (1976); *Keating v. Office of*

*Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995).  It is similarly well established that the Fifth Amendment assertion of an agent may be used to draw an adverse inference against the principal.  *See Brink's, Inc. v. City of New York*, 717 F.2d 700, 710 (2d Cir. 1983); *LiButti v. United States,* 107 F.3d 110, 123 (2d Cir. 1997); *Cerro v. Gordo Charity*, 819 F.2d 1471, 1481 (8th Cir. 1987); *Rad Services, Inc. v. Aetna Cas. and Sur. Co.,* 808 F.2d 271, 277 (3d. Cir. 1986)*; FDIC v. Fidelity & Deposit Co. of Maryland,* 45 F.3d 969, 977-78 (5th Cir. 1995).

**E.     Disputed Instructions No. 8.1 through 8.7: <u>Vicarious Liability</u>**

Plaintiffs pleaded vicarious liability and are entitled to instruction on those points. Plaintiffs' proposed instructions are accurate statements of the law and facts admitted by defendants, and the instructions are drawn directly from the pattern instructions and from the cases cited.

1. Defendants Pasand Madras Cuisine, Lakireddy Investment Company, L.B. Reddy Estate Company and Jay Construction stated in their interrogatory responses that they are partnerships, and identified who their partners are.  Declaration of Rebekah Evenson in support of Plaintiffs' Memorandum of Law ("Evenson Decl.") Exh. A - D.  Plaintiffs' proposed instruction simply explains what "partnership" means and sets forth the law on the liability of partnerships.

Defendants Pasand, Inc. and Vani Computer solutions stated in their interrogatory responses that they are corporations, and identified their owners.  Evenson Decl. Exh. E-F. Plaintiffs' proposed instruction explains what "corporation" means and sets forth the law on the liability of corporations.

Defendants now argue that the jury instructions should not contain the names of the entities that are partnerships or corporations, or who their owners are, because at trial defendants will argue they are *not* partnerships or corporations and that defendants *do not* own the businesses, in contradiction of their discovery responses.  Defendants cannot, for the first time at trial, introduce new evidence regarding the basic organizational structure of the entity defendants that contradicts their discovery responses.

The jury instructions should name the partnerships and corporations and set forth the law

of vicarious liability.  Plaintiffs' proposed instructions quote directly from the 9th Circuit model instructions and do not contain any disputable statements of law.

2.  Similarly, defendants contended throughout the meet and confer process that *no* instruction should be given on the vicarious liability of conspirators, aiders and abettors, joint enterprise, principals or employers.  They declined to provide plaintiffs with any reasons for this position, however, and did not suggest *any* alternative instruction.  Then, just hours before the jury instructions were due, defendants insisted that we insert their versions of disputed instructions on vicarious liability.  We never had an opportunity to meet and confer about these matters.  Plaintiffs' proposed instructions are not novel constructions of the law.  Plaintiffs' proposed conspiracy instruction is BAJI pattern instructions 13.86 and 13.87; plaintiffs' proposed aiding and abetting instruction is directly based upon California and U.S. Supreme Court case law; plaintiffs' proposed joint enterprise instruction is BAJI pattern instruction 13.40; plaintiffs' proposed agent/principal instruction is also drawn directly from California case law; and plaintiffs' proposed employer/employee liability instruction is drawn directly from two California Supreme Court cases.

**F.  Disputed Instruction No. 9.1A:  Battery – <u>Consent</u>**

Defendants propose an instruction regarding consent.  This instruction is inappropriate because there is no evidence that Jane Doe II or Vani Prattipati consented to any of defendants' sexual abuse – indeed, defendants' own expert opines that Jane Doe II did not consent to the sexual abuse, and in any event Jane Doe II and Vani Prattipati were minors when the conduct occurred.

**G.  Disputed Instruction No. 9.4:  <u>Sexual Abuse of a Minor</u>**

Defendants have never informed plaintiffs why they do not believe that this instruction is appropriate.  Plaintiffs allege that they were sexually abused as minors.  Plaintiffs have a separate private right of action for sexual abuse of a minor.  *See Angie M. v. Superior Court*, 37 Cal.App.4th 1217, 1224-25 (1995) (separate private right of action for sexual abuse of a minor).  We have cited relevant case law and statutes that support the instruction and the elements of the claim.

1    **H.     Disputed Instruction No. 9.7:   <u>False Imprisonment – Explanation of Terms</u>**

2         Plaintiffs' proposed instructions define the statutory terms (e.g., "duress") based on

3    California Court of Appeal decisions and further explain the elements of the tort of false

4    imprisonment.  These instructions are necessary because the terminology used in the model

5    instruction can be confusing.  Plaintiffs' proposed instructions are fully supported by on-point

6    California cases.

7    **I.     Disputed Instruction No. 9.11: <u>Intentional infliction of Emotional Distress –
         "Severe Emotional Distress" Defined</u>**

8

9         Defendants' only objection to plaintiffs' proposed *replica* of a pattern instruction is that

10   plaintiffs support the instruction with relevant case cites for the Court.  We provided defendants

11   with all of our supporting authority one week before the jury instructions were filed, ample time

12   to get back to us if they felt that any of our cases were flawed.  Plaintiffs understood the Court's

13   standing order to require citation to supporting authority for all substantive instructions.

