1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11

JANE DOE II; *et al.*,                              No. C 02-05570 WHA

12              Plaintiffs,

13
     v.                                             **ORDER ON PLAINTIFFS'**
14                                                  **MOTION TO ENFORCE**
LAKIREDDY BALI REDDY, *et al.*,                     **SETTLEMENT**
15
              Defendants.
16   _____/

17

**INTRODUCTION**

18
          Five minutes before opening statements to a jury, counsel for plaintiffs Usha Prattipati,
19
Lakshmi and Jarmani Prattipati, the latter two on behalf of their deceased daughter Vani
20
Prattipati, announced that they wished to accept a settlement offer.  Proceedings were then held
21
in chambers and on the record fully resolving plaintiffs' claims in this federal action as well as
22
a related state action.  The Court retained jurisdiction to enforce the settlement.  A dispute has
23
now arisen regarding the terms and scope of the parties' agreement.  Plaintiffs have made a
24
motion to enforce the settlement.
25
**STATEMENT**
26
          The details of this case have been the subject of many prior orders.  In brief, the
27
allegations involved a conspiracy to induce plaintiffs (primarily women) and others like them
28
to come to the United States from India.  Once here, they were purportedly held in a state of

peonage, involuntary servitude and forced labor.  In some cases, defendants allegedly

1   committed assault and forcible sex offenses against them (here as well as in India).  The

2   litigation was highly contested.  A jury was selected April 5, 2004.  The parties returned two

3   days later on April 7 to commence with their opening statements.

4       Five minutes before opening statements, counsel for the Prattipatis abruptly requested

5   a short recess to speak with his clients.  Counsel returned to advise that the Prattipatis wished

6   to accept a settlement offer from defendants.  Plaintiffs' counsel again met with the Prattipatis

7   privately.  Ultimately, a full settlement was reached.  The terms were fully recited on the

8   record in chambers with plaintiffs Usha Prattipati and Lakshmi and Jarmani Prattipati present

9   as well as all counsel.  Michael Rubin, John Flynn, Scott Kronland, Randall Kim, Shannon

10  Eagan and Rebekah Evenson appeared for plaintiffs.  Jonathan Bass, Michael Bolechowski,

11  Paul Wolf, Dorine Kohn, Naomi Rustomjee, David Hart and Gail Quan appeared in their

12  capacities as counsel for various individual and entity defendants.  Two interpreters were also

13  present, Deepa Pulapati and Ujvala Singh.[1]

14      At the very outset, the Court requested that lead counsel for the Prattipatis, Michael

15  Rubin, "state on the record, everything that needs to be stated" (Tr. 4).  Mr. Rubin made the

16  following statement:

17      Mr. Rubin:    Defendants have offered, and Jane Doe II and Vani
                      Prattipati, through her parents, Jarmani and
18                    Lakshmi Prattipati, have accepted a settlement
                      offer that resolves all claims that Jane Doe II,
19                    whose real name is Usha Prattipati, and her
                      parents, in behalf of their deceased daughter, Vani
20                    Prattipati, have against defendants, both in this
                      case in federal court and in the gas heater case in
21                    Alameda County Superior Court.  The total amount
                      of the settlement that resolves all of plaintiffs'
22                    claims in both actions against the defendants in the
                      federal court and the Reddy defendants in the gas
23                    heater action is $8.9 million.  The allocation of the
                      $8.9 million between client and counsel is the
24                    subject of a separate agreement between client and
                      counsel, that we have all agreed to today.

25

26

27

28  _____

[1] The settlement was placed on the record under seal.  Plaintiffs' counsel concede that the settlement terms and identities of the participants in the settlement are no longer confidential and that "plaintiffs have no objection to the court un-sealing the transcript."  This order will thus make unredacted references to the record.

United States District Court
For the Northern District of California

2

| | | |
|---|---|---|
| 1 | | The plaintiffs in these actions will execute a release and a waiver that includes the terms of California Code of Civil Procedure 13 — |
| 2 | | |
| 3 | Mr. Bass: | 1542 — |
| 4 | Mr. Rubin: | — 1542, waving [sic] all claims, known and unknown, against the defendants on behalf of Jane Doe II, also known as Usha Prattipati, and their deceased daughter, Vani Prattipati. |
| 5 | | |
| 6 | | |