14   Clearly, we do not ask for the Court to read the case cites (or the model instruction cites) to the

15   jury.  We find it difficult to understand how defendants can refuse to stipulate to a form

16   instruction merely because it includes case cites.

17   **J.     Disputed Instruction No.11.1:  <u>Wage and Hour Claims – Introduction</u>**

18        Plaintiffs allege a number of different federal and state law claims based upon

19   defendants' failure to pay them the minimum wage or overtime premiums, and defendants'

20   failure to maintain or provide any records of their employment.  Plaintiffs propose an

21   introductory paragraph naming the parties and the types of claims in order to make it easier for

22   the jury to understand what is being asserted.  The proposed instruction does not contain any

23   disputable issues.  We are not sure why defendants will not stipulate to it.

24   **K.     Disputed Instruction No. 11.2:  <u>Wage and Hour Claims – Joint Employers</u>**

25        The law is well established that joint employers are liable for each other's wage and hour

26   violations.  Plaintiffs' proposed jury instructions cite many cases on point.  Defendants contend

27   that no such instruction should be given, but they do not contest the case law we cite and they

28   refused to tell us why they opposed the instruction.  Because plaintiffs contend that defendants

1    were joint employers and intend to prove this at trial, the jury instruction is proper.

**L.     Disputed Instruction No. 11.3A: <u>Failure to Provide Wage and Hour Records – 226(d)</u>**

Defendants initially agreed to stipulate to Instruction No. 11.3 regarding failure to provide wage and hour records; then, on the day that the jury instructions were due, defendants submitted proposed Instruction No. 11.3A.  It is unclear what records, if any, this instruction applies to, and it therefore may be entirely superfluous.  Since we have not had any opportunity to meet and confer with defendants about this instruction, or, indeed, to review any case law, we cannot stipulate to the proposed instruction.

**M.     Disputed Instruction No. 11.5:  <u>Wage and Hour Claims –  Proof of Wages Due</u>**

Although defendants were required to keep accurate records of wages and benefits paid to plaintiffs, defendants have consistently denied having any such records (indeed, they denied ever employing plaintiffs).  Under *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-88 (1946) and *Hernandez v. Mendoza,* 199 Cal.App.3d 721, 727 (1988), the jury is entitled to make a reasonable estimate of wages due based upon a plaintiff's testimony where an employer has not come forward with any documentation of hours worked or evidence to show that the plaintiff's testimony is false.  An instruction on this point is necessary because the jury might be confused about how to calculate damages if there is no clear proof of the precise number of hours worked or wages paid.

**N.     Disputed Instruction No. 11.6A: <u>Wage and Hour Claims – Overtime Compensation – Live-in Workers</u>**

Despite our best efforts to meet and confer, defendants refused to discuss this instruction with plaintiffs or to work together to draft a compromise instruction.  Because Jane Doe VII was a live-in worker, separate overtime laws apply to her.  Plaintiffs' proposed instruction sets forth these rules.

**O.   Disputed Instruction No. 11.7: <u>Wage and Hour Claims – Regular Rate of Pay</u>**

We are not sure why defendants dispute this instruction.  The preceding instruction explains that California overtime payments are to be calculated based upon the plaintiff's "regular rate" of pay.  Instruction No. 11.7 simply defines the regular rate of pay according to California law.  Without such an instruction, the jury will have no basis on which to calculate plaintiffs' overtime pay.

**P.   Disputed Instruction No. 11.8: <u>Wage and Hour Claims – Waiting Time Penalty for Nonpayment of Wages</u>**

Plaintiffs contend that defendants owe them waiting time penalties because defendants never paid them wages for the work they performed.  Defendants acknowledge that they have *never* paid any wages to plaintiffs.  For this reason, plaintiffs propose a modified version of the form instruction on waiting time penalties.  The form instruction would require the jury to find "the date on which defendant paid plaintiff all wages due" (CACI 2704).  Since it would be nonsensical to ask the jury to find the non-existent date on which wages were paid, plaintiffs suggest modifying the instruction so the jury is told that an element of the claims is that "*defendant has not paid plaintiff*."  Defendants disagree with this modification, but have provided no explanation for their position.

**Q.   Disputed Instruction No. 11.9: <u>Fair Labor Standards Act</u>**

Even though defendants' proposed instruction is similar to plaintiffs' proposal, defendants have refused to meet and confer about this matter, asserting instead that they demand to use the Fifth Circuit's pattern instructions.  They cite no case law in support of their instruction, which includes incorrect statements of the law.