(Tr. 4–5).  Lead counsel for defendants, Jonathan Bass, agreed that the foundational terms of the settlement had been established:

| | | |
|---|---|---|
| 8 | Mr. Bass: | . . . I think it's appropriate for me to put on the record the offer that I believe was accepted. |
| 9 | | |
| 10 | Mr. Rubin: | Mr. Bass, before you do that, may I just speak to you for five seconds? |
| 11 | | |
| 12 | Mr. Bass: | Would you like me not to do it? |
| 13 | | (Mr. Rubin confers with Mr. Bass and Ms. Kohn [counsel for defendants Lakireddy Bali Reddy and the L. B. Reddy Estate Company in the state action], sotto voce.) |
| 14 | | |
| 15 | Mr. Bass: | We've had a colloquy, myself, Dorine Kohn and Mr. Rubin, in which we've agreed at Mr. Rubin's request not to recite here on the record the specific aspects of our settlement offer.  He's correct that the aggregate amount was $8.9 million, and it was split.  We offered it as a split between the two cases and attorneys' fees and so on. |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | He's assured Ms. Kohn and myself that we would agree explicitly either on the allocation set forth in my settlement letter or some other appropriate allocation that would satisfy the Alameda County Superior Court, that Mr. Reddy's settlement in that case qualifies under Section 877.6 of the Code of Civil Procedure, because there are remaining non-settling defendants in that case. |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | That case, the Alameda County case, would then be dismissed with prejudice.  These Plaintiffs' claims in this case would be dismissed with prejudice.  As Mr. Rubin said, there would be a formal settlement agreement signed, which would include, among other things, California Civil Code Section 1542 waivers. |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

(Tr. 5–6). The Court asked the parties at this preliminary stage to confirm that they had

reached a fully-enforceable settlement agreement so the Prattipatis' federal claims could be

dismissed. The Court stated:

| | |
|---|---|
| The Court: | All right. Are you now both in agreement on the terms so far stated? |
| Mr. Rubin: | Yes. |
| Mr. Bass: | Yes. |
| The Court: | All right. Now, can I dismiss these claims right now? |
| Mr. Bass: | We would like you to. |
| The Court: | Mr. Rubin? As far as I'm concerned, this is an enforceable agreement as of right now, is that correct? |
| Mr. Bass: | As far as we're concerned. |
| Mr. Bolechowski: | Yes, your Honor, as far as Mr. Reddy is concerned, also. |
| The Court: | So even if you never get these written releases, you'll stand by this record, I'm going to dismiss the claims, and you'll be happy, but the agreement does call for getting these releases, anyway. |
| | Is that all right with you? |
| Mr. Bolechowski: | Yes, your Honor. |
| Mr. Bass: | It's our understanding that a settlement on the record is enforceable, and that if, for some reason, either side didn't comply with the terms, including the execution of a settlement agreement, that provision would be enforced. |
| The Court: | You would come back to me and I would try to enforce it. |
| Mr. Bass: | Yes. |
| The Court: | And get the written documentation, but I would like to have these claims dismissed now. |
| Mr. Bass: | That's satisfactory, yes. |
| Mr. Bolechowski: | Yes. |

United States District Court

For the Northern District of California

4

United States District Court

For the Northern District of California

| | | |
|---|---|---|
| 1 | The Court: | Is that satisfactory, Mr. Rubin? |
| 2 | Mr. Rubin: | Your Honor, given that defendants made |
| 3 | | this offer and presumably have the money, we would just like to add the term as the date by which the $8.9 million will be paid |
| 4 | | into a trust fund.  Can we have that within a week? |

(Tr. 8–10).  The discussion then turned to when the money would be paid.  The Court asked

Mr. Rubin, "do you agree that we have an agreement now, on the record?" (Tr. 10).  Mr. Rubin

responded that "I think we have to have the last term established, which is when the money

will be paid or whether, it's not paid promptly, it will be paid with an interest provision.  I

think it's the last term" (*ibid*.).  Defense counsel was given fifteen minutes to resolve when

payment would be made.  Before going temporarily off the record, Mr. Rubin confirmed that

"Just to make it clear, we have accepted the offer and we were trying to get an agreement as to

when it would be paid, and with interest" (Tr. 11).