1.  Offset for Meals or Lodging

Defendants' proposed instruction states that defendants claim "credit for the reasonable costs it incurred in furnishing certain items such as meals, lodging or other facilities."  However, defendants are entitled to no such credit and therefore this instruction should not be given.  Defendants have consistently stated in discovery that *none* of the plaintiffs ever worked for

them, and defendants have therefore refused to provide any information about the wages or benefits that plaintiffs purportedly received.  Defendants have also failed to produce any documentation of amounts paid, or of the value of meals or lodging provided.  Under federal law, an employer has the burden of producing evidence of the "reasonable cost" – i.e. the actual cost to the employer – of meals and lodging for which an offset is sought.  29 C.F.R. §531.3. Moreover, an employer is required to maintain *records* documenting such costs.  29 CFR §516.27(a) ("In addition to keeping other records required by this part, an employer who makes deductions from the wages of employees for "board, lodging, or other facilities" (as these terms are used in §3(m) of the Act) furnished to them by the employer or by an affiliated person, or who furnishes such "board, lodging, or other facilities" to employees as an addition to wages, shall maintain and preserve records substantiating the cost of furnishing each class of facility except as noted in paragraph (c) of this section.");  29 CFR §516.27(b) ("If additions to or deductions from wages paid (1) so affect the total cash wages due in any workweek (even though the employee actually is paid on other than a workweek basis) as to result in the employee receiving less in cash than the applicable minimum hourly wage, or (2) if the employee works in excess of the applicable maximum hours standard and (i) any additions to the wages paid are a part of wages, or (ii) any deductions made are claimed as allowable deductions under sec. 3(m) of the Act, the employer shall maintain records showing on a workweek basis those additions to or deductions from wages. (For legal deductions not claimed under sec. 3(m) and which need not be maintained on a workweek basis, see Part 531 of this chapter.)")  Since defendants have refused to provide in discovery evidence of *any* wages paid (including meals or lodging provided as wages) to any plaintiff, they cannot be entitled to any offset for food and lodging, and their proposed instruction is therefore inappropriate.

2. Damages

Defendants' proposed instruction states that the measure of damages for a FLSA violation is the difference between what the employer should have paid and what the employer did pay.  That is not fully accurate.  As plaintiffs explain in Instruction No. 18.0, plaintiffs are entitled to liquidated damages if the jury finds that a defendant's violation of federal minimum

1   wage or overtime law was not in good faith.  29 U.S.C. §216(b); *Local 246 Utility Workers*

2   *Union of America v. Southern California Edison Co.,* 83 F.3d 292, 297-98 (1996).  Plaintiffs

3   suggest that the full explanation of how to calculate damages for wage and hour violations

4   should be included at the *end* of the jury instructions (where all the other damages instructions

5   are placed) and should set forth an accurate statement of the law, including the provision for

6   liquidated damages.

7

8   **R.    Disputed Instruction No. 12.8: <u>Breach of the Covenant of Good Faith And</u>**
    **<u>Fair Dealing:  Good Faith Mistaken Belief</u>**

9       Plaintiffs' claim for breach of the covenant of good faith and fair dealing is based upon

10  their allegation that defendants were obliged to pay them according to earlier agreements.

11  Defendants request an instruction to support a defense that defendants "believed that there was a

12  legitimate and reasonable business purpose for the conduct."  This instruction does not make

13  sense, and a review of the cases cited by the model jury instructions explains why:  this

14  instruction is applicable only where there is a claimed business purpose for *terminating* an

15  employee.  But plaintiffs do not contend that they were wrongfully terminated, they claim that

16  they were *not paid.*   Defendants do not – and cannot – provide any explanation for what

17  possible "legitimate and reasonable" business purpose an employer could have for not paying its

18  employees.

19  **S.    Disputed Instruction No. 14:  <u>RICO</u>**

20      Defendants have repackaged and modified some of the pattern RICO instructions from

21  the Fifth Circuit and some of the pattern RICO instructions from the Eleventh Circuit, blending

22  them in a manner that is confusing, repetitive, and in many respects contrary to the statutory

23  language and Ninth Circuit law.  Plaintiffs object to defendants' RICO instructions as presented.

24      Plaintiffs started with the same two sets of model instructions (there are no Ninth Circuit

25  Model RICO Instructions), merged them to avoid duplication, and then tailored them to the

26  specific facts of this case and the governing Ninth Circuit law, including the law stated in this

27  Court's August 4, 2003 Order re defendants' motion to dismiss.  Defendants have not identified

28  *any* respect in which *any* of plaintiffs' proposed RICO instructions are legally inaccurate under

governing Supreme Court or Ninth Circuit law.  Plaintiffs' proposed instructions are clearer, shorter, more accurate, and fully supported by citations to governing authority.