     Defendant Prasad Lakireddy joined his lawyers in chambers.  Back on the record, the

following terms providing for the payment of the settlement funds were set forth:

| | | |
|---|---|---|
| Mr. Bass: | Okay, Dorine Kohn is counsel in the state wrongful death action, and I'm advised that a check or checks in the amount of three and-a-half million dollars can be made available within — what time? |
| Ms. Kohn: | Within 10 days from the date we find out who the payees are and get the information we need to get them.  That's on behalf of one of the insurance carriers.  One of the lesser amounts is paid by another carrier.  We assume that they can get it out as promptly, but I would say it would take no longer than 30 days. |
| Mr. Bass: | Shall we say 30 days, then, 30 days from your telling us how to make the checks out.  That's three and-a-half million dollars.  Within 30 days following that — I'm sorry. Sixty date [sic] from now, the L.B. Reddy Estate Company would pay $1 million to the appropriate payee.  L.B. Reddy Estate Company would pay the balance, which I guess is 4.4 million — |
| Mr. Wolf: | That's correct. |

United States District Court

For the Northern District of California

| | | |
|---|---|---|
| Mr. Bass: | | — and that would be, counting from today, within — |
| Mr. Lakireddy: | | Three months? |
| Mr. Bass: | | No, no, from today, five months from today, the 4.4 million final payment would be made, again, to the appropriate payees. |
| | | And counsel was speaking of interest. We would not pay interest within any of those time frames. We would agree to pay interest if the payments were missed, starting from the day they were missed, at 5 percent simple interest. |
| The Court: | | All right, how does that sound? |
| Mr. Rubin: | | That's accepted by plaintiffs, your Honor. |

(Tr. 11–13). The Court then asked Mr. Rubin when he would deliver plaintiffs' written releases to defendants:

| | |
|---|---|
| Mr. Rubin: | As soon as defendants — |
| The Court: | I would suggest, when the last payment is made. |
| Mr. Rubin: | Fine, your Honor. |
| The Court: | Is that all right with you? |
| Mr. Bass: | We would certainly collaborate in drafting up the documents, and I'd be happy to provide that the releases would become effective upon payment of the final payment, if that's okay. |
| The Court: | That sounds fair. |
| Mr. Rubin: | Yes. |
| The Court: | All right. Do we now have an agreement? |
| Mr. Bass: | Yes, your Honor. |
| Mr. Rubin: | We do, your Honor. |

(Tr. 13). With the terms of the settlement agreed to, the Court dismissed the claims of Usha Prattipati and her parents (Tr. 13–14). It took approximately thirty minutes to place the settlement on the record.

The jury, which had waited patiently in the jury room during the entire in-chambers meeting, was allowed to leave and was eventually discharged. The lawyers asked for some

6

1   time to negotiate a separate resolution of the claims of the two remaining plaintiffs, Sridevi

2   Ganji and Sreekanth Kollipara.  Later in the day, counsel advised that those claims had been

3   settled as well.  Counsel appeared April 8, 2004, to confirm the full settlement of those claims

4   on the record.

5          On May 20, 2004, counsel advised the Court for the first time that a dispute had arisen

6   over the terms of the main settlement that had resolved the case-in-chief.  Having retained

7   jurisdiction to enforce the terms of the settlement reached on the record, the Court set a

8   briefing schedule and hearing.

9                                    **ANALYSIS**

10         This order addresses two primary issues raised by the parties as to the scope and terms

11  of the settlement.  The first involves the subject of any releases from liability.  The second

12  involves the terms of actual payment of the settlement proceeds, *e.g.*, when and by whom.  It

13  appears that both sides, after settling this case, have sought to add new terms to their

14  agreement.  As discussed below, the Court will enforce only the settlement agreement reached

15  on the record (of which it retained jurisdiction to enforce).  It will not preside over new

16  litigation over new terms allegedly agreed to later on.[2]

17  **1.     SCOPE OF ANY RELEASES FROM LIABILITY.**

18         Plaintiffs' position is that "Under the April 7, 2004 agreement, the only releases

19  required are *mutual releases by the parties* of all claims, known or unknown, that could have

20  been brought against an opposing party prior to April 7, 2004" (Pl. Br. 4) (emphasis added).