    1.  Introduction

    Plaintiffs' first sentence is a simpler statement of the RICO claim.  It avoids the misleading and unnecessary clause that defendants propose:  "and the Plaintiff [which plaintiff?] seeks an award of damages as compensation [which may confuse the jury given the statutory "injury to business or property" limitation] for that violation [plaintiffs allege multiple RICO violations, not a single one]."

    The second paragraph in defendants' proposed first RICO instruction is misleading because it is not limited to §1962(c) violations only and because it misstates the standard under §1962(a) and (d).   Defendants' language also omits the important statutory term "directly or indirectly" in §1962(c).  Plaintiffs' version, by contrast, is taken from the §1962(c) statutory language.

    The third paragraph in defendants' first proposed RICO instruction defines "enterprise" and "association in fact."  Logically, those definitions should not be presented until after the jury hears the elements of a RICO §1962(c) claim, which is how plaintiffs' instructions are structured.  In addition, defendants' definition of "enterprise" is incorrect because it omits the statutory term "individual" in §1961(4) – a highly prejudicial omission because five of the defendants in this case are individuals – and adds a reference to interstate commerce, which is not in the statutory definition of "enterprise" but *is* included in plaintiffs' version in its proper place in the statement of elements.  Plaintiffs' definition of "enterprise," by contrast, defines enterprise according to the statutory language of §1961(4).

    Plaintiffs' definition of "association in fact" accurately states that the relationship can be between "two or more persons or entities," while defendants state that it can only be between "between two persons" – another critical distinction, given the individual and entity defendants in this case.

    2.  Elements

    Plaintiffs' second instruction cites the relevant language of 18 U.S.C. §1962(c) and then

quotes the elements of a RICO §1962(c) claim from the Fifth Circuit Model RICO Instructions (modified only by the addition of the word "a" before "defendant"). These elements are clearly stated and legally accurate. In plaintiffs' version, the statement of RICO elements is followed by separate instructions defining/explaining each of the elements. Plaintiffs have also accepted and included defendants' definition of "knowingly."

Defendants do not state the elements of a RICO §1962(c) claim until their third RICO instruction. While they purport to quote (with some modifications) from the Eleventh Circuit pattern instructions, nowhere do they state that these instructions pertain only to plaintiffs' §1962(c) claims – thus creating jury confusion when faced with the separate and distinct §1962(a) and (d) claims. The Eleventh Circuit statement of elements is also far more complicated than the Fifth Circuit version quoted by plaintiffs, partly because of sentence structure and partly because the Eleventh Circuit instructions are unnecessarily repetitive in describing the elements and their definitions. Moreover, defendants are wrong in adding the word "direct" before "result" in the seventh element, because RICO requires both direct *and* proximate causation. Plaintiffs also object to the reference to a special verdict form in defendants' proposed modified instruction.

3. RICO Enterprise and Pattern of Racketeering Activity

After stating the elements of plaintiffs' §1962(c) claim, plaintiffs' instructions define and explain those elements. Defendants do not contest the substantive basis for any of those definitions. In fact, defendants' language is fairly close to plaintiffs'.

Plaintiffs' proposed instruction defines "pattern of racketeering activity" by reference to this Court's August 4, 2004 ruling and the Ninth Circuit's *Allwaste, Inc. v. Hecht*, 65 F.3d 1523 (9th Cir. 1995). Defendants scatter their definition of "pattern of racketeering activity" among three separate instructions which make their proposed instructions more confusing and repetitive. Defendants have not stated any substantive disagreement with plaintiffs' definition.

The parties *agree* on the language describing the covered predicate acts.

4. RICO §1962(a)

Plaintiffs' proposed instruction states the elements of plaintiffs' "investment injury"

1    claim under §1962(a).  This instruction is taken from the statutory language, this Court's

2    February 23, 2004 summary judgment ruling, and the cases cited by the Court.  Defendants'

3    instruction (which comes out of order, because logically it should *precede* the discussion of

4    RICO conspiracy under §1962(d)) is confusing.  For example, it makes reference to "the RICO

5    ACT," which is not a defined term; it states that defendants' "'enterprise' engaged in or had

6    some affect [sic] 'on the commerce" [sic], which is confusing; and it states that "source or part

7    of that income was used in acquiring an interest in operating the enterprise," which makes no

8    sense.

9        5.  RICO §1962(d)

10       Plaintiffs' proposed instructions set forth the elements of a RICO conspiracy claim under

11   §1962(d).  Again, defendants do not dispute the substantive content of this instruction.

12       Defendants offer two lengthy proposed instructions on RICO conspiracy.  These

13   instructions are unduly complicated and the elements and meaning of §1962(d) are more

14   concisely presented in plaintiffs' proposed instruction.  Moreover, although defendants state that

15   these instructions are modified from the pattern instructions, they do not indicate the manner in

16   which those instructions are modified.