21  Plaintiffs concede that "No one explicitly stated on April 7, 2004 that all releases would be

22  mutual or that plaintiffs *and* defendants would be required to release existing and potential

23  claims against the opposing parties" (*ibid*.) (emphasis in original).  However, that apparently

---

[2] Plaintiffs allegedly have also repeatedly asked defense counsel for three items that are admittedly not part of the settlement agreement but still "are very important to the surviving members of the Prattipati family," namely: (1) a letter from Lakireddy Bali Reddy reassuring the family that the Reddys wish no future harm toward the Prattipatis; (2) return of two boxes of clothing belonging to Usha Prattipati and her deceased sister, which are currently in storage in two second-floor closets at an apartment complex in Berkeley; and (3) return of any photographs of Usha and Vani that remain in defendants' possession — particularly a large framed photograph of Vani that was displayed on the wall during her memorial service. These are clearly beyond the scope of the settlement agreement.  Indeed, plaintiffs' counsel concede that "these items were not discussed on April 7, 2004 and that they are not within the specific terms of the parties' agreement" (Pl. Br. 8).  The Court will not attempt, nor does it need to attempt, to resolve these issues.

7

United States District Court

For the Northern District of California

1  was the view of the Prattipatis' counsel (*ibid.*).  They find support for this contention in the

2  lawyers' use of the singular term ("a release") in certain parts of the settlement colloquy on the

3  record in chambers and the plural term ("the releases") in other parts of the exchange.

4        Counsel misread the record.  There is nothing in the record to support the conclusion

5  that the settlement contemplated mutual releases.  The Court, for instance, commenced the

6  following colloquy regarding the *delivery of releases by plaintiffs' counsel*:

> The Court:   All right, and when would you deliver the written
>              releases?
>
> Mr. Rubin:   As soon as defendants —
>
> The Court:   I suggest, when the last payment is made.
>
> Mr. Rubin:   Fine, your Honor.
>
> The Court:   Is that all right with you?
>
> Mr. Bass:    We would certainly collaborate in drafting up the
>              documents and I'd be happy to provide that the
>              releases would become effective upon payment of
>              the final payment, if that's okay.
>
> The Court:   That sounds fair.
>
> Mr. Rubin:   Yes.

17  (Tr. 13).  No where on the record is there a discussion about *defendants* also providing a

18  release as to any claims against plaintiffs.  Any release was to come *solely* from plaintiffs.

19  Indeed, Mr. Rubin set forth the terms of the settlement as follows:

> Mr. Rubin:   Defendants have offered, and Jane Doe II and Vani
>              Prattipati, through her parents, Jarmani and
>              Lakshmi Prattipati, *have accepted a settlement
>              offer that resolves all claims that Jane Doe II,
>              whose real name is Usha Prattipati, and her
>              parents, in behalf of their deceased daughter, Vani
>              Prattipati, have against defendants, both in this
>              case in federal court and in the gas heater case in
>              Alameda County Superior Court.*  The total amount
>              of the settlement that *resolves all of plaintiffs'
>              claims in both actions against the defendants in the
>              federal court and the Reddy defendants in the gas
>              heater action* is $8.9 million.  The allocation of the
>              $8.9 million between client and counsel is the
>              subject of a separate agreement between client and
>              counsel, that we have all agreed to today.

8

> *The plaintiffs in these actions will execute a*
> *release and a waiver* that includes the terms of
> California Code of Civil Procedure 13 —

Mr. Bass:      1542 —

Mr. Rubin:     *— 1542, waving [sic] all claims, known and*
*unknown, against the defendants on behalf of Jane*
*Doe II, also known as Usha Prattipati, and their*
*deceased daughter, Vani Prattipati.*

(Tr. 4–5) (emphasis added).  This statement clearly shows that it was plaintiffs who had agreed to provide a release and waiver of claims in favor of defendants.  In exchange, defendants would pay $8.9 million.  There was no mention of a reciprocal release of claims by defendants in favor of plaintiffs or their attorneys or anyone else.

To be sure, settlements sometimes contemplate mutual releases.  But many settlements do not.  The fundamental quid pro quo need only be a money payment to a claimant in exchange for a release.  The record here shows this fundamental exchange.

Nonetheless, defendants view this issue slightly differently.  According to lead defense counsel, Jonathan Bass, the focus should not be on whether the Prattipatis are entitled to mutual releases.  While the settlement recited on the record in chambers did not provide for mutual releases, defendants *subsequently* offered mutual releases and all defendants executed such releases in time for the first settlement payment of $3.5 million to be delivered to plaintiffs' counsel on May 10, 2004 (Bass Decl. Exh. A).  Defendants even offered to give a release in favor of counsel for the Prattipatis (*ibid.*).  As such, it appears defendants are now willing to give more than the bargain required — full and complete releases of the Prattipatis and full and complete releases of *counsel* for the Prattipatis in their role as such.  There is a string attached, however.