17       6.  Damages

18       Plaintiffs' instruction sets forth a correct statement of damages available under RICO.

19   Defendants' first "RICO damages" instruction, by contrast, has nothing to do with RICO, but is

20   an extra damages instruction that has no particular relevance to RICO and is misleading in its

21   phrase, "full, just and reasonable compensation for all of the damages to the plaintiffs' damages

22   [sic], no more and no less."

23       Defendants' next RICO damages instruction seems to track plaintiffs' except for the

24   second paragraph which refers to (but does not define) "proximate cause."  Plaintiffs' causation

25   instruction is directly quoted from the Fifth Circuit Model RICO Instruction, which states that to

26   find a RICO violation, the jury "must find that the commission of the acts of racketeering, or the

27   pattern of racketeering activity, or the conduct of the affairs of the enterprise through the pattern

28   of racketeering activity *directly resulted in the injury or played a substantial role in producing*

*the injury.*" Fifth Circuit Model RICO Instruction 8.1.  Defendants also propose a separate

instruction pertaining to economic damages only, but that is redundant because the previous

instruction makes plain that plaintiffs are only seeking economic damages, which is what the

law provides.

### 7.  Mitigation

Defendants propose a "mitigation" instruction as a RICO damages instruction.

However, nothing in that instruction pertains especially to RICO and it is misleading as phrased.

The second sentence, for example, makes no sense; the reference to employment opportunity is

too vague to be understandable; and the rest of that sentence seems to be missing some words.

Defendants have not cited any case law involving a RICO mitigation duty, and have not

identified any facts in this case that would support such an instruction.

### 8.  *In pari delicto*

Defendants' final proposed RICO instruction is an "*in pari delicto*" instruction.

However, as plaintiffs pointed out in the motion to dismiss briefing, an *in pari delicto* defense,

which requires plaintiffs to be "equally at fault" with respect to all challenged conduct, is not

available to defendants sued under RICO or other claims resting on strong public policies

protecting victims – especially minor victims – of coercive conduct.  *See In re National Mortg.*

*Equity Corp. Mortg. Pool Certificates Sec. Litig.*, 636 F. Supp. 1138, 1156 (C.D. Cal. 1986); *see*

*also Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306-11 (1985) (*in pari*

*delicto* defense not available to private claims under federal securities laws that were enacted to

protect the investing public).

Defendants' proposed instruction also erroneously states the law regarding wage and

hour claims.  *In pari delicto* is not a defense to a wage claim – defendants would be required to

pay the state and federal minimum wage even if plaintiffs *agreed* to be paid less than the

minimum wage.  Cal. Labor Code §1194; 29 U.S.C. §206(a); *see Brooklyn Savings Bank v.*

*O'Neill*, 324 U.S. 697 (1945) (FLSA rights non-waivable); *Bartholomew v. Heyman Properties*,

132 Cal.App.2d Supp. 889, 894-95 (1955).  Because this defense is unavailable under RICO or

the wage claims, and because there is *no* evidence that plaintiffs are "equally" at fault with

1    regard to RICO or any other violation, this instruction should not be given at all. *See Bateman*

2    *Eichler, Hill Richards, Inc.*, *supra*, 472 U.S. at 306-11.

3    　　　Nor should the Court give an "unclean hands" instruction. That equitable doctrine

4    applies to equitable claims only (*Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944)),

5    and RICO does not have an equitable component. Indeed, private plaintiffs are prohibited from

6    obtaining injunctive relief under RICO. Moreover, defendants have not identified any respects

7    in which plaintiffs have "unclean hands" with respect to the RICO predicate acts at issue. *See*

8    *also infra* at 20-22.

9    　　　**T.    Disputed Instruction No. 15.3:  <u>Negligence – Heightened Duty of Care</u>**

10   　　　Under the California statutes and cases cited by plaintiffs, adults dealing with children,

11   adults who are the guardians of children, employers, and landlords are held to a higher standard

12   of care in negligence cases. Defendants do not dispute the accuracy of the instruction or provide

13   an alternative instruction, but nonetheless refuse to stipulate. Because the negligence claims in

14   this case will require the jury to determine whether adults and guardians acted negligently

15   toward children, whether employers acted negligently toward employees, and whether landlords

16   negligently failed to protect tenants, plaintiffs' proposed instruction is appropriate.

17

18   　　　**U.    Disputed Instruction No. 15.4-15.5:  <u>Negligence – Plaintiff's Contributory</u>**
     　　　　　　**<u>Negligence/ Apportionment of Responsibility</u>**

19

20   　　　Defendants request that the Court instruct the jury regarding contributory negligence,

21   and they ask the Court to instruct the jury to apportion responsibility for the negligence damages

22   to plaintiffs. However, this instruction is inappropriate because defendants have consistently

23   denied any knowledge of any negligence by plaintiffs. As stated in the Form Instructions that

24   defendants use, "This instruction should not be given absent *substantial evidence* that plaintiff

25   was negligent." California Jury Instructions, Civil 405 (West Publishing, 2004) (emphasis

26   added). *See also Id.* ("This instruction should be used only where the defendant claims that

27   plaintiff was negligent, there is only one defendant, and the defendant does not claim that any

28   other factor caused the harm."); *Drust v. Drust*, 113 Cal.App.3d 1, 6-7 (1980) (contributory

negligence instruction inappropriate absent direct evidence that plaintiff was negligent).