Defendants now wish to add a new term.  Mr. Bass now wants a release of the insurance carriers who agreed to make the first installment — and, more to the immediate point, wants it at the time the first installment is paid rather than at the end.  Mr. Bass asserts:

> Well before the May 10 date for that payment arrived, plaintiffs
> knew that the parties making this payment — the insurance
> carriers, not defendants personally — would require a release of
> claims, so that they would not face any lingering or potential

9

exposure once they had made their payment.  Plaintiffs *agreed* to give that release.  They just never have.

(Def. Reply 2) (emphasis in original).  To this end, defense counsel states (in a reply declaration) that:

> Following the hearing on April 7, 2004, I took the lead in drafting the written form of the Settlement Agreement and General Release.  I was aware that counsel for the insurance carriers was insisting upon a special release of the insurance carriers as a condition of making the initial payment of $3.5 million, and I discussed this issue with Michael Rubin, plaintiffs' counsel.  Mr. Rubin explicitly agreed to the special release in the form I had drafted it.

(Bass Reply Decl. ¶ 2).  Allegedly, the insurance companies are ready and willing to make the first (overdue) payment but they will not deliver the funds without the simultaneous release. Without plaintiffs' signature on the release proposed by defendants, plaintiffs will not receive their money.

On June 7, 2004, the insurance carriers supplied a letter to the Court.  This letter, although generally supporting Mr. Bass' version of events, does not go so far as to show that Mr. Rubin indeed agreed to such a release.  Noting that the insurers had an agreement with the individual defendants (its insured) different than the one reached on the record in chambers as to any release from liability, counsel for the insurers stated:

> To resolve the problem, Mr. Berland [the insureds' personal counsel] agreed to talk to plaintiffs' counsel, Michael Rubin, to see whether plaintiffs would agree to release the insurers once the insurers made their $3.5 million payment.  Mr. Berland represented to us that *Mr. Rubin stated he would recommend this to his clients and saw no reason why they would not agree.*

(Letter dated June 7, 2004, at 2) (emphasis added).  This does not confirm, however, that Mr. Rubin *actually* agreed to such a modification, as Mr. Bass has represented to the Court. Nonetheless, the Court retained jurisdiction to enforce the agreement made in its presence.  All agreed it was enforceable as stated on the record.  Attempts by both sides to enforce post-settlement concessions or alleged concessions would lead to an unraveling of the settlement on the record.

The question thus is what was the agreement on the record.  *See* Cal. Civ. Code 1636 ("A contract must be interpreted as to give effect to the mutual intent of the parties as it existed

10

1    at the time of contracting, as far as the same is ascertainable and lawful.").  The settlement on

2    the record provided that the money would be paid even if a written settlement agreement was

3    never formalized.  Moreover, the settlement provided that the money would be paid and a

4    release would be given *by the plaintiffs at the time the final payment was made.*  The final

5    payment is due September 10, 2004.  No where in the settlement on the record did the parties

6    condition installments on the prior receipt of a release.  The first payment (due May 10, 2004)

7    should have been made.

8         This, however, does not bring the instant analysis to an end, for at the hearing on this

9    motion the Court learned that plaintiffs' counsel are also trying to hold something back from

10   defendants.  Plaintiffs' counsel do not contest that defendants are entitled to a general release

11   by Usha Prattipati and her parents Lakshmi and Jarmani Prattipati as representatives for their

12   deceased daughter Vani Prattipati.  It appears, however, that they are unwilling to give

13   defendants a general release of the claims that Lakshmi and Jarmani Prattipati asserted

14   *individually*, rather than in their *representative* capacity, against defendants.

15        Counsel's latest interpretation of the record unreasonably strains the clear intent of the

16   parties on April 7.  The thrust of the settlement reached on the record was to fully resolve the

17   federal and related state action as between Usha and her parents and the various defendants

18   common to both actions.  It is true that the parents asserted claims in the federal and state

19   action on behalf of Vani Prattipati in their representative capacity.  But the parents also sought

20   relief in their individual capacities in the state action.  The resolution of these latter claims was

21   also well within the scope of the settlement agreement recited on the record (Tr. 4) ("The *total*

22   amount of the settlement that resolves *all* of plaintiffs' claims in *both* actions against the

23   defendants in the federal court and the Reddy defendants in the gas heater action is $8.9

24   million.") (emphasis added).