Defendants did not allege prior to the discovery cut-off that any plaintiff was negligent. In response to the interrogatory, "Do you contend that any Plaintiff is responsible for any of the damages asserted in the Second Amended Complaint?" all defendants except Prasad Lakireddy responded that "Some or all Plaintiffs conspired to enter the United States illegally.  Some of [sic] all Plaintiffs failed to mitigate their physical, psychological and/or economic damages." Evenson Decl. Exh. G at 3.  Prasad Lakireddy responded to that question by invoking his fifth Amendment right not incriminate himself.  Evenson Decl. Exh. H at 5.  Neither the alleged conspiracy to enter the United States illegally nor the alleged failure to mitigate damages constitute negligence on the part of plaintiffs.  Defendants should be precluded from asserting for the first time now that plaintiffs were negligent.  Defendants' proposed instruction regarding contributory negligence should not be given.

## V.   Disputed Instruction No. 15.7:  <u>Negligence – Causation – Third Party Conduct as Superseding Cause</u>

Defendants request an instruction regarding third party conduct, but do not identify the third party, do not identify what conduct was the "superseding cause," and do not cite any case law.  This instruction should not be given unless the issue is raised by admissible evidence. Should defendants later attempt to clarify what conduct is at issue, plaintiffs request an opportunity for further briefing or argument.

## W.   Disputed Instruction No. 16.0 and 16.3 – <u>Intentional/Unintentional Tort Damages</u>

Defendants propose 7.1 and 7.2 – federal law damages instruction for plaintiffs' state tort claims.  They cite no case law in support of their formulation of the damages instructions. Plaintiffs propose the CACI version of damages instructions, which is more appropriate for instruction on California damages claims, and which we support with citations to California tort cases.  Plaintiffs' proposed instruction 16.3 sets forth the particular types of damages that each plaintiff seeks, and provides citations to California cases in support of each type of damages. Defendants' proposed instructions are duplicative and unnecessary.

1

### X.    Disputed Instruction No. 17.0: <u>Fraud Damages</u>

2    Defendants do not offer a jury instruction for fraud damages, but they claim that

3    plaintiffs' proposed instruction is duplicative.  However, as the cases we cite demonstrate, fraud

4    damages are different from tort damages.  For example, one measure of fraud damages is the

5    "benefit of the bargain," which is not part of tort damages.  *Salahutdin v. Valley of California,*

6    *Inc.*, 24 Cal.App.4th 555, 567-68 (1994).  A separate jury instruction for fraud damages is

7    therefore necessary.

8

### Y.    Disputed Instruction No. 18.0: <u>Wage and Hour Damages</u>

9    Defendants' proposed instruction on wage and hour damages is inaccurate because it

10   omits the provisions in both federal and state law regarding liquidated damages.  *See* 29 U.S.C.

11   §216(b) ("Any employer who violates the provisions of §206 or §207 of this title shall be liable

12   to the employee or employees affected in the amount of their unpaid wages, or their unpaid

13   overtime compensation, as the case may be, *and in an additional equal amount as liquidated*

14   *damages*) (emphasis added); Cal. Labor Code §1194.2(a) ("In any action under §1193.6 or

15   §1194 to recover wages because of the payment of a wage less than the minimum wage fixed by

16   an order of the commission, an employee shall be entitled to recover liquidated damages in an

17   amount equal to the wages unlawfully unpaid and interest thereon.").  Defendants' proposed

18   instruction also fails to provide any reference to federal law.

19   Defendants' proposed instruction also fails to set forth any statement of the burden-

20   shifting analysis required under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88

21   (1946).  In that case, the Supreme Court held:

22   When the employer has kept proper and accurate records the employee may
easily discharge his burden by securing the production of those records.  But

23   where the employer's records are inaccurate or inadequate and the employee
cannot offer convincing substitutes a more difficult problem arises.  The solution,

24   however, is not to penalize the employee by denying him any recovery on the
ground that he is unable to prove the precise extent of uncompensated work.

25   Such a result would place a premium on an employer's failure to keep proper
records in conformity with his statutory duty; it would allow the employer to

26   keep the benefits of an employee's labors without paying due compensation as
contemplated by the Fair Labor Standards Act. In such a situation we hold that an

27   employee has carried out his burden if he proves that he has in fact performed
work for which he was improperly compensated and if he produces sufficient

28   evidence to show the amount and extent of that work as a matter of just and
reasonable inference. The burden then shifts to the employer to come forward

1

with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

2

3

*Id.* In order to be accurate, the jury instructions must reference this burden-shifting requirement.