25        The releases reasonably contemplated on the record were general releases by Usha

26   Prattipati and Lakshmi and Jarmani Prattipati — the parents in their individual and

27   representative capacities — of all their claims against defendants in both the federal and state

28

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1    action.  This follows from the fact that plaintiffs specifically agreed to waive Section 1542 of

2    the California Civil Code, which provides that:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING
> THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE
> MATERIALLY AFFECTED HIS SETTLEMENT WITH THE
> DEBTOR.

(Emphasis added.)  Section 1542 deals specifically with "general releases."  Therefore, by

inference, the releases referred to on the record on April 7 were general releases.  Defendants

are entitled to such releases on September 10, 2004, at the time the final installment is paid.

The transcript does not state that the insurers will obtain releases of any sort.  Nonetheless, the

insurers were described as participating in the settlement and the best reading of the record is

that the releases should include any insurers actually contributing to the settlement.

2.    **PAYMENT OF THE SETTLEMENT PROCEEDS.**

The settlement recited on the record provided that defendants' insurance carriers were

to make the first installment in the amount of $3.5 million and defendant L. B. Reddy Estate

Company was to make the final two payments of one million dollars and $4.4 million,

respectively (Tr. 10–11).  Later, however, plaintiffs' counsel asked that certain individual

defendants "stand behind" the payment obligations of the L. B. Reddy Estate Company.

Although this was not a term of the settlement agreed to on the record, three individual

defendants — Jayaprakash Lakireddy, Prasad Lakireddy and Vijay Lakireddy — subsequently

offered to personally see to it that the L. B. Reddy Estate Company makes the latter two

installments.  Plaintiffs' counsel, however, also want defendant Lakireddy Bali Reddy to

personally "stand behind" the payment obligations.  He has declined to do so.

The settlement on the record provided that the first payment would be made by

defendants' insurance carriers and the remainder of the payments would be made by the L. B.

Reddy Estate Company.  The issue raised now by plaintiffs' counsel — that individual and

entity defendants should be held liable for the agreed-upon settlement amounts — was *not*

discussed on the record.  No other defendant agreed to make any payment, nor did any other

defendant agree to be held responsible for the entities making the agreed-upon payments.  That

12

United States District Court
For the Northern District of California

1  much is clear on the record of the settlement.  Whether as a matter of law the individuals

2  would be bound to pay the settlement obligations of the L. B. Reddy Estate Company need not

3  be decided until, if ever, the L. B. Reddy Estate Company fails to pay.

4      With that said, the first payment is overdue.  The first installment of $3.5 million was

5  due May 10.  It has not been paid.  According to defense counsel, however, until plaintiffs sign

6  the settlement agreement drafted by defendants the money will not be paid.  The written

7  settlement agreement provides for the release of defendants' insurers once the first payment is

8  made.  This conditional nonpayment, however, violates the agreement.[3]

9      The settlement on the record provided that the settlement was enforceable and the

10  money would be paid notwithstanding any subsequent writing (or lack thereof).  The insurance

11  companies cannot now impose a post-settlement condition on their payment obligation.  On the

12  record, Mr. Jonathan Bass and Ms. Dorine Kohn (counsel for Lakireddy Bali Reddy and the

13  L. B. Reddy Estate Company in the related state action) represented and committed that the

14  first payment of $3.5 million would be made by defendants' insurance carriers and that

15  payment would be made within thirty days (Tr. 11–12).  No where on the record did the parties

16  agree (let alone discuss) that in exchange for the insurers' payment the Prattipatis would

17  simultaneously provide a release.  Counsel for the insurers now appears to suggest that Mr.

18  Bass and Ms. Kohn had no authority to so bind the insurers.  The argument fails.[4]

19      As mentioned, the Court retained jurisdiction to enforce the settlement reached on the

20  record.  The settlement was clear as to who would pay the settlement and when.  When the

21  payment issues first arose, defense counsel asked for the opportunity to consult with their

22  clients.  There was a fifteen-minute break in the proceedings.  A number of the attorneys for

23

24  _____

25  [3] The second installment of one million dollars was due June 10, 2004, the same day as the hearing on this motion. On behalf of the L. B. Reddy Estate Company, Mr. Bass delivered a check for that amount to Mr. Rubin during the hearing. The record reflects the exchange.  As set forth in the conclusion of this order, Mr. Rubin shall deposit the check in a separate

26  attorney-client trust account.  These funds, as well as the others, shall not be distributed until further order of the Court.