4

5

### Z.    Disputed Instruction No. 19.1:  Contract Damages

6

Defendants' proposed instruction says "To recover damages for the breach of a contract

7

to pay money, a plaintiff must prove the amount due under the contract," but the previous,

8

*stipulated* instruction already says that plaintiffs claim "wages and benefits due under the

9

contract" *and* it says that "Plaintiff must also prove the amount of his or her damages to a

10

reasonable certainty.  However, plaintiff does not have to prove the exact amount of damages."

11

Defendants's proposed instruction No. 19.1 is therefore duplicative and unnecessary.  Moreover,

12

it is an incomplete statement of the law, insofar as it leaves out the rule that plaintiffs do not

13

need to prove the *exact* amount due under a contract.

14

### AA.    Disputed Instruction No. 20.0: Conversion Damages

15

16

Plaintiffs' conversion damages instruction tracks the model jury instruction.

17

Defendants**,** too, track the model instruction but they inexplicably fail to mention Vani

18

Prattipati's damages.  Lakshmi and Jarmani Prattipati bring a conversion claim on behalf of

19

Vani Prattipati, and they are entitled to seek special damages for the property that defendants

20

took.  Because successors in interest may not recover for a decedent's emotional distress,

21

plaintiffs' proposed instruction makes clear that only Jane Doe II is claiming emotional distress

22

damages for conversion.  Plaintiffs' instruction is more accurate than defendants' instruction,

23

which would eliminate Vani Prattipati's claim.

24

### BB.    Disputed Instruction No. 21.0:  Punitive Damages

25

Plaintiffs' propose that the court use the California model jury instruction for punitive

26

damages in cases where punitive damages are bifurcated.  Defendants have never told us why

27

they will not stipulate to this instruction, which is an accurate statement of plaintiffs' claims and

28

California law.

## CC.   Disputed Instruction No. 22:   <u>Statute of Limitations</u>

Defendants' proposed statute-of-limitations instruction fails to give any guidance to the jury as to which claims defendants contend may be time barred.  Defendants also refused to provide any additional detail to plaintiffs during meet and confer sessions about the jury instructions -- notwithstanding repeated requests by plaintiffs.  As it stands now, plaintiffs have no idea what defendants are claiming about the statute of limitations and why.

That being so, defendants should be deemed to have waived any right to a jury instruction regarding statutes of limitations.  Their proposed instruction will just confuse the jury as it gives no guidance as to which claims may be untimely or how the statutes of limiation might apply in this case.

For example, under California law, the statute of limitations does not run while a plaintiff is a minor. Cal. Code. Civ. Proc. 352(a).  In this case Jane Doe II was still a minor on October 18, 2000, when defendants entered into a written agreement to toll the statute of limitations as to all her claims.  Evenson Decl. Exh. I.  Thus, none of her claims could possibly be barred by a statute of limitations.  Do defendants contend the tolling agreement signed by their attorney is invalid?  If so, is this a factual claim – *e.g.,* that their attorney never signed the agreement and/or that he lacked authority to do so?  Do they contend that Doe II was not a minor?  Defendants' instruction fails to provide any guidance on what issues the jury is being asked to decide and, therefore, what evidence plaintiffs would need to present.

Similarly, Jyotna Devi ("Vani") Prattipati was a minor when she died on November 24, 1999.  Less than a year later, on October 18, 2000, defendants entered into a tolling agreement with Vani's parents regarding all her survivorship claims.  Defendants do not contend that any claim has a limitations period of less than a year.  How could any of Vani's claims be time-barred?  What issue is the jury being asked to decide?

Likewise, we are not aware of any contacts between defendants and plaintiffs Sreekanth Kollipara or Jane Doe VII that took place more than two years before the tolling agreement was signed.  How could any claim by these plaintiffs with a limitations period of two years or more possibly be time barred?

Defendants wish to instruct the jury that claims for sexual abuse of a minor may be barred if not brought within eight years from when the minor reaches the age of majority. Do they actually claim that Jane Doe II and/or Vani turned 26 before this action was filed? Defendants' instruction also informs the jury that fraud claims and breach of written contract claims have limitations periods of three years and four years; do they really claim that those limitations periods could possibly have been exceeded?

Plaintiffs have a right to know whether defendants intend to ask the jury to decide a serious statute of limitations issue so plaintiffs know what evidence to present. Defendants' failure to make their argument explicit should be a waiver of the defense.

**DD.    Disputed Instruction No. 23.0:  Equitable Tolling**

For the reasons stated above, in our objection to defendants' statute-of-limitations instruction, the jury should not be told anything about the statute of limitations. However, if the jury is instructed about the statute of limitations, the jury should also be instructed about equitable tolling principles and about defendants' written agreement to toll all applicable statutes of limitations as of October 18, 2000. Evenson Decl. Exh. I. We would ordinarily have framed a more specific equitable tolling instruction that addresses only those claims that defendants contend are time barred and only the issues the jury actually needs to decide. But, as explained in our objection to defendants' statute-of-limitations instruction, defendants have refused to share their contentions with us.