27  [4] Notwithstanding her role in establishing the terms of payment of the settlement proceeds, Ms. Kohn did not appear

28  at the hearing on June 10 to address the relevant issues disputed by the parties.  Nonetheless, she appeared at the all-important settlement on the record and made representations and adopted all representations on the subject made by Mr. Bass. She and Mr. Bass are both obligated to deliver on their representations.

1  defendants left chambers and returned to the courtroom, where their clients were located.  The

2  insurers' representatives were also present in the courtroom.

3       What is significant is what the lawyers said on the record when the proceedings

4  resumed in chambers.  The following representations were made (*after* defense counsel had

5  conferred in the courtroom):

6            The Court:          Back on the record, and Mr. Bass, you've
7                                        talked to your clients, and when can the
                                      money be delivered?

8            Mr. Bass:           Okay, Dorine Kohn is counsel in the state
9                                          wrongful death action, *and I'm advised that*
10                                       *a check or checks in the amount of three*
                                      *and-a-half million dollars can be made*
                                      *available within — what time?*

11           Ms. Kohn:          Within 10 days from the date we find out
12                                         who the payees are and get the information
13                                       we need to get them.  *That's on behalf of*
14                                       *one of the insurance carriers.  One of the*
                                      *lesser amounts is paid by another carrier.*
15                                       *We assume that they can get it out as*
                                      *promptly, but I would say it would take no*
                                      *longer than 30 days.*

16           Mr. Bass:           Shall we say 30 days, then, 30 days from
                                      your telling us how to make the checks out.
17                                       That's three and-a-half million dollars.
                                      Within 30 days following that — I'm sorry.
18                                       *Sixty date [sic] from now, the L.B. Reddy*
                                      *Estate Company would pay $1 million to*
19                                       *the appropriate payee.  L.B. Reddy Estate*
                                      *Company would pay the balance, which I*
20                                       *guess is 4.4 million —*

21           Mr. Wolf:          That's correct.

22           Mr. Bass:           — and that would be, counting from today,
                                      within —

23           Mr. Lakireddy:     Three months?

24           Mr. Bass:           No, no, from today, five months from
25                                       today, the 4.4 million final payment would
                                    be made, again, to the appropriate payees.
26                                     And counsel was speaking of interest.  We
                                    would not pay interest within any of those
27                                     time frames.  We would agree to pay
                                    interest if the payments were missed,
28                                     starting from the day they were missed, at 5
                                  percent simple interest.

**United States District Court**
For the Northern District of California

14

**United States District Court**
For the Northern District of California

1    The Court:            All right, how does that sound?

2    Mr. Rubin:            *That's accepted by plaintiffs, your Honor.*

3    (Tr. 11–13) (emphasis added). *Immediately thereafter*, the Court inquired of plaintiffs' counsel

4    when he would deliver plaintiffs' written releases to defendants:

5    Mr. Rubin:            As soon as defendants —

6    The Court:            *I would suggest, when the last payment is made.*

7    Mr. Rubin:            *Fine, your Honor.*

8    The Court:            *Is that all right with you*?

9    Mr. Bass:             *We would certainly collaborate in drafting up the
     documents, and I'd be happy to provide that the*
10                         *releases would become effective upon payment of*
                           *the final payment, if that's okay.*
11
     The Court:            That sounds fair.
12
     Mr. Rubin:            Yes.
13
     The Court:            *All right.  Do we now have an agreement*?
14
     Mr. Bass:             *Yes, your Honor.*
15
     Mr. Rubin:            *We do, your Honor.*
16
     (Tr. 13) (emphasis added).
17
          The record cannot be more clear as to who would pay the money, when it would be
18
     paid, and at what point any releases would be provided and become effective.  To all present
19
     (including the Court) in chambers when the terms now in dispute were placed on the record, it
20
     appeared that Mr. Bass and Ms. Kohn spoke with the ostensible authority to do so on behalf of
21
     the insurers and the L. B. Reddy Estate Company.  If neither Mr. Bass nor Ms. Kohn had such
22
     authority, they had every opportunity to limit their representations on the record.  Neither did
23
     so.  The insurers, Mr. Bass and Ms. Kohn are bound to the terms of the settlement.  *See*, *e.g.*,
24
     *Myers v. Stephens*, 233 Cal. App. 2d 104, 115 (1965) (if the principal clothes his agent with
25
     such authority, a person dealing with the agent, in the absence of any conduct on the part of
26
     either principal or agent warranting inquiry, is entitled to rely upon that apparent authority and
27
     is not bound by undisclosed limitations).
28