**EE.    Disputed Instruction No. 23.1:  Equitable Tolling – Unclean Hands**

Defendants' proposed instruction about "unclean hands" misstates the law and would mislead the jury. It should not be given.

1.    Under California law, the claims of Vani Prattipati survived her death. Those claims may be maintained by her successors in interest, Lakshmi and Jarmani Prattipati, except that no damages may be recovered for "pain, suffering, or disfigurement." The causes of action before the jury are the decedent's causes of action. Her successors in interest stand in her shoes; the successors happen to be Vani's parents, but Vani's claims could have been assigned to someone else. The relevant section of the Cal. Code Civ. Proc. is §377.34, which states:

> In an action or proceeding by a decedent's personal representative or successor in interest on *the decedent's cause of action*, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages *that the decedent would have been entitled to recover had the decedent lived*, and do not include damages for pain, suffering, or disfigurement.  (Emphases added).

Defendants want to instruct the jury that Vani should not recover anything because her successors in interest allegedly had "unclean hands."  That is not the law.   These are Vani's claims against defendants the jury is adjudicating, not her parents' claims.  These are survivorship claims, not wrongful death claims.

2.   Equally to the point, most of Vani's claims could not possibly be subject to an "unclean hands" defense.  First,  an employee is entitled to be paid the applicable minimum wages and overtime pay even if the employee explicitly agrees otherwise.  There are no equitable defenses to wage and hour claims.

Second, under California law an intentional tortfeasor is not entitled to a reduction of damages because of alleged negligence by the victim or a third party.  See Cal. Code Civ. Proc. §875(d) ("There shall be no right of contribution in favor of any tortfeasor who has intentionally injured the injured person."); *Allen v. Sundean*, 137 Cal.App.3d. 216, 226-27 (1982); *Heiner v. Kmart Corp.*, 84 Cal.App4th 335, 348-350 (2000); *see also Weidenfeller v. Star & Garter,* 1 Cal.App.4th 1, 6-7 (1991)( "an intentional actor cannot rely on someone else's negligence to shift responsibility for his or her own conduct").  Most of the torts defendants are accused of committing are intentional torts.  Defendants cannot use the "unclean hands" doctrine to manufacture a contributory negligence defense that does not exist.

3.   Finally, defendants' proposed instruction offers an inaccurate description of the "unclean hands" doctrine, saying that no recovery may be had on any of Vani's claims if her parents "knowingly participated in the placement of their daughter, Vani, in the situation that lead to her harm."  The "situation that lead to her harm" was being exposed to defendants.  No one disputes that the Prattipati parents knew that Vani was working for defendants in India or that defendants brought Vani to the United States.  There is no basis for instructing the jury that Vani's parents were equally complicit in the rape of their daughter simply because they allowed

1   Vani to work for defendants.

2       We hasten to add that defendants were asked at the close of discovery whether they had

3   any evidence that Vani's parents knew defendants were sexually abusing her, and defendants

4   failed to identify any such evidence.  Every defendant was asked whether the defendant

5   "contend[s] that any parent of . . . [Vani] Prattipati knew, prior to L.B. Reddy's arrest in January

6   2000, that L.B. Reddy was having sexual relations with her daughter."  The non-Prasad

7   defendants responded that "[a]s far as Doe II and [Vani] Prattipati are concerned, defendants do

8   not know at this time."  Prasad Lakireddy responded by making reference to the transcript of the

9   deposition of Jane Doe I, which says nothing whatsoever about the knowledge of Vani's

10  parents.  *See* Plaintiffs' Motion in Limine No. 1, at 2 (providing citations to the relevant

11  discovery responses).  If defendants had evidence that Vani's parents knew about the sexual

12  abuse of their daughter prior to L.B. Reddy's arrest, then defendants were obliged to disclose

13  that evidence in response to plaintiffs' interrogatories.  Since they failed to disclose any such

14  evidence, they cannot claim now that there is support for an "unclean hands" instruction based

15  on the knowledge of the parents.

16                          **<u>CONCLUSION</u>**

17      For the foregoing reasons, the Court should reject defendants' proposed jury instructions

18  and adopt plaintiffs' proposed jury instructions.

19  Dated:  March 15, 2004                    Respectfully submitted,

20                                            ALTSHULER, BERZON, NUSSBAUM,
                                                RUBIN & DEMAIN
21
                                            LATHAM & WATKINS LLP
22

23                                          By:_____/s/ Rebekah B. Evenson_____
                                                  Attorneys for Plaintiffs
24

    F:\Reddy\Global Case\Jury Instructions\Memoranda of Law\Memo of law re disputed instructions.Final.wpd
25

26

27

28