                                            15

At the recent hearing, Mr. Bass provided further detail as to what actually occurred on April 7 when counsel left chambers to discuss with defendants the various issues of payment. According to Mr. Bass, Ms. Kohn left chambers and spoke with the insurers' representatives who were present in the courtroom. The insurers allegedly gave Ms. Kohn the authority to represent that the insurers would pay $3.5 million into the settlement fund. The insurers, however, purportedly conditioned any such payment on the receipt of a release at the time of payment, or so Mr. Bass stated at the hearing. Allegedly, this additional requirement simply "didn't make its way back into chambers." This new information, however, only further demonstrates that the insurers here gave counsel the authority to speak on their behalf. Cal. Civ. Code 2317 ("Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess."). It certainly does not affect the enforceability of the terms set forth by counsel on the record. Mr. Bass and Ms. Kohn made a commitment on behalf of the insurers and they will all now honor it. *See*, *e.g.*, *Klinger v. Modesto Fruit Co.*, 107 Cal. App. 97, 101 (1930) (if there is an issue as to the existence of an agency, both the alleged agent and principal may be joined for the purpose of determining their relationship and liability).

The first installment, as mentioned, was due May 10. That payment was not made. On the record, the parties agreed that interest on any late payment would be due at a rate of five percent per annum. The issue of interest is one that invokes the equitable powers of the Court. It has become apparent that following the settlement on April 7 both parties took positions that were overreaching in the course of preparing written documentation. Defendants, for instance, demanded a premature release of the insurance carriers at the time of payment of the first installment. On the other hand, plaintiffs' counsel refused to provide a release of the individual claims of Lakshmi and Jarmani Prattipati. Still, the equities do not balance entirely in defendants' favor on the issue of interest.

So long as the overdue payment of $3.5 million is made by noon on June 16, 2004, this order holds that it shall bear interest at the reduced rate of two-and-a-half percent per annum from May 10, 2004, until the date of payment. If the installment is not paid by that time,

1    interest will be assessed at the agreed-upon rate of five percent per annum from May 10, 2004,

2    and contempt proceedings will be commenced.  In that contingency, it would be clear that the

3    predominate snafu has and will be defendants' fault.

4                                                **CONCLUSION**

5              For the foregoing reasons, the Court orders as follows:

6              1.       Mr. Jonathan Bass, Ms. Dorine Kohn and Farmers Insurance Exchange must

7    deliver the checks from the insurers totaling $3.5 million plus interest from May 10, 2004, at

8    the rate of two-and-a-half percent per annum by noon on June 16, 2004.  They must deliver the

9    checks to Mr. Michael Rubin as counsel for plaintiffs.  The checks shall be made out to the

10   Altshuler Berzon Trust Account.  If this deadline is not met, then the interest shall be five

11   percent from May 10, 2004.

12             2.       Plaintiffs' counsel (Mr. Rubin) shall deposit the checks in a separate dedicated

13   interest-bearing account and shall disburse none of these funds until the releases are given and

14   upon further order of the Court.

15             3.       The check in the amount of one million dollars delivered by Mr. Bass on behalf

16   of the L. B. Reddy Estate Company at the hearing on June 10, 2004, shall be deposited as

17   above and shall not be disbursed until further order of the Court.

18             4.       Mr. Bass, on behalf of the L. B. Reddy Estate Company, shall deliver the final

19   installment check of $4.4 million on September 10, 2004, to Mr. Rubin, to be deposited as

20   provided above.

21             5.       Immediately upon receipt of the last payment, Mr. Rubin shall deliver to Mr.

22   Bass general releases signed by Usha Prattipati and Lakshmi and Jarmani Prattipati,

23   individually and as representatives for Vani Prattipati.  Such releases shall release the settling

24   defendants and any insurance company (by name) contributing to the settlement.  The releases

25   need not release counsel.  Said releases shall include in bold print a waiver of Section 1542 of

26   the California Civil Code.

27             6.       No funds may be disbursed by plaintiffs' counsel without further order of the

28   Court.  When each of the above conditions has been met, counsel shall submit a stipulation so

United States District Court
For the Northern District of California

17

advising.  The Court will thereafter issue an order providing for the full disbursement of the settlement funds.

7.  Counsel shall immediately notify Ms. Kohn and the insurance carriers of their obligations hereunder.

**IT IS SO ORDERED.**

Dated:  June 14, 2004.

/s/ WILLIAM ALSUP
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28